**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

ASHFORD, et al.                      *

Plaintiff                         *

      v.                            *

EAST COAST EXPRESS EVICTIONS, et al.    *     CASE#:06-CV-1561 RJL

Defendants                      *

*************************************************************************

## MOTION TO DISMISS

      **NOW COMES**, Defendants A&A Cardinal Evictions and Robert "Bob" Ward, by and through their attorneys, J. Wyndal Gordon of THE LAW OFFICE OF J. WYNDAL GORDON, P.A., and Stephanie Kinder of THE LAW OFFICE OF STEPHANIE KINDER, P.A., to submit this Motion to Dismiss under Fed. R. Civ.P. 12(b)(1), (3), and (6) alleging as true the following:

**PROCEDURAL BACKGROUND**

      On September 5, 2006, Plaintiffs Harry Ashford, Kirk Greene, Anthony Forte , and allegedly other [unknown and unidentified] similarly situated individuals filed a class action law suit against A&A Cardinal Evictions ("A&A") and Robert "Bob" Ward, collectively referred to as Defendants.  Additional parties sued in the action were East Coast Express Eviction, A1 Eviction Services, All American Eviction Company, Butch Enterprises, Inc., Big Time Movers, Caroline Lanford, Tanya Smith, Nelson Terry, Linden Terry, John Doe 1, and John Doe 2 (hereinafter alternatively referred to as "other Defendants").

      On or about October 17, 2006, Defendants A&A and Ward filed a 12(b)(2) Motion to Dismiss ostensibly alleging that Plaintiffs complaint is based upon speculative information, conjecture, and aggregated factual allegations that fail to establish personal jurisdiction.  See, *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80 (D. DC 2006)  Defendants argued that because of the defects, Plaintiffs case warranted a dismissal.

      Upon further examination of Plaintiffs complaint, Defendants now submit through additional counsel a second Motion to Dismiss under Fed. R. Civ. Pro. 12(b)(1), (3), and (6) so

as to avoid undue delay.  See, 12(g)(h)(3), see, also,  *Lindsey v. U.S.*, -- F.Supp.2d --, 2006 WL

2413720 *14 (D. D.C. 2006) citing, *Campbell-El v. District of Columbia,* 881 F.Supp. 42, 43

(D.D.C.1995)(*second motion to dismiss is permitted by defendant under Rule 12(b)(6) in order*

*to avoid undue delay, noting that the defendants were not repeating arguments on which the*

*court has already substantively ruled . . .*), See also, 12(h)(3).  Defendants reasonably assure that

their arguments are neither repeated, nor substantively ruled upon. Id.  Based upon the

foregoing, upon construing Plaintiffs complaint in a light most favorable to their respective

positions, their case should be dismissed for all the reasons identified below.

**STANDARD OF REVIEW**

### *RULE 12(b)(1)*

A motion to dismiss under Rule 12(b)(1) tests whether the federal court has subject

matter jurisdiction over an action.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994).  A complaint may be dismissed for lack of subject matter jurisdiction when it appears

beyond doubt that the plaintiff can prove no set of facts in support of his/her claim for relief.

*Sinclair v. Kleindienst,* 711 F.2d 291, 293 (D.C.Cir.1983)(quoting *Conley v. Gibson,* 355 U.S.

41, 45-46 (1957)).  The Court assumes the truth of the allegations in the complaint and construes

them favorably toward the pleader.  *Artis v. Greenspan,* 158 F.3d 1301, 1305-06 (D.C.

Cir.1998).  In a motion challenging subject matter jurisdiction the court's focus is on its power to

hear the claim; therefore plaintiff's factual allegations are subject to closer scrutiny than in a

motion to dismiss for failure to state a claim.  *Mut. Pharm. Co., Inc. v. Pfizer,* 307 F.Supp.2d 88,

92 (D.D.C.2004) (citing  *Macharia v. United States,* 334 F.3d 61, 64, 68-69 (D.C.Cir.2003);

*Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C.2001)).

The plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a

preponderance of the evidence.  *McNutt v. Gen. Motors Acceptance Corp. of Indiana,* 298 U.S.

178, 189 (1936).  In determining whether the plaintiff has met this burden, the Court may look to

materials beyond the pleadings.  *Herbert v. Nat'l Acad. of Sciences,* 974 F.2d 192, 197 (D.C.

Cir.1992).

### *RULE 12(b)(3)*

Venue statutes serve the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred. *Modaressi v. Vidaddi*, 441 F. Supp.2d 51, 53 (D. D.C. 2006) citing *Holding Corp., v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1576 (D.C. Cir. 1990) Rule 12(b)(3) permits a defendant at the outset of the litigation to test whether plaintiff has brought the case in a venue that the law deems appropriate. Fed. R. Civ. P 12(b)(3). If the plaintiff's chosen forum is an improper venue under applicable statutes or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient. See, 28 U.S.C. §1406 (*providing for dismissal or transfer of a case where there is a venue defect*); 28 U.S.C. §1404 (*providing for change of venue "[f]or the convenience of parties and witnesses, in the interest of justice"*)

Because it is the plaintiff's obligation to institute an action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper. *Freeman v. Fallin*, 254 F.Supp.2d 52, 56 (D. D.C. 2003) Furthermore, the plaintiff must establish venue for each cause of action when a defendant objects. *Modaress*i, at 53 citing *City of New York v. Cyco Net, Inc.*, 383 F. Supp2d 526 (S.D.N.Y. 2005) Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law for the Court. To prevail on a motion to dismiss for improper venue, facts must be presented that will defeat the plaintiff's assertion of venue. *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.,* 148 F.Supp.2d 50, 54 (D. D.C.2001)

### *RULE 12(b)(6)*

A motion to dismiss advanced under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of the plaintiff's complaint. *Rasul v. Rumsfeld*, 433 F.Supp.2d 58, 62 (D. D.C.2006.) *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir.2002). To satisfy the requirements of the Rule, a complaint need only set forth a short and plain statement of facts

giving fair notice of a claim, and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C. Cir.2003) citing, Fed R. Civ. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47 (1957). This form of pleading is oft-times referred to as notice pleading. Notice pleading in its simplest form is made possible by the liberal opportunity for discovery and the other pre-trial procedures. *Conley,* 355 U.S. at 47-48. The purpose of each procedure is to disclose more precisely the basis of both claim and defense, and to define more narrowly the disputed facts and issues. Id. Therefore, it is not necessary that plaintiff plead all elements of a prima facie case; nor is it necessary to plead law or match facts to every element of a legal theory for a complaint to be well-plead. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14 (2002), see, also, *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000) (citation omitted).

