**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| Harry Jakeyia Ashford, Kirk Douglas Greene, and Anthony Forte, | ) ) ) | |
|  | ) | Civil Action No. 06-CV-1561 RJL |
| individually and on behalf | ) | |
| of all others similarly situated, | ) | Hon. Richard J. Leon |
|  | ) | |
| *Plaintiffs*, | ) | |
|  | ) | Hearing Requested |
| v. | ) | |
|  | ) | |
| East Coast Express Eviction, A 1 Eviction Services, A & A Cardinal Eviction, All American Eviction Company, Butch Enterprises, Inc., Big Time Movers, Caroline Lanford, Tanya Smith, Nelson Terry,  Linden Terry, Bob Ward, John Doe 1, and John Doe 2, | ) ) ) ) ) ) ) ) | |
|  | ) | |
| *Defendants*. | ) | |

_____

**PLAINTIFFS' OPPOSITION TO SECOND MOTION TO DISMISS**
**OF DEFENDANTS A&A CARDINAL EVICTION AND BOB WARD**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.  A&A AND WARD'S SECOND MOTION TO DISMISS IS UNTIMELY AND PROCEDURALLY IMPROPER. ................................................................... 2

II.  TA \xc <@nper> \xl 36 \s FOPUBK00096 \xeum \l "PLAINTIFFS DEFINED "D.C. METRO AREA"" PLAINTIFFS DEFINED "D.C. METRO AREA" IN THEIR COMPLAINT AND PROPERLY ESTABLISH THAT THE COURT HAS SUBJECT MATTER JURISDICTION. ........................................................................................... 6

III.  THE COURT HAS PERSONAL JURISDICTION OVER A&A AND WARD UNDER D.C. LAW AND THE CLAYTON ACT. ................................. 8

IV.  VENUE IS PROPER IN THIS DISTRICT BECAUSE THE EVENTS GIVING RISE TO THE CLAIMS OCCURRED HERE AND A&A AND WARD ARE SUBJECT TO PERSONAL JURISDICTION HERE. .................. 12

V.  THE COMPLAINT STATES CLAIMS UPON WHICH THIS COURT MAY GRANT RELIEF. ................................................................................. 13

A.  Plaintiffs have stated valid claims under federal and state minimum wage laws. ........................................................................................ 14

B.  Plaintiffs have stated claims under federal and state antitrust laws. ........ 17

C.  The complaint states a claim for equitable relief. ................................... 20

VI.  A&A AND WARD'S CHALLENGES TO CLASS CERTIFICATION ARE NOT APPROPRIATE FOR RESOLUTION AT THIS STAGE IN THE PROCEEDINGS. ....................................................................................... 22

CONCLUSION ....................................................................................................................... 23

i

## TABLE OF AUTHORITIES

CASES

*Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907 (5th Cir. 1993) ..................................3

*Ancar v. Sara Plasma, Inc.*, 964 F.2d 465 (5th Cir. 1992) ..........................................................18

*Bahramipour v. Citigroup Global Markets, Inc.*, No. C 04-4440 CW, 2006 WL 449132
    (N.D. Cal. Feb. 22, 2006)........................................................................................................23

*Barr v. Dramatists Guild, Inc.*, 573 F. Supp. 555 (S.D.N.Y. 1983) ....................................... 18-19

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982) ..................................................................18

*Brennan v. S&M Enterprises*, 362 F. Supp. 595 (D.D.C. 1973)......................................................6

*Brown v. Pro Football, Inc.*, 50 F.3d 1041 (D.C. Cir. 1995)........................................................19

*Daneshvar v. Graphic Tech., Inc.*, 2005 WL 902113 (D. Kan. Apr. 19, 2005) ............................5

*\*Diamond Chem. Co., Inc. v. Atofina Chems., Inc.* 268 F. Supp. 2d 1 (D.D.C. 2003) ................11

*Dove v. Coupe*, 759 F.2d 167 (D.C. Cir. 1985) ..................................................................... 16-17

*Edmond v. U.S. Postal Service General Counsel*, 949 F.2d 415 (D.C. Cir. 1991).........................9

*Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841 (D.D.C. 1996) ..................................21

*EP Operating Ltd P'ship v. Placid Oil Co.*, 1994 WL 507455 (E.D. La. Sept. 14, 1994)..............4

*Fed. Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990).....................17

*\*Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961) ....................................................14

*\*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) .......................................9

*GTE New Media Servs., Inc.  v. Bellsouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) .....................10

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) ....................................9

*Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487 (D.C. Cir. 1998)................................................21

*\*Henthorn v. Dep't of Navy*, 29 F.3d 682 (D.C. Cir. 1994) ........................................................15

*Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140 (D.C. 1985) .......................................................9

*In re Rich*, 337 A.2d 764 (D.C. 1975) ..........................................................................................21

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)........................................................................10

*Law v. NCAA*, 134 F.3d 1010 (10th Cir. 1998)...........................................................................18

\*_Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co._, 334 U.S. 219 (1948) .................. 18-19

*Manns v. City of Atlanta*, 2006 WL 2466836 (N.D. Ga. Aug. 23, 2006) .......................................5

*Modaressi v. Vedadi*, 441 F. Supp. 2d 51 (D.D.C. 2006) .........................................................7, 12

*Morrison v. Int'l. Programs Consortium, Inc.*, 253 F.3d 5  (D.C. Cir. 2001) ...............................15

*Nat'l Macaroni Mfrs. Ass'n v. Fed. Trade Comm'n*, 345 F.2d 421 (7th Cir. 1965).....................19

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-CV-332 (EGS), 2006 WL
  2711527 (D.D.C. Sept. 21, 2006) ...........................................................................................20

*Perles v. Kagy*, 362 F. Supp. 2d 195 (D.D.C. 2005)....................................................................21

*Randolph Eng'g Co. v. Fredenhagen Kommandit-Gelsellschaft*, 476 F. Supp. 1355 (W.D.
  Pa. 1979) ...................................................................................................................................3

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) ..........................................................14

*Schuler v. United States*, 617 F.2d 605 (D.C. Cir. 1979)............................................................14

*Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) .................10

*Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37 (D.D.C. 2002) ...................................................3

*Steiner v. Mitchell*, 350 U.S. 247 (1956) ....................................................................................14

\*_Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123_, 321 U.S. 590 (1944)...........................16

*Todd v. Exxon*, 275 F.3d 191 (2d Cir. 2001).................................................................................18

\*_United Mine Workers v. Gibbs_, 383 U.S. 715 (1966)..................................................................8

*United States v. Silk*, 331 U.S. 704 (1947)..................................................................................14

*United States v. Utah Soc. for Healthcare Human Res. Admin.*, 1994-2 Trade Cases ¶
  70,795 (D. Utah Sept. 14, 1994) ............................................................................................17