In a motion to dismiss, the court must treat plaintiff's complaint's factual allegations -- including mixed questions of law and fact --as true, and draw all reasonable inferences in his/her favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C.Cir.2003); *Holy Land Foundation for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir.2003); *Browning,* 292 F.3d at 242. However, inferences unsupported by facts set out in the complaint, or legal conclusions cast as factual allegations, need not be accepted. *Warren*, 353 F.3d at 39; *Browning,* 292 F.3d at 242. When a defendant can show beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief, a motion to dismiss filed under 12(b)(6) should be granted. *Warren v. Dist. of Columbia,* 353 F.3d 36, 37 (D.C. Cir.2004); *Kingman Park,* 348 F.3d at 1040.

**LEGAL ANALYSIS**

### *Plaintiffs Failed to Identify What Judicial District Constitutes D.C. Metro Area for Purposes of Subject Matter Jurisdiction*

The instant Defendants are being sued via class action allegedly for multiple violations of federal, District of Columbia, Maryland and Virginia minimum wage and anti-trust laws. In their complaint, Plaintiffs alleged that Defendant A&A is an unincorporated entity located in State of Maryland with its principle place of business in Waldorf. (Pl. ¶¶13-14) Plaintiffs further allege that Defendant Bob Ward is the sole proprietor of A&A and is responsible for all

4

of its acts, policies, and liabilities.  Id.  More importantly, Plaintiffs alleged that A&A performs

eviction services in the *D.C. Metro Area*.  However, Plaintiffs completely failed to provide any

supporting facts or a clear definition of what area constitutes the *D.C. Metro Area*.  Defendants

submit that in the absence of supporting facts or a clear definition of what judicial district or

geographical area constitutes the *D.C. Metro Area*, Plaintiffs complaint is fatally flawed and

must be dismissed.  *See, also,* 28 U.S.C. §1391.

Try as they might, for purposes of establishing the court's authority over the subject

matter of this case under Rule 12(b)(6)(1), Defendants can not figure out what geographical area

constitutes the *D.C. Metro Area*.  This is so because the *D.C. Metro Area* is not a state, judicial

district or territory of the United States.  Rather, it is a colloquialism that fails to attribute any

precise legally recognizable geographical boundary to the area for which it is used to describe.  It

is a term that can be arbitrarily expanded to describe a very large amorphous jurisdiction; or

indeliberately retracted to describe a small one.  A reasonable person's definition of what

constitutes the *D.C. Metro Area* will vary from ward to ward, county to county, and perhaps

even state to state.  The term *D.C. Metro Area* enjoys no recognition as a judicial district or legal

term of art.  More importantly, it does not carry the necessary clout to confer either personal

or subject matter jurisdiction upon this Court.  See, 28 U.S.C. §12(b)(1),(2).

In this case, Waldorf, Maryland is the only geographical location specifically attributed

to Defendant A&A because its headquarters are located there.  See, (Pl. Compl. ¶13)  While it is

perhaps true that parts of Waldorf may be considered by some to be the *D.C. Metro Area,* this

mere fact, without more, is insufficient to show that A&A's business, and the work performed

by its employees, has affected interstate commerce thereby triggering federal jurisdiction.

*Brennan v. S&M Enterprises*, 362 F. Supp 595, 598 (D. D.C. 1973)(*Question of whether*

*employees are engaged in commerce for purposes of seeking relief for violations of FLSA is*

*answered by determining whether interstate commerce would be impeded or abated without*

*services of employees*)   Absent the critically infirm federal claims [which Defendants discuss

later in this motion], the fact that Waldorf is situated in the judicial district of Maryland actually defeats federal jurisdiction. Therefore, a perfunctory allegation or suggestion that A&A conducts business within the *D.C. Metro Area* without more does not diminish A&A's existence as an exclusively Maryland based business that operates and conducts business exclusively within the State of Maryland.

Plaintiffs did not allege or assemble any facts that would enable this court to reasonably infer what geographical location it was referring when it made use of the term *D.C. Metro Area*. However, upon close examination of Plaintiffs complaint coupled with Defendants' attached affidavit, it is clear that the *D.C. Metro Area* Plaintiffs were referring, as it related to Defendant A&A, exclusively lies within the State of Maryland. (Pl. Aff.) It is for these and other reasons that Plaintiffs' complaint should be dismissed.

With regard to Defendant Bob Ward, Plaintiffs have completely failed to independently allege the nature of contact Mr. Ward has had with *any* geographical location or judicial district. (Pl. Compl. ¶14), see, also, *Modaress*i, at 53 (*When a defendant objects, plaintiff must establish venue as to every cause of action within its complaint*) Plaintiffs did not allege whether he was a resident of the State of Maryland, Indiana, Utah, or even Idaho for that matter. Based *solely* upon the factual allegations in the complaint, this Court can not state by preponderance of the evidence the location in which Defendant Bob Ward personally resides or is domiciled. Not to seem incredulous, but in today's age of information technology, surely Defendant Ward can govern, implement policy, and pay A&A's bills in a location other than Maryland, D.C., or Virginia. See, generally, (Pl. Compl. ¶14). Although Plaintiffs have pleaded sufficient facts to establish the location of Defendant Ward's business, Defendant Ward is not sure whether the same can be said of him in his personal capacity. Based upon the foregoing, Plaintiffs complaint against Defendants A&A and Ward should be dismissed.