\*_Wirtz v. Leonard_, 317 F.2d 768 (5th Cir. 1963) ........................................................................16

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)..............................................10

STATUTES, RULES & REGULATIONS

15 U.S.C. § 1 .................................................................................................17

15 U.S.C. § 12 .................................................................................................7

*15 U.S.C. § 22 ...........................................................................................11-12

*28 U.S.C. § 1331 .............................................................................................7

*28 U.S.C. § 1367 .............................................................................................8

28 U.S.C. § 1391(b)(2) .....................................................................................12

29 U.S.C. § 201 .................................................................................................7

29 U.S.C. § 703(g) ...........................................................................................16

D.C. Code § 13-334(a) .......................................................................................9

D.C. Code § 13-423(a) .......................................................................................9

D.C. Code § 28-4502 ........................................................................................17

Fed. R. Civ. P. 7(a) ............................................................................................5

Fed. R. Civ. P. 8(e)(2) ......................................................................................20

Fed. R. Civ. P. 12 ..............................................................................................3

Fed. R. Civ. P. 12(a)(1)(A) ................................................................................2

Fed. R. Civ. P. 12(b) .......................................................................................3-4

Fed. R. Civ. P. 12(b)(2) ......................................................................................3

Fed. R. Civ. P. 12(b)(3) ......................................................................................3

Fed. R. Civ. P. 12(b)(6) ......................................................................................4

*Fed. R. Civ. P. 12(g) ..................................................................................2-3, 5

Fed. R. Civ. P. 12(h) ......................................................................................2-4

*Fed. R. Civ. P. 12(h)(1) .....................................................................................3

Fed. R. Civ. P. 12(h)(2) ...................................................................................4-5

Fed. R. Civ. P. 18 .............................................................................................20

Fed. R. Civ. P. 19 ......................................................................................................4

Fed. R. Civ. P. 23 ....................................................................................................22

L. Cv. R. 5.3 ..............................................................................................................2

L. Cv. R. 23.1(b) ......................................................................................................23

Md. Code Ann., Com. Law § 11-204(a)(1) .............................................................17

Va. Code Ann. § 59.1-9.5 ........................................................................................17

**OTHER AUTHORITIES**

Bruce Goldstein, et al., *Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment*, 46 UCLA L. Rev. 983 (1999) ...............................................................................................................16

Moore's Federal Practice §12.23 ...............................................................................5

Wright & Miller, 5C Fed. Prac. & Proc. Civ. 3d § 1385 ........................................ 3-5

Authorities marked with an asterisk (*) are those on which plaintiffs chiefly rely. *See* L.Cv.R. 7(a).

## PRELIMINARY STATEMENT

Since at least 2002 through the present, the defendants in this case, including A&A Cardinal Evictions ("A&A") and Bob Ward ("Ward"), have hired members of the plaintiff class to perform evictions throughout the D.C. Metro Area, including the District of Columbia and portions of Maryland and Virginia, and paid members of the class less than the legally required minimum wage for their labor. A&A and Ward do not contest plaintiffs' allegations that defendants have entered the District of Columbia to hire members of the plaintiff class to perform evictions, nor do they contest plaintiffs' claims that A&A and Ward paid members of the class less than the minimum wage. The class is a large group of homeless persons and others who have performed such evictions. Defendants are a group of entities and persons who offer eviction services and who have illegally colluded with each other to suppress wages paid to the class to levels far below those required by federal, D.C., Maryland, and Virginia law. This illegal collusion is prohibited under federal and state antitrust laws.

A&A and Ward filed a motion to dismiss on October 17, 2006. Plaintiffs filed their opposition to motion on November 13, 2006. A&A and Ward have served plaintiffs with a second Motion to Dismiss ("A&A/Ward 2d Mot.") asserting, among other things, that (1) plaintiffs failed to identify which judicial district constitutes the D.C. Metro Area for jurisdictional purposes, (2) the Court has no personal jurisdiction over Bob Ward, (3) venue in this Court is improper, (4) plaintiffs do not meet the prerequisites for class actions, and (5) the complaint does not state a claim for which relief may be granted. (*See* A&A/Ward 2d Mot. at 4, 6, 9, 17.)[1] A&A and Ward are not entitled to bring a second motion. Fed. R. Civ. P. 12(g), (h). In any event, A&A and Ward's second motion is without merit and should be denied.

---

[1] Although A&A and Ward submitted their motion electronically on November 3, 2006, the accompanying certificate of service indicates that the motion was "served" on November 1, 2006. The certificate of service is

## ARGUMENT

**I.    A&A AND WARD'S SECOND MOTION TO DISMISS IS UNTIMELY AND PROCEDURALLY IMPROPER.**

On September 8, 2006, plaintiffs served A&A and Ward with their complaint.  Pursuant to Fed. R. Civ. P. 12(a)(1)(A), A&A and Ward were to answer or move to dismiss by September 28, 2006.  On September 25, 2006, plaintiffs' counsel conferred by telephone with A&A and Ward's counsel, Stephanie Kinder, and agreed to allow A&A and Ward 15 additional days, or until October 13, 2006, to respond to the complaint.  (*See* Declaration of Lee F. Berger (Nov. 13, 2006), attached as Ex. A.)  On October 12, 2006, A&A and Ward's counsel contacted plaintiffs' counsel to request three additional days to respond to the complaint, which plaintiffs granted, and on October 17, 2006, A&A and Ward timely filed their first motion to dismiss.  (*See id.*; Docket Item No. 16.)  On November 3, A&A and Ward, "upon further examination of Plaintiffs [*sic*] complaint" and "through additional counsel" filed a second motion to dismiss.  (*See* A&A/Ward 2d Mot. at 1.)  Because this second motion to dismiss was filed nearly three weeks after the response date agreed to by plaintiffs, and nearly two months after A&A and Ward were served with the complaint in this matter, A&A and Ward's second motion to dismiss is untimely.

In addition to being untimely filed, A&A and Ward's second motion to dismiss is procedurally improper.  By filing this second motion to dismiss, A&A and Ward unfairly attempt to bolster the flimsy arguments made in their first motion to dismiss.  The general rule taken by courts and scholars from Fed. R. Civ. P. 12(g) and 12(h) is that a second motion to dismiss is not permitted.

If the defendant exercises the option afforded by Rule 12(b) and raises certain defenses and objections by preliminary motion, he or she is bound by the consolidation principle

---

improper, however, because it does not indicate the manner of service and is unsigned.  *See* L. Cv. R. 5.3.  Plaintiffs' counsel has not received a copy of the motion through any method other than the Court's electronic filing system.  Additionally, this motion appears to violate several rules of civil procedure, as discussed *infra* at Section I.

in Rule 12(g), which contemplates a single pre-answer motion in which the defendant
asserts all the Rule 12 defenses and objections that are then available to him or her.  This
rule generally precludes a second motion based on any Rule 12 defense or objection that
the defendant could have but neglected to raise in the original motion.