### *Plaintiffs Suit Should be Dismissed for Improper Venue*

Defendants submit that Plaintiffs class action suit should be dismissed for improper

venue.  Under Title 28 U.S.C. 1391(b), venue is proper when suit is brought in the judicial district: (1) where any defendant resides if they all reside in the same state; (2) where a substantial part of the event or omission giving rise to the claim occurred or where a substantial part of the property subject to the action is situated; or (3) in which any defendant may be found if there is no district in which the action may be otherwise brought.

Title 28 U.S.C. 1391(b)(1) is not applicable to this case because all of the Defendants do not reside in the same state.  Some are from Maryland, some are from Washington D.C., and some are from Virginia.  Others, such as John Doe 1, John Doe 2, and Bob Ward who were sued in their respective individual capacities have not been alleged to be from any particular State or judicial district.  Without satisfying the requirement of determining in which judicial district each defendant resides, it is virtually impossible to establish D.C. as a permissible venue in which to hear this case.

Title 28 U.S.C. §1391(b)(2) does not support Plaintiffs position that District of Columbia is the proper venue in which to hear their claims either.  According to Plaintiffs complaint, the judicial district in which a substantial part of the events giving rise to their claims most likely occurred in Maryland.  Plaintiffs alleged in paragraphs 28-29 of their complaint that during the Class period [September 5, 2002-present (Pl. Compl. ¶21)] over 10,000 evictions were ordered by the courts in the District of Columbia.  (Pl. Compl. ¶¶28-29)  On average, that amounts to 2,500 evictions per year.  *See*, Id., *see also*, (Pl. Compl. ¶21)  Plaintiffs further allege that approximately 3,400 evictions are ordered annually in Prince George's County Maryland, 1,100-2,200 are ordered annually in Fairfax County, Virginia, and a few hundred or so are ordered annually in Arlington County, Virginia.  Id. When adding together the number of evictions ordered annually in the two Virginia counties  [2,500+/-], they seem to equal the number of evictions ordered in the District of Columbia  [2,500].  See, Id.  Under the best case scenario supportive of Plaintiffs claims, Maryland exceeds both D.C. and Virginia in court ordered evictions by more than 900 evictions per year.  Id.  Therefore, it is reasonable to infer that the

7

judicial district of Maryland is where a substantial part of the events giving rise to Plaintiffs' claims occurred.  28 U.S.C. §1391(b)(2).

Plaintiffs may argue that even though 2/3 of the trio performed sub-minimal wage eviction services in Maryland, and 1/3 in Virginia, venue is properly founded in D.C. because it is the only judicial district in which all three were aggrieved.  See, (Pl. Compl. ¶¶5-7) Defendants concede that D.C. appears to be the one judicial district that the Plaintiffs have in common.  However, this mere fact does not excuse Plaintiffs failure to plead in which judicial district a substantial part of the events occurred giving rise to their claim.  Nor does it foreclose the probability that Maryland is likely to be the place in which one or more of the Plaintiffs performed sub-minimal wage eviction services at numbers overwhelmingly higher than *all* of the times combined that *any* number of them performed said services in D.C.  The result of this *likely* probability would render the judicial district of Maryland the one in which a substantial part of the events occurred giving rise to Plaintiffs claims.  Plaintiffs chose to remain silent on this issue in their pleading; in doing so, they neglected to supply the Court with the necessary information to confidently exercise its jurisdictional authority over this case.

Plaintiffs only recounted in their complaint 2-3 occasions in which they were aggrieved in D.C.  (Pl. Compl. ¶¶57-58, 61, 64)  That was just about equal to the number of occasions recounted in Maryland.  Again, it is Plaintiffs burden to demonstrate that venue is proper in the District of Columbia. *Freeman,* 254 F.Supp.2d 52, 56 (D. D.C. 2003)  Judging by the numbers referred to above, and the fact that Plaintiffs have failed to provide anything more to assess the issue of venue, upon accepting the allegations in Plaintiffs complaint as true, it is more likely than not that a substantial part of the events giving rise to Plaintiffs claims occurred in Maryland as opposed to D.C.  Therefore, Title 28 U.S.C. §1391(b)(2) does not provide any support for Plaintiffs claim that venue is proper in the District of Columbia.  Title 28 U.S.C. 1391(b)(3) does not lend any support either because there is another judicial district in which this case may be brought –Maryland.

Based upon the pleadings, the only reasonable inference to be drawn in this case is that a

substantial part of the events giving rise to their claims arose solely in the judicial district of
Maryland, mainly because Maryland had the overwhelmingly highest number of evictions. As
such, venue in the U.S. District Court for the District of Columbia is improper under Title 28
U.S.C. §1391, and again, the case warrants a dismissal.

### The Class Action

Class actions, which are authorized under Federal Rule of Civil Procedure 23, facilitate
the hearing of common claims by multiple plaintiffs so long as: (a) the number of members in
the class make joinder impracticable, (b) the class members' individual claims share common
questions of law or fact, (c) the representative parties advance claims that are representative of
the whole class, and (d) the representative parties fairly and adequately protect the interests of
the class. Fed.R.Civ.P. 23(a); *Pate v. U.S.*, 328 F. Supp. 2d 62, 69 (D. D.C. 2004), *Doe v.
District of Columbia,* 701 F.2d 948, 963 (D.C. Cir.1983). Plaintiffs bear the burden of proof on
each of the elements described above. *McCarthy v. Kleindienst,* 741 F.2d 1406, 1414 n. 9 (D.C.
Cir.1984).