Wright & Miller, 5C Fed. Prac. & Proc. Civ. 3d § 1385.  A&A and Ward based their first motion

to dismiss on an argument that the Court lacks personal jurisdiction (Fed. R. Civ. P. 12(b)(2))

and that venue is improper in this district (Fed. R. Civ. P. 12(b)(3)).  A&A and Ward's second

motion to dismiss is based, in part, on these same grounds.[2]

According to Fed. R. Civ. P. 12(g), if a party submits a motion to dismiss under rule 12,

"but omits therefrom any defense or objection then available to the party which this rule permits

to be raised by motion, the party shall not thereafter make a motion based on the defense or

objection so omitted."  Rule 12(h)(1) provides that a defense of lack of jurisdiction over the

person or of improper venue is waived if not raised in a motion to dismiss filed pursuant to Rule

12.  *See Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 40-41 (D.D.C. 2002) (denying motion to

dismiss for lack of personal jurisdiction when that defense was not raised in first motion to

dismiss and noting that, "[t]he Federal Rules of Civil Procedure . . . do not countenance [such]

maneuvering"); *see also Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 910 (5th Cir.

1993) (holding that district court erred by allowing second motion to dismiss on improper venue,

a ground raised in first motion to dismiss); *Randolph Eng'g Co. v. Fredenhagen Kommandit-*
*Gelsellschaft*, 476 F. Supp. 1355 (W.D. Pa. 1979) (denying second motion to dismiss for

improper venue, a ground raised in first motion to dismiss, and noting that "[t]he policy concern

underlying the consolidation requirement is violated whether the second motion raises a new

Rule 12(b) defense or whether it raises a new theory supporting the original Rule 12(b)

---

[2]    As discussed *infra* in Section II, A&A and Ward challenge the Court's subject matter jurisdiction by
wrongly arguing that plaintiffs failed to define "D.C. Metro Area."  As noted in Section II, arguments relating to the
D.C. Metro Area have nothing to do with the Court's subject matter jurisdiction and appear to be an attempt by
A&A and Ward to couch their unsound personal jurisdiction arguments in a different form.

defense"). By not raising the arguments made in this second motion to dismiss regarding personal jurisdiction and venue in their first motion to dismiss, A&A and Ward have waived those arguments.

A&A and Ward also base their second motion to dismiss on Rule 12(b)(6), which allows for dismissal for failure to state a claim upon which relief can be granted. Although such defenses are not among those automatically waived under Rule 12(h)(2) if not raised in an initial motion to dismiss, A&A and Ward cannot raise a defense of failure to state a claim upon which relief can be granted in a second motion to dismiss. *EP Operating Ltd P'ship v. Placid Oil Co.*, 1994 WL 507455 at *2 (E.D. La. Sept. 14, 1994) (denying second motion to dismiss for failure to join a party under Rule 19 because even though it is a defense preserved under Rule 12(h), it "must be asserted in a manner consistent with that provision" and not as a second pre-answer motion to dismiss). The impropriety of such a second motion is well recognized. For example, professors Wright and Miller explain in their treatise that:

> The ban against successive pre-answer motions extends to . . . failure to state a claim upon which relief can be granted. . . . The right to raise [this] defense[] by preliminary motion is lost when the defendant neglects to consolidate [it] in his initial motion. Consequently, if the defendant first moves to dismiss on the ground of lack of jurisdiction over the person, he is not allowed to make a second preliminary motion to dismiss on the ground of failure to state a claim upon which relief can be granted.

Wright & Miller, 5C Fed. Prac & Proc. Civ. 3d § 1385. Following an initial motion to dismiss, Rule 12(h)(2) allows a defense of failure to state a claim upon which relief can be granted to be presented in a motion for judgment on the pleadings, a motion for summary judgment, or at trial, but not in a subsequent pre-answer motion to dismiss. *See* Fed. R. Civ. P. 12(h)(2), 7(a); Wright & Miller § 1385; Moore's Federal Practice §12.23, at 12-29; *Daneshvar v. Graphic Tech., Inc.*, 2005 WL 902113 at *1 (D. Kan. Apr. 19, 2005) (denying second motion to dismiss for failure to state a claim as prohibited by Rule 12(g) and 12(h)(2)); *Manns v. City of Atlanta*, 2006 WL

4

2466836 at *4 (N.D. Ga. Aug. 23, 2006) (denying second motion to dismiss for failure to state a claim and noting that while these arguments are not waived completely, they cannot properly be asserted in a second motion to dismiss).

Although A&A and Ward note that courts have sometimes allowed a second motion to dismiss, even the opinion on which they rely states that the weight of authority disallows such second motions.  (A&A/Ward 2d Mot. at 2 (citing *Lindsey v. United States*, No. 05-1761(RBW), 2006 WL 2413720 at *14 (D.D.C. Aug. 22, 2006)).)  Here, A&A and Ward have notably failed to show any cause for deviation from the general rule prohibiting second motions to dismiss. A&A and Ward have offered no explanation why the additional defenses raised in their second motion were unavailable to them at the time they filed their first motion.  *See Daneshvar*, 2005 WL 902113 at *2.  Indeed, the arguments in their motion are either rehashed versions of arguments raised in the first motion or are based on information set forth in a "Declaration of Robert Ward" that was submitted with the first motion.  (*Compare* Ex. A to A&A/Ward 2d Mot. *with* Ex. A to Defedant A&A Eviction's and Robert Ward's Motion to Dismiss (Docket Item No. 16, filed Oct. 17, 2006).)  A&A and Ward had ample time, due to plaintiffs' two agreements to extend the time in which to respond, to develop their arguments prior to filing their first motion to dismiss and therefore should be prohibited from attempting another, improper bite at the apple.

## II.    PLAINTIFFS DEFINED "D.C. METRO AREA" IN THEIR COMPLAINT AND PROPERLY ESTABLISH THAT THE COURT HAS SUBJECT MATTER JURISDICTION.

As they did in their first motion to dismiss, A&A and Ward incorrectly argue in their second motion to dismiss that "Plaintiffs completely failed to provide . . . a clear definition of what judicial district or geographic area constitutes the *D.C. Metro Area*" for "[p]urposes of

[s]ubject [m]atter [j]urisdiction." (*See* A&A/Ward 2d Mot. at 4, 5.) "Try as they might," A&A and Ward assert, "Defendants can not figure out what geographic area constitutes the *D.C. Metro Area*." (*Id.* at 5.) A&A and Ward argue that a failure to define "D.C. Metro Area" renders plaintiffs' complaint dismissible for lack of subject matter jurisdiction. (*Id.* at 5-6.)