Once the above prerequisites have been satisfied, Plaintiffs seeking injunctive and
declaratory relief must also satisfy the requirements under section (b)(2). Rule 23(b)(2), in
pertinent part, provides the following:

> "[a]n action may be maintained as a class action if the
> prerequisites . . . are satisfied, and in addition: . . . (2) the party
> opposing the class has acted or refused to act on grounds generally
> applicable to the class, thereby making appropriate final injunctive
> relief or corresponding declaratory relief with respect to the class
> as a whole." Id.

A district court exercises broad discretion in deciding whether to permit a case to proceed as a
class action. *Hartman v. Duffy,* 19 F.3d 1459, 1471 (1994)(citing *Bermudez v. Dep't of
Agriculture,* 490 F.2d 718, 725 (D.C.Cir.1973)). However, "a decision on class certification
cannot be made in a vacuum. While, of course, a court does not possess any authority to conduct
a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained
as a class action,' . . . some inspection of the circumstances of the case is essential to determine

9

whether the prerequisites of Rule 23 have been met." *Wagner,* 836 F.2d at 587 (quoting *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177(1974)).  The instant Defendants take issue with the prerequisites.

### Joinder of All members of Class is Not Impracticable

The first prerequisite for certification is that the class be so large that joinder of all class members would be impracticable. F.R.Civ.P. 23(a)(1); *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 258-59 (D. D.C.2002).  This prerequisite is commonly known as numerosity.  There is no set number requirement to a class action as long as plaintiffs provide a reasonable basis for their estimate. *See, Kifafi v. Hilton Hotels Retirement Plan,* 189 F.R.D. 174, 176 (D. D.C. 1999)("*So long as plaintiffs provide a reasonable basis for the estimate provided, the numerosity requirement can be satisfied without precise numbers.*")  Defendants submit that joinder of all members in the class is *not* so large that it would be impracticable.

In the instant case, Defendants do not expect Plaintiffs to know the exact size of the class on whose behalf they have filed suit.  However, it is clear Plaintiffs have consciously decided not to provide this court with even a reasonable estimate of the size.  Instead, Plaintiffs allege by way of conjecture that the "membership is so numerous that joinder of all members is impracticable".  (Pl. Compl. ¶23)  They go on to state "Defendants *have likely* hired hundreds, if not thousands, of homeless persons and others as employees to perform eviction services at sub-minimum wages during the class period" Id. (Emphasis added)  This Court stated in *Pigford v. Glickman*, 182 F.R.D. 341, 347 (D. D.C.1998), that mere conjecture, without more, is insufficient to establish numerosity.  Id.  Defendants submit that as it pertains to this case, it is *unlikely* that Plaintiffs have the requisite numbers for class certification, and it is very *likely* that they will remain in a class by themselves.

Plaintiffs have undoubtedly failed to identify any similarly situated individuals "homeless or otherwise," who have performed eviction services for sub-minimal wages within the time period outlined in their complaint.  (Pl. Compl. ¶21)  Given the fact that all three Plaintiffs have alleged:

(A)     that they either reside or stay in homeless shelters, and frequent community outreach centers and random street corners located throughout Washington, D.C. (Pl. Compl. ¶¶5-7);
(B)     that homeless shelters, community outreach facilities, and random corners, provide a daily source of sub-minimum wage workers, See (Pl. Compl. ¶¶36-37); and
(C)     that the eviction companies transport sub-minimum wage homeless workers to and from the eviction sites back to the shelters, facilities, and corners (Pl. Compl. ¶40);

it is not asking too much to require Plaintiffs to provide more than three names in order to

maintain their suit as a class action. See, FLSA §216(b)(*requires class members' signed written

consent to be filed with court*)  It would appear from the facts alleged that Plaintiffs' respective

residences, communal stations, and random corners, would provide the greatest resource for

locating opportunistic putative class members.  Moreover, a reasonable inference can be drawn

from the fact that Plaintiffs failure to provide any additional names in their complaint is

indicative of a lack of numerosity;  Id., *see, also*, *Thomas v. Christopher*, 169 F.R.D. 224, 237

(D. D.C. 1996)(*Although Rule 23 requires no minimal number of class members, numerosity is

generally satisfied by a proposed class of at least 40 members*), *EEOC v. Printing industry of

Metro. Washington, D.C., Inc.*, 92 F.R.D. 51, 53 (D. D.C. 1981)(*as few as 25-30 should raise the

presumption that joinder would be impractical*); and perhaps even a lack of adequate

representation as it relates to the representative Plaintiffs.  *Johns v. Rozet*, 141 F.R.D. 211, 216-

17 (D. D.C. 1992)("*. . .representative must be able to vigorously prosecute the interests of the

class through qualified counsel*")  As it stands, joinder of the parties to this suit is very practical.

### Common Questions of Law and Fact

Rule 23(a)(2) requires that there exists questions of law or fact common to the class.

Fed.R.Civ.P. 23(a)(2). This requirement is also known as commonality.  "The commonality test

is met when there is at least one issue, the resolution of which will affect all or a significant

number of the putative class members." *Coleman v. Pension Benefit Guar. Corp.,* 196 F.R.D.