Despite A&A and Ward's supposedly "close examination of Plaintiffs [*sic*] complaint" (*id.* at 6), they ignore the fact that in Paragraph 8 of the complaint, plaintiffs expressly defined "D.C. Metro Area" as:

> D.C., southeastern Maryland (including Prince George's County, Montgomery County, Anne Arundel County, Howard County, Calvert County, and Charles County) and northern Virginia (including Fairfax County, Arlington County, Prince William County, Loudon County, Fauquier County, and Stafford County).

Because A&A and Ward's subject matter jurisdiction argument is based wholly on their erroneous conclusion that plaintiffs did not specifically define the "geographic location" of the acts alleged in the complaint, the Court should pay their subject matter jurisdiction argument no heed.

Besides wrongly asserting that plaintiffs failed to define "D.C. Metro Area," A&A and Ward likewise incorrectly argue that the geographic location of the allegations has anything to do with the Court's *subject matter* jurisdiction. (*See* A&A/Ward 2d Mot. at 5.) In an attempt to support their position, A&A and Ward cite cases that deal with venue and substantive issues under the Fair Labor Standards Act. (*See id.* at 5-6.) A&A and Ward cite *Brennan v. S&M Enterprises*, 362 F. Supp. 595 (D.D.C. 1973), for the proposition that plaintiffs must establish an effect on interstate commerce by A&A's business and the work performed by its employees in order to avoid dismissal for lack of subject matter jurisdiction. (A&A/Ward 2d Mot. at 5.) That case, however, does not discuss an effect on interstate commerce as a prerequisite to establishing the court's subject matter jurisdiction, but rather as one factor that must be satisfied for FLSA to

6

apply to an employee's right to overtime pay.  Notably, A&A and Ward do not argue that the interstate commerce requirement is not adequately pled.  Nevertheless, the complaint satisfies this requirement, because it alleges that defendants, including A&A and Ward, cross state lines to hire members of the plaintiff class and perform evictions throughout the D.C. Metro Area, including the District of Columbia and two states.  A&A and Ward also cite *Modaressi v. Vedadi*, 441 F. Supp. 2d 51 (D.D.C. 2006), for the proposition that, when a defendant objects, venue must be established for each cause of action within a complaint.  (A&A/Ward 2d Mot. at 6.)  Again, this case deals with venue objections, not subject matter jurisdiction.[3]  Although these cases may relate to A&A and Ward's other contentions, they shed no light on whether this Court has subject matter jurisdiction.

This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1367.  Under 28 U.S.C. § 1331, this Court is vested with original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States."  Plaintiffs have brought this action under two federal statutes:  The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and the Clayton Act, 15 U.S.C. § 12 *et seq*.  (*See* Compl. ¶¶ 76-82, 95-105.)  Thus, the Court has original subject matter jurisdiction over this action.

Moreover, this Court has supplemental jurisdiction over the claims that arise under state laws.  Under 28 U.S.C. § 1367, this Court is vested with supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The complaint asserts claims under the minimum wage statutes of the District of Columbia (Count I), Maryland (Count III), and Virginia (Count IV), under the antitrust statutes of these jurisdictions (Counts VII, VIII, and IX), and under state common law principles of unjust enrichment and

---

[3]     Venue is proper in this Court.  *See infra*, Section III.

*quantum meruit* (Counts X and XI). The allegations supporting the claims under these state laws are the same as the allegations supporting the federal claims, namely the defendants' failure to pay minimum wage for eviction work in the D.C. Metro Area and the defendants' illicit conspiracy to suppress wages for eviction work in the D.C. Metro Area. Accordingly, the state claims share a "common nucleus of operative fact" with the federal claims, and the court has jurisdiction over them. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

## III.  THE COURT HAS PERSONAL JURISDICTION OVER A&A AND WARD UNDER D.C. LAW AND THE CLAYTON ACT.

A&A and Ward argue that because they perform evictions solely in Maryland, the complaint should be dismissed.[4] (*See* A&A/Ward 2d Mot. at 6.) In addition, A&A and Ward argue that because plaintiffs did not specify Ward's state of domicile, only the state of domicile of the unincorporated business over which he maintains sole control, the complaint should be dismissed. (*See id.*) Defendants are mistaken. The Court may exercise personal jurisdiction over A&A and Ward under principles of both general jurisdiction and specific long-arm jurisdiction. Both D.C. law and the Clayton Act provide for jurisdiction over A&A and Ward.

Under D.C. Code § 13-334(a), this Court may exercise general jurisdiction over any foreign corporation that is "doing business" in the District. *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002).[5] The Supreme Court has established that if a defendant's contacts with the forum state are "continuous and systematic," then a court within

---

[4]     As discussed *infra* in Section II, A&A and Ward describe these arguments as going to the subject matter jurisdiction of the court. They are better characterized as personal jurisdiction arguments, however, and plaintiffs treat them as such for purposes of this section.

[5]     The personal jurisdiction of a federal district court is coextensive with that of courts of general jurisdiction in the state in which the federal court sits. *Edmond v. U.S. Postal Service General Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)) ("Even though subject-matter jurisdiction is here predicated upon a federal question, [plaintiffs] must rely on D.C. law to sue nonresident defendants, since no federal long-arm statute applies."). Accordingly, the jurisdictional statutes of the District of Columbia are applicable to defining the Court's jurisdiction.

that state may properly exercise general personal jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Moreover, this Court has general jurisdiction over a defendant who has "been 'carrying on in [D.C.] a continuous and systematic, but limited, part of its general business.'" *Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140, 1148 (D.C. 1985) (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)). Here, the complaint contains allegations that A&A and Ward (alongside the other defendants) regularly hire employees within D.C. and transport them from D.C. to eviction sites in the D.C. Metro Area before returning them to D.C. (Compl. ¶¶ 34-41.) Such activities within the District are "continuous and systematic" and therefore support the exercise of general personal jurisdiction over A&A and Ward.

Additionally, the District of Columbia long-arm statute, D.C. Code § 13-423(a), allows the Court to exercise personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's - - (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; [and] (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." The D.C. Circuit has explained section (a)(1) by noting that the "'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus merge into a single inquiry." *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Thus, the relevant issue is whether the complaint alleges "minimum contacts [between the defendant and the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Court must ensure that "defendant's conduct and

9

connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Even if A&A and Ward perform evictions only in Maryland, as stated in the Declaration of Robert Ward attached as Exhibit A to the second motion to dismiss, uncontroverted allegations in the complaint demonstrate that A&A and Ward "transact business" within the District of Columbia.  Indeed, the complaint alleges that A&A and Ward hire members of the class within D.C. to conduct evictions in the D.C. Metro Area, including picking up class members in the District, and paying sub-minimum wages in the District.  (*See* Compl. ¶¶ 34-44.) Furthermore, the complaint contains allegations that A&A and Ward have engaged in a conspiracy to pay wages below the mandatory minimums in the District (Compl. ¶¶ 39, 68), and A&A and Ward's involvement in such a conspiracy is an additional basis for long-arm jurisdiction.  *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001) ("Persons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly'; coconspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'" (quoting D.C. Code § 13-423(a)(1))).  Ward's declaration does not address, let alone refute, these various grounds for the exercise of personal jurisdiction.