193, 198, (D.D.C.2000)(quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th

Cir.1997)). The commonality requirement is often easily met.  See, *Walsh v. Ford Motor Co*.,

130 F.R.D. 260, 268 (*noting that courts have found that the commonality threshold is not high*).

Given the fact that lead Plaintiff Harry Ashford alleged that he has only been employed by one or more of the Defendants to perform eviction services exclusively in Washington, D.C. (Pl. Compl. ¶5), he can not argue that he suffered harm resulting from the violation of any of the Maryland or Virginia laws cited in their complaint.  Plaintiff Kirk Greene has a similar problem. He alleged that he had been employed by one or more of the Defendants to perform eviction services exclusively in Washington, D.C., and Maryland (Pl. Compl. ¶6).  As such, he can not argue that he suffered any harm resulting from the violation of any of the Virginia laws cited in their complaint.  Last, Plaintiff Anthony Forte alleged that he has been employed by one or more of the Defendants to perform eviction services in Washington, D.C., Maryland, and Virginia (Pl. Compl. ¶7)  However, he, just as all the other representative Plaintiffs, have failed to specifically allege that they were ever employed by Defendants A&A and Ward to perform eviction services at sub-minimal wages in D.C., Maryland, or Virginia.  Therefore, commonality is lacking with all three Plaintiffs.  Plaintiffs Ashford, Greene, and Forte can not argue that they suffered any harm by the instant Defendants resulting from violations of:

| | |
|---|---|
| Count I: | District of Columbia Minimum Wage Statute, D.C. Code 32-1001, |
| Count II: | Fair Labor Standards Act, 29 U.S.C. 201, |
| Count III: | Maryland Wage and Hour Law, Md. Lab. & Empl. Code Ann. 3-401, |
| Count IV: | Virginia Minimum Wage Act, Va. Code Ann. 40.1-28.8, |
| Count V/VI: | Sherman Act, 15 U.S.C. 1 (injunctive relief and damages), |
| Count VII: | D.C. Anti-Trust Act, D.C. Code 28-4501, |
| Count VIII: | Maryland Anti-Trust Act, Md. Comm. Law 11-201, |
| Count IX: | Virginia Anti-Trust Act, Va. Code Ann. 59.1-9.1, |
| Count X: | Unjust Enrichment, and |
| Count XI: | Quantum Meruit, |

because they never worked for them.

There were thirteen (13) Defendants sued in this matter.  Between the three Plaintiffs, they can only recount two occurrences in which they were aggrieved by two separate Defendants, and neither one of the Defendants were A&A or Ward.  The simple allegation that Plaintiffs worked for "one or more" of the companies sued, without more, is not enough to show they worked for the instant Defendants.  Incidently, the companies Plaintiffs were expressly able

to identify by name and occurrence were East Coast Express Evictions, and All American Eviction Company, only because they are both D.C. based companies.  Based upon the foregoing, Plaintiffs have failed to show commonality.

### *Claims Not Typical*

For the same reasons argued above, Plaintiffs Harry Ashford, Kirk Greene, and Anthony Forte's class action suit is not maintainable because the claims advanced are not typical.  Under Rule 12(b)(3), the claims of the representative party must be typical of the claims of the proposed class.  This requirement is also referred to as typicality.  In plain terms, the typicality requirement is in place to ensure that the claims or defenses of the class resemble or exhibit the essential characteristics of those of the representatives.  *Kas v. Financial General Bankshares, Inc.,*105 F.R.D. 453, 461 (D. D.C.1984)

Although the claims or defenses of the class members need not mirror each other, Rule 23(a)(3) may be used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised.  *Pendleton v. Schlesinger,* 73 F.R.D. 506 (D. D.C.1977)  The typicality requirement also impacts upon Rule 23(a)(4) which requires the representative parties to adequately protect the interests of the class.  If the representatives' claims are not typical of the class, they cannot adequately protect the interests of the absent class members.  *See General Telephone Co. v. Falcon,* 457 U.S. 147, 157, n.13(1982)

The requirement of typicality focuses on the representatives' position with respect to the defendants' conduct.  *See McNichols v. Loeb Rhoades & Co., Inc.,* 97 F.R.D. 331, 334 (N.D.Ill.1982).  Where the representative parties are subject to unique defenses, their claim is not typical of the class.  Id.  And where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.  *McNichols v. Loeb Rhoades & Co.  Inc.,* 97 F.R.D. 331, 337 (N.D. Ill 1982).  It is not necessary that the defense asserted against the putative class representative ultimately succeed.  *Kas* at 461.  Rather, the presence of even an arguable defense

peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class, as well as bring into question the named plaintiff's representation. *J.H. Cohn & Co. v. American Appraisal Associates, Inc.,* 628 F.2d 994, 999 (7th Cir.1980).

Plaintiffs will suffer an arguable defense that Defendants do not perform eviction services in Washington D.C. or Virginia. (Df. Aff)  They work exclusively in Maryland and their services or the work of their employees do not affect interstate commerce.  See, *Caryk v. Coupe*, 663 F. Supp. 1243 (D. D.C. 1987), *Brennan v. S&M Enterprises*, 362 F. Supp 595, 598 (D. D.C. 1973)(*Question of whether employees are engaged in commerce for purposes of seeking relief for violations of FLSA is answered by determining whether interstate commerce would be impeded or abated without services of employees*)  Describing Waldorf, Maryland as the *D.C. Metro Area* does not confer subject matter jurisdiction upon this Court.  Nor does it render the instant Defendants subject to violations of D.C. or Virginia minimum wage and anti trust laws. Moreover, Plaintiffs equity claims of unjust enrichment and quantum meruit do not apply to Defendants because they never worked for Defendants A&A or Ward, and their claims occurring before September 5, 2003, may be further subject to laches.   Therefore, given the fundamental defects in Plaintiffs pleadings as it pertains to the instant Defendants, and the fact that Plaintiffs complaint is bereft of any specific allegations that Plaintiffs ever worked for Defendants, or that Defendants engaged in any wrongdoing of any kind resulting in harm to Plaintiffs, their suit should be dismissed.