Furthermore, Section 12 of the Clayton Act, 15 U.S.C. § 22, provides that "[a]ny suit, action or proceeding under the antitrust laws against a corporation may be brought . . . in any district wherein it . . . transacts business."  This Court has stated that "[t]he difference between jurisdiction under the Clayton Act and D.C.'s long-arm statute is that while both look at contacts with the district, under Section 12 of the Clayton Act 'the transactions do not have to be related to the cause of action or the subject matter of the suit.'"  *Diamond Chem. Co., Inc. v. Atofina Chems., Inc.* 268 F. Supp. 2d 1, 10 (D.D.C. 2003) (quoting *Chrysler Corp. v. Gen. Motors Corp.*,

589 F. Supp. 1182, 1195 (D.D.C. 1984)).  As stated above, A&A and Ward "transact business" in D.C. because A&A and Ward have hired members of the class in D.C., paid them illegal wages in D.C., and conspired with others to suppress wages in D.C.  (*See* Compl. ¶¶ 36-39, 45-56, 86.)  These same facts support jurisdiction under the Clayton Act.

Finally, if contrary to the showing above the Court concludes that the complaint's allegations are insufficient to establish personal jurisdiction, the Court should not dismiss but instead should order jurisdictional discovery because such discovery is reasonably likely to confirm that the amount and extent of A&A and Ward's contacts with the District support personal jurisdiction.  "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is *entitled* to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum."  *Diamond Chem.*, 268 F. Supp. 2d at 15 (quoting *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996); (emphasis added)).  For example, plaintiffs would request A&A and Ward's payroll and wage records, maintenance of which is required by the tax and wage laws (*see* Compl. ¶¶ 55-56), as well as A&A and Ward's records and other evidence of the evictions they have performed, the locations of those evictions, and the sources of labor employed on such evictions.[6]  Such discovery will provide probative evidence of A&A and Ward's contacts with this forum and thus of the Court's jurisdiction.

---

[6]    These examples are illustrative in nature and do not comprise an exhaustive list of materials that plaintiffs would request in jurisdictional discovery.

**IV.    VENUE IS PROPER IN THIS DISTRICT BECAUSE THE EVENTS GIVING RISE TO THE CLAIMS OCCURRED HERE AND A&A AND WARD ARE SUBJECT TO PERSONAL JURISDICTION HERE.**

A&A and Ward allege that venue in the District of Columbia is improper because three of the defendants, Ward, John Doe 1, and John Doe 2, named in the complaint in their individual capacities were not "alleged to be from any particular State or judicial district." (A&A/Ward 2d Mot. at 7.) A&A and Ward's arguments must fail, however. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 22. Under 28 U.S.C. § 1391(b)(2), venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to a claim occurred." Here, a substantial number of the class members were hired and paid sub-minimum wages in the District, and a substantial number of the evictions on which they worked and for which they were paid suppressed wages were in the District.[7] (Compl. ¶¶ 37, 40.) Additionally, Section 12 of the Clayton Act, 15 U.S.C. § 22, provides that "[a]ny suit, action or proceeding under the antitrust laws against a corporation may be brought . . . in any district wherein it . . . transacts business." By directing the actions of businesses alleged to have engaged in the practices set forth in the complaint and by engaging in the practices set forth in the complaint themselves (Compl. ¶¶ 37, 40), Ward and the other defendants named in their individual capacities have "transacted business" within the District, and thus venue is proper in the District.

---

[7]    A&A and Ward also allege that venue in the District of Columbia is improper because the complaint suggests more evictions may have taken place in Maryland than in D.C. (A&A/Ward 2d Mot. at 7.) However, 28 U.S.C. § 1391(b)(2) provides for venue in a "judicial district in which a *substantial part* of the events or omissions giving rise to a claim occurred," not where *a majority* or *most* of those events or omissions occurred. As noted in a case upon which A&A and Ward themselves rely, "nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most* substantial portion of the relevant events occurred, nor does it require a plaintiff to establish that every event that supports an element of a claim occurred in the district where venue is sought. To the contrary, a plaintiff need only show that '*a* substantial *part* of the events or omissions giving rise to the claim occurred' in that district." *Modaressi*, 441 F. Supp. 2d at 57. As noted above, because a substantial number of the class members were hired and paid sub-minimum wages in the District, and a substantial number of the evictions on which they worked and for which they were paid suppressed wages were in the District, it does not matter that more evictions during the class periods may have taken place in Maryland than in the District.

## V.    THE COMPLAINT STATES CLAIMS UPON WHICH THIS COURT MAY GRANT RELIEF.

A&A and Ward's confusion regarding the otherwise straightforward allegations in the complaint is apparent when they conflate plaintiffs' separate claims while attempting to summarize their argument:  "It is impossible under the facts of this case that any of Plaintiffs [*sic*] conspiracy to commit minimum wage act violation claims could ripen into damages under the Clayton Act as a result of Sherman Act [anti trust] [*sic*] violations."  (A&A/Ward 2d Mot. at 20.)  As explained below, plaintiffs bring three categories of claims under federal and state law. First, plaintiffs claim that defendants each violated the federal and state minimum wage laws when paying their employees (the named plaintiffs as well as the rest of the class members) below minimum wage.  Second, plaintiffs claim that, in violation of federal and state antitrust laws, defendants conspired to suppress wages paid to employees.  This second argument does not hinge on the first – a conspiracy between competitors who compete for employees to suppress wages is a violation of the antitrust laws, regardless of whether that conspiracy results in wages that are above or below the minimum wage.  Third, plaintiffs alternatively claim equitable relief – unjust enrichment and *quantum meruit* – to require defendants to disgorge their ill-received benefits from paying their employees inequitable wages.  This third set of claims at equity cannot be barred by the existence of the first two sets of claims at law so long as defendants contend that plaintiffs cannot maintain such claims at law.  Thus, plaintiffs claims are straight-forward:  (1) defendants violated the minimum wage laws by paying their employees below minimum wage; (2) defendants conspired to suppress wages; and (3) in any event, defendants' ill-gotten gains,

obtained at the expense of their employees, should be disgorged in equity.  As explained below, each of these claims is validly stated in the complaint.[8]

> **A.    Plaintiffs have stated valid claims under federal and state minimum wage laws.**