### Plaintiffs Do Not Adequately Represent Class

For the same reasons argued above and throughout this motion, Plaintiffs do not adequately represent the class.  Plaintiffs complaint does not contain a single allegation that Defendants A&A and Bob Ward committed any violation of State or Federal law that resulted in injury to their business or property.  Again, Plaintiffs alleged that they were employed by one or more of the Defendants in their complaint, but they did not allege that A&A and Bob Ward were any of the *one or more* Defendants that employed them.  Plaintiffs named 13 Defendants in their class action suit.  Eleven have been identified at least by a name and corresponding address in

14

the caption of the complaint. However, two are merely identified as "John Doe 1", and "John Doe 2". Out of the 13 Defendants, Plaintiffs only alleged two single events by two Defendants that occurred fairly recently and that lasted no longer than a couple of hours. (Pl. Compl. 57-58, 61, 64) The Defendants named in these two events were East Coast Express Evictions and All American Evictions, respectively. Id. Plaintiffs have failed to expressly allege a single event or occurrence which involved any of the remaining Defendants. Assuming all of the allegations in Plaintiffs' complaint are true, there can be no reasonable inference drawn that the instant Defendants were the employers of any one or more of the Plaintiffs.

Moreover, from the looks of Plaintiffs complaint, they are not sure whether other Defendants or another entity altogether hired them. Plaintiffs make it very clear in paragraph 38 of their complaint that they are unsure who may be culpable for their alleged federal and State violations. Paragraph 38 states the following:

> "When hiring employees, Defendants typically conceal and do not disclose their business identity to the employees. In some instances in order to circumvent homeless shelter rules forbidding eviction companies from soliciting workers on their premises, Defendants affirmatively misrepresent their identities and the nature of their business." (Pl. Compl. ¶38), see, also (Pl. Compl. ¶61)

This allegation is devastating to Plaintiffs' case. For Plaintiffs to make the bald allegation that the 13 Defendants are responsible for the majority of the evictions in D.C., Maryland and Virginia, and that they somehow conspired to hire Plaintiffs and other homeless workers and others at sub-minimal wages to place a restraint on the trade is gross hyperbole. See, (Pl. Compl. 34) It is equally discouraging that Defendants, and others who operate reputable businesses, and pay fair wages at competitive rates have been entangled by Plaintiffs dragnet law suit that attacks an entire regional industry merely because there *may* be a few 'bad apples' among Defendants' competitors provided that they too do business in Maryland. Based upon the foregoing, Defendants A&A and Ward request that this Court dismiss them as Defendants in this matter.

***Plaintiffs Can Not Maintain Class Action Under FLSA and Rule 23***

Plaintiffs brought this class action suit under Rule 23 and the Fair Labor Standards Act ("FLSA"). Defendants A&A and Bob Ward move to dismiss this action on the grounds that a class action suit brought under Rule 23 is inapplicable to suits filed under the FLSA.

The FLSA authorizes class actions as a means for its enforcement. However, unlike Federal Rule 23, it requires that *no* employee shall be a party plaintiff unless he gives his written consent, and files it with the Court in which the suit is brought. 29 U.S.C. 216(b). It is generally recognized that the use of Rule 23 is inappropriate to prosecute a class action under the FLSA because of the notice requirement to the Secretary of Labor, and the consent requirement to be filed by each 'similarly situated' party. *Hull v. Continental Oil Co.*, 58 F.R.D. 636 (S.D.Tex.1973); *Burgett v. Cudahy Co.*, 361 F.Supp. 617 (D. Kan.1973). In *Burgett*, the Court said:

> "Section 216(b) is a class action provision created by statute, independent of and unrelated to the class action covered by Rule 23, F.R.Civ.P. [citing authorities]. There is no need to show compliance with the requirements of Rule 23(a) and (b), F.R.C.P., in order to maintain the action, and there are no procedures for the Court to direct notice to the class, or for members to 'opt out,' or for making the judgment binding on the class. A party desiring to join the action merely gives his consent in writing and such consent is filed in the court in which the action is brought. Such party is thus joined in the action as a party-plaintiff." 361 F.Supp. at 622.

The above interpretation was reiterated in *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y.1972), where it was held that a class action under FLSA is statutory and independent of class actions under Rule 23. And then again in *Schmidt v. Fuller*, 527 F.2d 532, 536 (C.A. Minn. 1975) where the court adopted the findings of *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) which also found:

> "There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit. Under 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or

16

> may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent. Rule 23© provides for 'opt out' class actions. FLSA 16(b) allows as class members only those who 'opt in.' These two types of class actions are mutually exclusive and irreconcilable. . .  Rule 23 cannot be invoked to circumvent the consent requirement of the third sentence of FLSA 16(b) . . . Id. at 288-89.

Based upon over 30 years of classic jurisprudence, it is now virtually an axiom that Section 216(b) of the FLSA requires that no employee *shall* be a party plaintiff unless he gives his written consent and files it with the court in which the action is brought.  *Cooke v. Reynolds*, 65 F.R.D. 532 (E.D. Va. 1975)  The cases interpreting §216(b) have uniformly required the filing of such consents. See, *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135 (5th Cir. 1970). Unfortunately, no such consent was filed by Plaintiffs in the instant matter, and as yet, no such consent form has been filed by any similarly situated individuals of whom the plaintiffs purport to represent.   Therefore, Rule 23 is inapplicable to this matter, and that the purported class of plaintiffs have not met the consent requirements of 29 U.S.C. § 216(b) which are prerequisites to bringing a class action thereunder.  Based upon the forgoing, Plaintiffs can not maintain a class action suit against Defendants.

### Plaintiffs Have No Cause of Action Under the Sherman Act; Nor Can They Recover for Damages Under Clayton Act Because They Were Not Injured in Business or Property

Plaintiffs do not have a cause of action under the Sherman Act, nor can they recover damages under the Clayton Act because they were not injured in their business or property as a result of any violation.  Title 15 U.S.C. §15 provides the following in pertinent part:

> "Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reasons of anything forbidden in the anti trust laws must sue therefor in district court in the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy. . ."  Id.