A&A and Ward suggest that the plaintiffs are not employees but rather are independent contractors and therefore are not protected by the minimum wage laws.  (A&A/Ward 2d Mot. at 19.)  To determine whether these predominantly homeless workers qualify as "employees" for purposes of the minimum wage laws, the Court must look at "the economic reality" of the employer-employee relationship.  *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (citation omitted).  If a worker is a "small businessman" with "responsibility for investment and management" and the "opportunity for profit from [that] sound management," then he is an independent contractor.  *United States v. Silk*, 331 U.S. 704, 719 (1947).  But if a worker's "activities are an integral and indispensable part of the principal activities for which . . . [the] workmen are employed," then he is an employee covered by the minimum wage laws. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see also Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729-30 (1947).  Here, considering the economic realities as alleged in the complaint in a light most favorable to plaintiffs, it cannot be said that the members of the plaintiff class are small businessmen who profit from sound management of their own enterprise.  Instead, they are workers who carry furniture out of homes during evictions and therefore are integral parts of the only service defendants perform.

---

[8]        To the extent that A&A and Ward contest the factual allegations of the complaint, such factual disputes are not appropriately resolved on a motion to dismiss for failure to state a claim.  Rather, the Court must liberally construe the complaint in favor of plaintiffs and grant plaintiffs the benefit of all inferences that can be drawn from the allegations.  *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citing *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957)).

Moreover, the D.C. Circuit has highlighted certain issues for the Court to consider in determining whether, based on the economic realities here, A&A and Ward acted as "employers" or merely engaged "independent contractors."  Namely, the Court should consider whether A&A and Ward "(1) had the power to hire and fire the employees, (2) supervised and controlled the employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994).  Each of these factors is addressed in the complaint.  A&A and Ward have the "power to hire and fire" employees because they select the persons who will perform the evictions.  (*See* Compl. ¶ 36.)  A&A and Ward and the other defendants "supervised and controlled" the plaintiffs at all times because the plaintiffs were transported to the eviction sites in defendants' vehicles, remained under the watch and control of defendants during the evictions, and were returned to various drop-off points after the work was done.  (*Id*. ¶¶ 40, 61.)  A&A and Ward and the other defendants "determine the rate and method of payment" because they pay a flat rate of $5 per eviction, regardless of the requirements of the minimum wage laws.  (*Id.* ¶ 68.)  Finally, the complaint alleges that A&A and Ward maintain the employment records required by the wage and tax laws.  (*Id.* ¶¶ 55-56.)  Accordingly, A&A and Ward were "employers" who hired members of the class as "employees."

In any event, dismissal of plaintiffs' minimum wage claims based on A&A and Ward's independent contractor theory would be premature.  Although determination of employee status is a "legal question," "any subsidiary factual issues leading to this conclusion are, of course, questions of fact for the jury."  *Morrison v. Int'l. Programs Consortium, Inc.*, 253 F.3d 5, 10 n.3 (D.C. Cir. 2001).  Thus, as the complaint alleges facts sufficient to support the class members'

status as employees, the minimum wage claims should not be denied without factual determinations by the jury.

Additionally, A&A and Ward's argument that plaintiffs, by bringing this suit, are attempting to "entrap" the defendants is disingenuous.  (See A&A/Ward 2d Mot. at 20-21).  The purpose of the minimum wage laws is to protect the economically weaker party (*e.g.* an indigent, homeless worker) in a contract for labor from exploitation by an employer with greater bargaining power who "suffer[s] or permit[s]" the employee to work for him.  29 U.S.C. § 703(g); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).[9]  It is well established that employers like A&A and Ward cannot contract out of their requirement to comply with minimum wage laws.  *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-603 (1944) ("an agreement to pay less than the minimum wage requirements. . . cannot be utilized to deprive employees of their statutory rights"); *accord Wirtz v. Leonard*, 317 F.2d 768, 769 (5th Cir. 1963) (citing *Mitchell v. Turner*, 286 F.2d 104, 106 (5th Cir. 1960)) (noting that "[t]he obligation of the employer to [pay minimum wage] is statutory and a matter of general public policy, and cannot be waived or contracted away by individual employers and employees").  A&A and Ward are therefore not entitled to such self-righteous outrage about being required to comply with their legal obligations as employers.  The burden is on the employer to prevent violations of the FLSA and other wage laws, and it is the employers who violate the law, not the employees who suffer such violations, who must be held accountable.  *Dove*, 759 F.2d at 175-76.  Thus, A&A and Ward's arguments that plaintiffs are not entitled to relief must fail.

---

[9]    Indeed, the federal Fair Labor Standards Act was initially adopted to protect children and others from predatory and abusive practices by employers.  *See generally* Bruce Goldstein, et al., *Enforcing Fair Labor Standards in the Modern American Sweatshop:  Rediscovering the Statutory Definition of Employment*, 46 UCLA L. Rev. 983, 1094-1100 (1999).

### B.      Plaintiffs have stated claims under federal and state antitrust laws.

A&A and Ward allege that plaintiffs have no cause of action under the Sherman Act and cannot recover damages under the Clayton Act because they do not allege (1) that they owned businesses or (2) that their business or property were injured by the defendants' antitrust violations.  (A&A/Ward 2d Mot. at 18.)  In addition, A&A and Ward argue that the plaintiffs could not have been injured because the minimum wage laws do not establish a property right protected by the antitrust laws and, therefore, the plaintiffs have no property right in their fixed wages.  (A&A/Ward 2d Mot. at 19.)  A&A and Ward's arguments disregard the numerous examples of claims based on conspiracies to fix wages at lower than market rates being allowed under the antitrust laws.  There is no basis in the antitrust laws for allowing the collusion alleged in the complaint to proceed with impunity.  Because plaintiffs have properly stated a claim under the antitrust laws, A&A and Ward's arguments must fail.