A civil plaintiff suing under authority of Section 4 of the Clayton Act, 15 U.S.C. §15, must, as a threshold matter, allege an "antitrust injury" to its business, regardless of the conduct alleged to have violated the antitrust laws. *Asa Accugrade, Inc. v. American Numismatic Ass'n.*,

17

370 F.Supp.2d 213 (D. D.C. 2005) citing , *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)("*[T]he right of action under §4 of the Clayton Act [15 U.S.C. §15] is available only to those private plaintiffs who have suffered antitrust injury.*")  Thus, a civil antitrust plaintiff bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; it s not enough for a plaintiff to merely show it has been harmed as an individual competitor.  *Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.,* 996 F.2d 537, 543 (3d Cir.1993); *see also Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l,* 256 F.3d 799, 812 (D.C. Cir.2001)(*noting that "a competitor may not claim an injury resulting from competition even when such competition was actually caused by conduct that violates the antitrust laws"*).

Defendants submit that Plaintiffs can not recover under the Clayton Act for said violations of the Sherman Act because they did not sufficiently allege that they owned any businesses.  Nor did they plead any facts to show how their alleged businesses or property were injured by such anti-trust violations.  Plaintiffs failure to receive minimum wages is not a property right for which the anti-trusts laws are enacted to protect.  A violation of the minimum wage laws is a statutory right for which Congress or a State legislature may control whenever they see fit.  *Austin v. Bisbee, AZ,* 855 F.2d1429, 1436 (9th Cir. 1988)(*cause of action under FLSA is not is inchoate and affords no definite or enforceable property right until reduced to final judgment.*)

In the instant matter, Plaintiffs alleged that they were injured in their "business and property" as a result of an alleged *agreement* between Defendants [unknown and unidentified] to "fix, suppress, stabilize . . . artificially low" the wages of homeless employees, et al., who provide eviction services in the D.C. Metro Area.  (Pl. Compl. ¶102)  Plaintiffs further alleged that said agreement created a restraint of trade.  Although Plaintiffs make these same bald conclusory allegations in Counts VI-IX, they further allege that they were injured in their *business* under the Clayton Act and other state anti-trust laws.  However, they failed to plead any additional facts to identify: (a) what their businesses were, (b) how they were effected by the

alleged restraint of trade, and (c) what if any injuries their businesses suffered as a result thereof. Instead, Plaintiffs practically abandoned the "injured business" allegations altogether in the later paragraphs of Counts VI-IX so as not to call into question their status as an employee rather than an independent contractor. See, *Jean Anderson Hierarchy of Agents v. AllState Life, Ins. Co.*, 2 F.Supp. 2d 688, 692 (E.D. Pa 1998)(*Court's jurisdiction under FLSA may be invoked only in employer employee relationships, as opposed to employer independent contractor relationships*) They further clarify the basis of their claim under the respective anti-trust laws in Counts VI-IX by stating that their injuries consisted of "*receiving wages below the legal minimum wage*." (Pl. Compl. ¶105)

As mentioned above, the right to the statutory minimum wage under FLSA and its State analogs, is not a property right; it is a statutory right that may be withdrawn by Congress or a State legislature at any time before ripening into a final judgment. *See, Jones v. American Window Cleaning Corp.*, 210 F. Supp. 921, 923 (D. Va. 1962)("*A statutory right is not a property right which is subject to constitutional guarantees. Statutory rights may be withdrawn by Congress at any time before ripening into final judgment*") Unless or until Plaintiffs are able to ripen into final judgments their claims for violations of the FLSA and related state minimum wage laws, they have no right to pursue any claims under the federal and state anti-trust laws on the grounds that their property was injured as a result of an alleged "*conspiracy*" by an entire local industry to pay homeless workers sub-minimal wages. Moreover, the issue of whether any of the businesses or individuals sued failed to pay Plaintiffs minimum wage for eviction services rendered, has yet to be determined. And even if a judgment is obtained against any of the multiple parties sued for a violation of any of the multiple minimum wage laws, inclusive of FLSA, it would be virtually impossible for Plaintiffs to show their property (i.e., a judgment), was injured as a result of any State or federal anti-trust violations.

Based upon the foregoing, Plaintiffs have failed to sufficiently plead that they owned businesses that were harmed as a result of Defendants A&A, Ward, or anyone else sued under their class action complaint. Plaintiffs further can not show that they were harmed in their

property as a result of violations of the FSLA, and other minimum wage statutes.  It is impossible under the facts of this case that any of Plaintiffs conspiracy to commit minimum wage act violation claims could ripen into damages under the Clayton Act as a result of Sherman Act [anti trust] violations.  Neither the Clayton nor Sherman Acts reasonably provide Plaintiffs with a legally cognizable cause of action, or an appropriate ground for relief.

### Plaintiffs Have No Cause of Action for Relief Under Unjust Enrichment and Quantum Meruit Theories.

Plaintiffs have no cause of action for relief under equitable theories of unjust enrichment and quatum meruit for failure to pay minimum wages.  The minimum wage requirement is a statutory device created by Congress and the respective State legislatures.  It is not a common law provision for which the respective cause of action and claim for relief would apply.  Again, assuming the allegations in Plaintiffs complaint are true, they agreed to perform evictions services not once but multiple times, over and over again for sub-minimal wages.  Plaintiffs claims for unjust enrichment and quantum meruit will fail for one or both of the foregoing reasons (a) Plaintiffs can not ask a court of equity to enforce an illegal contract, and (b) the existence a statutory remedy is an absolute bar to the claims in equity.