Section 1 of the Sherman Act forbids conspiracies in restraint of trade.  15 U.S.C. § 1; s*ee Fed. Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 421 (1990).  The antitrust laws of D.C. (D.C. Code § 28-4502), Maryland (Md. Code Ann., Com. Law § 11-204(a)(1)), and Virginia (Va. Code Ann. § 59.1-9.5), contain similar restrictions against agreements that restrain trade.  The complaint contains allegations that A&A, Ward, and the other defendants have communicated and conspired with each other to set the wages paid to the class – that is the prices paid for class members' labor – at rates lower than would prevail but for the collusion.  (Compl. ¶¶ 68-69.)  Such collusion to suppress wages is in direct contravention of the antitrust laws.  *See, e.g., United States v. Utah Soc. for Healthcare Human Res. Admin.*, 1994-2 Trade Cases ¶ 70,795 (D. Utah Sept. 14, 1994) (consent order confirming that claims of conspiracy to restrain wages paid to nurses stated a claim under Section 1 of the Sherman Act

and prohibiting agreements "to fix, limit, or maintain the compensation paid to nurses"). The members of the class have been directly injured in their "business or property" as a result of this conspiracy because they have been paid improperly fixed wages. (*See, e.g.,* Compl. ¶ 105.)[10] Because plaintiffs depend for their livelihood upon the wages they are paid for performing evictions, a conspiracy to fix the price at which they are paid injures plaintiffs' business or property. *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468-69 (5th Cir. 1992) (finding that homeless person had antitrust standing based on injury to "business or property" to bring suit alleging conspiracy among plasma purchasers to fix price at which they purchased plasma because the homeless plaintiff relied on the sale of plasma for his livelihood). Furthermore, courts routinely recognize antitrust claims based on conspiracies to fix wages or compensation. *See, e.g., Todd v. Exxon*, 275 F.3d 191, 214-15 (2d Cir. 2001) (reversing dismissal for failure to state a claim and holding that employee (on behalf of class) stated claim that oil companies had conspired to fix compensation and exchanged compensation information in an anticompetitive manner); *Law v. NCAA*, 134 F.3d 1010, 1024 (10th Cir. 1998) (upholding summary judgment in favor of class of college basketball coaches whose salaries were fixed through conspiracy among employer colleges and approving permanent injunction against enforcement of the salary-limitation agreement); *Barr v. Dramatists Guild, Inc.*, 573 F. Supp. 555, 563 (S.D.N.Y. 1983) (denying motion to dismiss antitrust claims based on conspiracy to fix compensation for playwrights).

---

[10]     A&A and Ward mistakenly assert than in order to pursue a claim under the Sherman Act, a plaintiff must own a business. (A&A/Ward 2d Mot. at 18.) There is no support for the proposition that only business owners are protected by the antitrust laws. On the contrary, private individuals are routinely recognized as appropriate antitrust plaintiffs. *See, e.g., Blue Shield of Va. v. McCready*, 457 U.S. 465, 472 (1982) (holding that individual subscriber to health insurance plan and class had antitrust standing because the Clayton Act "does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers . . . . The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practice by whomever they may be perpetrated")(quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

18

Just as courts have determined that buyer collusion to lower prices paid to sellers violates the antitrust laws, so does collusion between employers (buyers of labor) to lower prices paid to employees (sellers of labor).  *See e.g.*, *Mandeville Island Farms v. Am. Crystal Sugar Co.*, 334 U.S. 219, 235 (1948) ("It is clear that the agreement [between purchasers to restrain the price of sugar] is the sort of combination condemned by the [Sherman] Act, even though the price-fixing was by purchasers, and the persons specially injured under the treble damage claim are sellers, not customers or consumers."); *Nat'l Macaroni Mfrs. Ass'n v. Fed. Trade Comm'n*, 345 F.2d 421, 426 (7th Cir. 1965) (approving consent decree where FTC found that when purchasers conspired "with the design and result of depressing the price of an essential raw material, they violate[d] the rule against price-fixing agreements as it has been laid down by the Supreme Court."); *Barr*, 573 F. Supp. at 559 (noting that "conspiracies among buyers to suppress prices are unlawful under the antitrust laws" and denying motion to dismiss counterclaim that a conspiracy among buyers of playwrights' services to suppress compensation for those services constitutes an antitrust violation).  Labor is an input, the price of which buyers are prohibited from conspiring to restrain in contravention of the antitrust laws.  *Brown v. Pro Football, Inc.*, 50 F.3d 1041, 1061 (D.C. Cir. 1995) ("The Supreme Court has clearly held that antitrust laws apply not only to restraints on *output* markets, but to *input* markets as well, including . . . labor.") (citing *Radovich v. Nat'l Football League,* 352 U.S. 445 (1957)).[11]  Therefore, providers of labor, such as members of the plaintiff class here, have antitrust standing.  Accordingly, the allegations in the complaint state a claim for which relief may be granted under the antitrust laws.

---

[11]    A&A and Ward appear to misunderstand the position of the plaintiff class as suppliers of an input and have cited a number of cases addressing the standing of competitors.  (*See* A&A/Ward 2d Mot. at 18.)  However, plaintiffs here are not suing as competitors – they are the predominantly homeless employees whom defendants have hired and against whom defendants have conspired to pay inappropriately low wages.  The standing of competitors is irrelevant to this matter.

C.      **The complaint states a claim for equitable relief.**

A&A and Ward argue that plaintiffs have no cause of action for relief under equitable

theories of unjust enrichment and *quantum meruit* because, as they argue, plaintiffs have asked

the court to enforce an "illegal" contract and because the existence of a statutory remedy is a

total bar to equitable claims.  (A&A/Ward 2d Mot. at 20.)  A&A and Ward misconstrue

plaintiffs' claims and misunderstand the law of equitable remedies.  Their arguments must fail.

First, A&A and Ward misunderstand the circumstances under which a plaintiff is entitled

to seek equitable remedies.  Plaintiffs "may join, either as independent or as alternate claims, as

many claims, legal, equitable, or maritime, as the party has against an opposing party."  Fed. R.

Civ. P. 18.  Until such time as the Court or the jury makes final determinations regarding

plaintiffs' legal and equitable claims, plaintiffs are entitled to maintain both.  Fed. R. Civ. P.

8(e)(2).  Furthermore, A&A and Ward's circular argument that plaintiffs' unjust enrichment and

*quantum meruit* claims are barred because the legal remedies that plaintiffs seek are sufficient

undercut their own arguments that plaintiffs should not be allowed to pursue the other claims

addressed in the motion to dismiss.

Second, plaintiffs have stated a valid claim for unjust enrichment.  "To state a claim for

unjust enrichment, plaintiffs must establish that:  (1) they conferred a legally cognizable benefit

upon defendants; (2) defendants possessed an appreciation or knowledge of the benefit; and (3)

defendants accepted or retained the benefit under inequitable circumstances."  *Oceanic*

*Exploration Co. v. ConocoPhillips, Inc.*, No. 04-CV-332 (EGS), 2006 WL 2711527, at *20

(D.D.C. Sept. 21, 2006); *see also Heller v. Fortis Benefits Ins. Co.*, 142 F.3d 487, 495 (D.C. Cir.

1998).[12]  Here, the complaint fulfills these requirements.  First, A&A and Ward and the other

---

[12]      The requirements for an unjust enrichment claim are the same under the laws of the District of Columbia, Maryland, and Virginia.  *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 847-48 (D.D.C. 1996).

defendants received the benefit of the class members' labor. (Compl. ¶¶ 41, 53, 125.) Second, A&A and Ward and the other defendants knew that the class members were performing eviction work at their direction and therefore possessed an appreciation of the benefit they received. (*Id.*) Finally, A&A and Ward and the other defendants accepted the class members' labor in exchange for unfairly and illegally low wages (*id.* ¶ 54), and allowing defendants to retain the difference between what they should have paid and what they did pay would be manifestly inequitable.