### Court Can Not Offer Assistance to Enforce Illegal Contract

The court can not offer its assistance to enforce an illegal contract.  A contract to perform an illegal act in the District of Columbia is void and unenforceable.  *A-Ibreham v. Edde*, 897 F. Supp. 2d 620, 622-23 (D. D.C. 1995)  The purpose of the rule is to prevent wrongdoers from using or abusing the legitimate judicial process to resolve disputes over their illegal undertakings.  Id.  Whether the action is brought at equity or at law, neither party to an illegal contract will be aided by the court, whether to enforce it or set it aside.  The rule denying recovery is based upon public policy rather than a desire to benefit or punish either party.  Id., see, also, *U.S. v. Farrell*, 606 F.2d 1341, 1349 (D.C. Cir. 1979)

The old adage "fool me once shame on you, fool me twice shame on me" has been never more applicable than to the facts of the instant case.  According to Plaintiffs complaint, they were constantly employed to perform eviction services for various employers for sub-minimal

wages from September 5, 2002 to the present. They knew/know the wages they received for their daily hire was illegal. Yet they continued to accept new employment, daily, for that same illegal wage thereby knowingly and intelligently engaging in an illegal contract. Plaintiffs never alleged that they were tricked, defrauded, or accepted employment under duress or undue influence. According to their complaint, they apparently wanted work, seized an opportunity, and provided their services for an agreed upon price. The choice to say "no" was always an option that apparently was rarely exercised. Unfortunately, as they have alleged throughout their complaint, the price they agreed to accept for their services was an illegal one. Now they are asking the court to reward them for consciously entering into multiple illegal contracts on a daily basis for the last 3-4 years to the present day under principals of equity. Defendants submit that their conspiracy to entrap and bring a damages claims against the parties sued should not be countenanced by the Court. Based upon the foregoing, for these and the reasons stated below, Plaintiffs complaint alleging unjust enrichment and quantum meruit should be dismissed.

### Unjust Enrichment and Quantum Meruit Claims Barred

Plaintiffs claims for unjust enrichment and quantum meruit based upon violations of State and Federal minimum wage laws are barred. Generally, if there is an adequate remedy at law, a court will not permit a claim in equity. *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144 n. 6 (2d Cir.1999)(*"[E]quity typically denied relief in a proceeding seeking restitution ... on the theory of unjust enrichment because the remedy at law, an action for damages, typically was adequate."*); *Pereira v. United Jersey Bank, N.A.,* 201 B.R. 644, 677 (S.D.N.Y.1996) (*"Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law."*)(internal citation omitted).

Plaintiffs have pleaded several statutory violations that provide extensive legal remedies such as treble damages, attorneys fees, injunctive, and declaratory relief. They can not additionally bring the above mentioned equitable claims because adequate remedies at law are built directly into the statutes alleged to have been violated. In the case of *Bongat v. Fairview Nursing Care Center, Inc.* 341 F. Supp.2d 181, 188-89 (E.D. N.Y 2004) former employees of a

nursing home attempted to do the same thing and failed as a matter of law.

In *Bongat*, plaintiffs filed suit against defendant alleging FLSA violations, breach of contract, unjust enrichment, and quantum meruit. *Bongat* at 188-89. Specifically, plaintiffs alleged that the defendant had been unjustly enriched because it failed to pay wages and overtime compensation for services delivered by plaintiffs. Id. Plaintiffs further alleged that they were entitled to quantum meruit recovery for the reasonable value of their services rendered. Plaintiffs moved for summary judgment on each of their claims, including the ones for equity. The court held "[S]ince plaintiffs' FLSA claim and any viable claim for breach of contract would provide an adequate remedy at law, plaintiffs' claims based upon unjust enrichment and quantum meruit are dismissed." Plaintiffs instant equity claims should suffer the same fate as the plaintiffs in *Bongat* for the same reasons. Based upon all of the above, Plaintiffs equitable claims of unjust enrichment and quantum meruit should be dismissed.

**CONCLUSION**

For the above stated reasons, Plaintiffs complaint against Defendants A&A, and Ward should be hereby DISMISSED with prejudice.

Respectfully Submitted,


_____/s/_____
J. Wyndal Gordon
Bar No.#: MD023572
**THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**
10 North Calvert Street, Suite 930
Baltimore, Maryland 21202
410.332.4121 o
410.347.3144 f
Attorney for Bob Ward,
and A&A Cardinal Evictions

_____/s/_____
Stephanie Kinder
Bar No.#: 446209
**THE LAW OFFICE OF STEPHANIE KINDER, P.A.**
10 North Calvert Street, Suite 930
Baltimore, Maryland 21202
410.244.6263 o
410.347.3144 f
Attorney for Bob Ward,
and A&A Cardinal Evictions

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, this _1ˢᵗ_ day of _November_, 2006, that the foregoing Motion to Dismiss was served upon Plaintiffs and Defendants' known Counsel:


Mathew Slater
**CLEARY GOTTLIEB STEEN & HAMILTON**
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006

Gina Smith
**MEYERS, RODBELL & ROSENBAUM, P.A.**
6801 Kenilworth Avenue, Suite 400
Greenbelt, Maryland 20737

I. Staten
**BUTCH ENTERPRISES, INC.**
10332 Main Street, Suite 352
Fairfax, Virginia 22030


_____
J. Wyndal Gordon

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

ASHFORD, et al.                                    *

Plaintiff                                          *

    v.                                          *

EAST COAST EXPRESS EVICTIONS, et al.    *        CASE#:06-CV-1561 RJL

Defendants                                         *
****************************************************************************

## ORDER

    **UPON CONSIDERATION**, of Defendants A&A and Robert "Bob" Ward's First and

Second Motion to Dismiss, and the Responses of Plaintiffs;

    **IT IS HEREBY ORDERED**, this ___ day of ____, 2006, that the foregoing Motion be

GRANTED.


                       _____

                       Judge Richard J. Leon