Third, plaintiffs have likewise stated a valid claim for *quantum meruit* recovery. "The essential elements for recovery under *quantum meruit* are: (1) valuable services being rendered; (2) for the person sought to be charged; (3) which services were accepted by the person sought to be charged, used and enjoyed by him or her; and (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services, expected to be paid by him or her." *In re Rich*, 337 A.2d 764, 766 (D.C. 1975); *see also Perles v. Kagy*, 362 F. Supp. 2d 195, 198 (D.D.C. 2005). The allegations in the complaint address each of these issues. The class members provided services in the form of performing eviction work for A&A and Ward and the other defendants. (Compl. ¶¶ 41, 53.) A&A and Ward and the other defendants knew that the class members were performing eviction work at their direction and received the benefit of such work. (*Id.*) Finally, A&A and Ward and the other defendants knew or were reasonably notified that the class members expected to be paid for their services in accordance with the law. (*Id.* ¶ 128.) Accordingly, the complaint sufficiently states a *quantum meruit* claim.

Finally, A&A and Ward argue that plaintiffs are asking the Court to enforce an illegal contract that plaintiffs knew was illegal at the time of formation. (A&A/Ward 2d Mot. at 20.) A&A and Ward cannot contain their outrage that the homeless plaintiffs and class members

21

"knew/know the wages they received for their daily hire was [*sic*] illegal" and "[y]et they continued to accept new employment, daily, for that same illegal wage." (*Id.* at 20-21.) "Now [plaintiffs] are asking the court to reward them for consciously entering into multiple illegal contracts." (*Id.* at 21.) But A&A and Ward misunderstand the concept of these equitable claims. This is not a case where plaintiffs seek enforcement of illegal contracts – plaintiffs agree that the employment contracts were contrary to both law and equity and cannot be enforced as originally formed. Instead, this is a case where (1) no valid employment contract exists and therefore plaintiffs seek to be equitably compensated for the work they performed absent a valid contract from defendants who would be unjustly enriched at the class's expense if they were permitted to receive that work without fair compensation (unjust enrichment), or, alternatively, (2) there was an employment contract with an invalid wage term and the Court must determine what an equitable wage term would have been and disgorge any ill-retained funds from defendants (*quantum meruit*). Thus, despite A&A and Ward's indignation, plaintiffs are not seeking to enforce illegal contracts but to receive equitable payment for the work they performed in light of the fact that no valid contracts or valid wage term existed.

## VI.    A&A AND WARD'S CHALLENGES TO CLASS CERTIFICATION ARE NOT APPROPRIATE FOR RESOLUTION AT THIS STAGE IN THE PROCEEDINGS.

In their second motion to dismiss, A&A and Ward challenge class certification. (A&A/Ward 2d Mot. at 9-15.) Such challenge is untimely. Under Federal Rule of Civil Procedure 23, the Court must ultimately determine whether to certify this case as a class action. Plaintiffs have not yet moved for class certification. Indeed, the Court's Local Rules envision that a motion for class certification need not be submitted until ninety days after filing of the complaint. L. Cv. R. 23.1(b). The Court should thus dismiss A&A and Ward's challenge to

class certification without prejudice or, alternatively, defer ruling on the challenge until after a motion for certification is brought.[13]

## CONCLUSION

For the reasons set forth above, the Court should deny A&A and Ward's second motion to dismiss in its entirety.  Furthermore, plaintiffs respectfully request a hearing on this motion.

Date:  November 15, 2006                           Respectfully submitted,


                                                  ___/s/ Lee F. Berger_____
                                                  Lee F. Berger (D.C. Bar # 482435)
                                                  Matthew D. Slater (D.C. Bar # 386986)
                                                  Larry C. Dembowski (D.C. Bar # 486331)
                                                  Cleary Gottlieb Steen & Hamilton LLP
                                                  2000 Pennsylvania Avenue, N.W.
                                                  Washington, D.C.  20006-1801
                                                  Telephone:  (202) 974-1500
                                                  Facsimile:  (202) 974-1999
                                                  *Attorneys for Plaintiffs*

---

[13]    Likewise, A&A and Ward's challenge to plaintiffs' class action claims under the FLSA are premature, disregard the FLSA's permission to have opt-in classes, and ignore the fact that plaintiffs also allege claims under antitrust and common law, which allow for opt-out classes. *Accord Bahramipour v. Citigroup Global Markets, Inc.*, No. C 04-4440 CW, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006) (allowing Rule 23 opt-out class in case with claims under both FLSA and state unfair competition laws).

CERTIFICATE OF SERVICE

I, Erika J. Davis, managing clerk at Cleary Gottlieb Steen & Hamilton LLP, hereby certify that:

On, November 15, 2006, a copy of the foregoing Plaintiff's Opposition to Second

Motion to Dismiss of Defendants A&A Cardinal Eviction and Bob Ward has been served

by electronic transmission through the Court's CM/ECF System on the following parties:

Stephanie D. Kinder
Law Offices of Stephanie D. Kinder, PA
10 N. Calvert Street, Suite 930
Baltimore, Maryland 21202
skinder@epcounsel.com
Attorney for Bob Ward and A & A Cardinal Eviction

J. Wyndal Gordon
The Law Office of J. Wyndal Gordon, P.A.
10 North Calvert Street, Suite 930
Baltimore, Maryland 21202
jwgaattys@aol.com
Attorney for Bob Ward and A & A Cardinal Eviction

Gina M. Smith
Meyers, Rodbell & Rosenbaum, P.A.
6801 Kenilworth Avenue, #400
Riverdale Park, Maryland 20730
gsmith@mrrlaw.net
Attorney for A 1 Eviction Services and Tanya Smith

and by U.S. mail, first-class postage prepaid, on the following parties:

I. Staten
Butch Enterprises, Inc.
10332 Main Street, Suite 352
Fairfax, Virginia 22030

Lloyd J. Eisenberg
Lloyd J. Eisenberg & Associates, P.A.
10632 Little Columbia Parkway
Suite 430
Columbia, Maryland 21044
Attorney for Big Time Movers

East Coast Express Evictions
29 U Street, N.W.
Washington, D.C. 20001

Nelson Terry
29 U Street, N.W.
Washington, D.C. 20001

Caroline Lanford
1112 48th Street, N.E.
Washington, DC 20019

All American Eviction Company
1112 48th Street, N.E.
Washington, DC 20019

Dated:  November 15, 2006                    _____/s/ Erika J. Davis_____
                                                               Erika J. Davis