**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ASHFORD, et al. | * | |
| Plaintiff | * | |
| v. | * | |
| EAST COAST EXPRESS EVICTIONS, et al. | * | CASE#:06-CV-1561 RJL |
| Defendants | * | |

**************************************************************************

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**NOW COMES**, Defendants A&A Cardinal Evictions and Robert "Bob" Ward, by and through their attorneys, J. Wyndal Gordon of THE LAW OFFICE OF J. WYNDAL GORDON, P.A., and Stephanie Kinder of THE LAW OFFICE OF STEPHANIE KINDER, P.A., to submit this Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss under Fed. R. Civ.P. 12(b)(1), (3), (6), 12(c), 12(h)(2), and (3), alleging as true the following:

**PRELIMINARY STATEMENT**

Defendants disagree with Plaintiffs Preliminary Statements and submit that neither Plaintiffs nor any member of the putative class were hired out of Washington D.C. by Defendants to conduct eviction services in Maryland. Out of the three Plaintiffs involved in this litigation to date, and the alleged "large number" of Plaintiffs expected to join in the not too distant future, no Plaintiff or potential class member has advanced a single affidavit or any other information that is either contrary to Defendants position, or in support of their own. Therefore, upon viewing the instant complaint in a light most favorable to Plaintiffs, this case should be dismissed for all the reasons identified below.

**LEGAL ANALYSIS**

*Second Motion to Dismiss is Timely and Proper*

Defendants submit that their second motion to dismiss was timely and proper. See,

F.R.Civ.P 12(h)(3), and *Lindsay v. U.S.*, 448 F. Supp.2d 37, 56-57 (D. D.C. 2006)  Defendants' motion was proper because it did not omit any of the objections or defenses required to be raised in its original filing, nor was it intended to cause undue delay.  Id.  As argued somewhat in Plaintiffs' opposition, Defendants submitted the motion upon further examination of Plaintiffs complaint through additional counsel because Defendants were entitled to raise certain defenses and objections regarding Plaintiffs' failure to state a claim.  F.R.Civ.P 12(h)(3), see, also (Pl. Opp. 2), (Df. 2d Mot. 1) Additionally, Defendants' subsequent motion merely buttressed some of the arguments in the former, and lawfully added others in the latter.  See, F.R.Civ.P. 12(h)(3), see, also, *Lindsay* at 56 (*defendant should not be barred from submitting second motion to dismiss where there is no evidence of delay, but rather defendant merely abandoned a bad argument for a better one*)  Defendants' motion also may be considered under Federal Rule 12(c) at the no cost of prejudice to Plaintiffs because the standard of review for a 12(c) motion is the same as that for a 12(b)(6).  See, *Jung v. Association of American Medical Colleges*, 339 F. Supp.2d 26, 35-36 (D. D.C. 2004)("*No prejudice to any party results from treating a Rule12(c) motion as a Rule12(b)(6) motion because the standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6)*"). See, also, *Ramirez v. Dep't of Corrections*, 222 F.3d 1238, 1240-41 (10th Cir.2000); *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987); *Transworld Products Co. v. Canteen Corp.,* 908 F.Supp. 1, 2 (D.D.C.1995).  On either motion, the Court may not rely on facts outside the pleadings and must construe the complaint in the light most favorable to the non-moving party.  See, *Kowal v. MCI Communications Corp*., 16 F.3d 1271, 1276 (D.C.Cir.1994).  Rules 12(b) and (c) motions will be granted only when it appears beyond doubt, based upon the allegations contained in the complaint, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also *Alicke v. MCI Communications Corp*., 111 F.3d 909, 912 (D.C.Cir.1997)

Therefore, Plaintiff is not harmed by Defendants subsequent motion to dismiss whether it is identified as a second, supplemental, or motion for judgment on the pleadings. Id. The standard of review is the same, the pleading considered by the court is the same, and whatever the decision of the court may be, it really does not necessarily matter how the motion is treated, or identified, because the results will be the same. Based upon the foregoing, Defendants latest motion to dismiss is proper.

For the same reasons as argued above, Defendants subsequent motion to dismiss was timely because Plaintiffs had not responded to the first, See, generally, *Stoffels, ex re., SBC Concession Plan v. SBC Communications, Inc.*, 430 F. Supp.2d 642, 648 (D. Tex 2006)("*The practical effect of considering defendants second 12(b)(6) motion to dismiss would not be further delay, since Defendant's original motion was still pending when the second was submitted*"), see, also, *Lindsay* at 57; and the latter is authorized by 12(h)(3), and possibly 12(h)(2), and 12(c).

To be sure, this Court in *Lindsay,* not too long ago, also concluded that a defendant's motion to dismiss a plaintiff's claim for damages is not barred despite having moved previously for dismissal for insufficient service of process. *Lindsay* at 57. It found that there was no indication that defendants supplemental motion was intended to cause undue delay. Id. Specifically, this Court stated:

> "In this case, the Court concludes that the defendant should not be barred from moving to dismiss the plaintiffs' claim for damages despite having moved for dismissal previously on the basis of insufficient service of process. Here, as in *Campbell-El,* 881 F.Supp. at 43, *Strandell,* 648 F.Supp. at 129, *Donnelli,* 2002 WL 2003217, at *4, and *Stoffels,* 430 F.Supp.2d at 648, there is no indication that the defendant's supplemental motion to dismiss under Rule 12(b)(6) is intended to delay the proceedings. Indeed, as in *Stoffels,* the defendant here already had a motion to dismiss pending when it filed its supplemental motion. Therefore, permitting the second motion would not interrupt the efficient adjudication of the plaintiffs' case." *Lindsay v. U.S.*, 448 F.Supp.2d 37, 57 (D. D.C. 2006)

Although Defendants did not challenged the sufficiency of service as in *Lindsay*, the Court's ruling in that case applies with equal force to this one. Indeed, Plaintiffs never argued that they

3

were prejudiced by Defendants second filing, nor did they argue that the efficient adjudication of their case was or would be interrupted thereby. See, Id., at 57. Plaintiffs only arguments against Defendants' motion was that the second filing was untimely, improper, and thus a procedural error. (Pl. Opp. 2-5) Defendants believe the fresh case law above referenced sufficiently belies Plaintiffs' procedural error arguments. Therefore, based upon the above, it does not violate the rules of procedure, cause undue delay, or interrupt the efficient adjudication of Plaintiffs case for the Court to accept Defendants latest motion to dismiss. Surely, just as in *Lindsay*, Defendants here already had a motion to dismiss pending when it filed its subsequent/supplemental motion. Id.

*Venue is Improper*

Plaintiffs have failed to demonstrate that venue is proper as it relates to Defendants A&A and Bob Ward under Titles 15 U.S.C. §22, and 28 U.S.C. §1391. Defendants submit that venue is improper under both statutes. They will begin their analysis under Title 15 U.S.C. §22, then proceed to analyze Title 28 U.S.C. §1391(b)(2).

First, venue is improper under Title 15 U.S.C. §22 really quite simply because the statute only applies to corporate defendants. See, 15 U.S.C. §22; *Mylan Laboratories, Inc. v. Akzo, N.V.*, 1990 WL 58466 *6 (D.D.C. 1990)( *". . . [Title] 15 U.S.C. § 22, applies solely to corporations"*) Therefore, 15 U.S.C. §22 is useless against Defendants A&A and Ward for purposes of establishing venue because neither one of them are a corporation for purposes of establishing venue or subject matter jurisdiction of the this Court for that matter. See, (Pl. ¶¶13-14)( Defendant A&A is an unincorporated entity located in State of Maryland with its principle place of business in Waldorf . . . Defendant Bob Ward is the sole proprietor of A&A), see, also, 15 U.S.C. §22 ("*[a]ny suit, action or proceeding under the antitrust laws against a __corporation__ may be brought . . . in any district wherein it transacts business*"), see, also (Pl. Opp. 10) Based upon the foregoing, the Clayton Act is an ineffective tool for establishing jurisdiction or

remedying Plaintiffs' claims.

Second, venue clearly has not been established under 28 U.S.C. §1391(b)(2) either. Under Title 28 U.S.C. §1391(b)(2), Plaintiffs have failed to show that Washington, D.C. is the judicial district in which a substantial part of the events or omissions giving rise to their claims against Defendants A&A and Ward occurred. Despite Plaintiffs aggregated allegations that Defendants transported class members from D.C., to Maryland, and back [an account in serious dispute], they have failed to illuminate any facts from which the Court can reasonably conclude that a *substantial part* of the events *giving rise to their claims* against Defendants occurred in Washington, D.C.

According to Plaintiffs' complaint, "Defendants", in general, are being sued because they allegedly conspired to hire class members to provide eviction services at sub-minimum wages in the *D.C. Metro Area*. However, Plaintiff failed to define what areas outside of D.C. constituted the *D.C. Metro Area* as it related to the Court's venue and jurisdiction over Defendants A&A and Ward. Instead, Plaintiffs chose to rely upon its definition of what constituted the *D.C. Metro Area* for jurisdiction over East Coast Express Eviction, a D.C. eviction service provider that allegedly did/does business in D.C., Maryland and Virginia. (Pl. Compl. ¶8), (Pl. Opp. 6) Plaintiffs still refuse to acknowledge that not all of the Defendants sued did or transacted business in the same or all three of the aforementioned judicial districts. Plaintiffs further refused to acknowledge that use of the term *D.C. Metro Area* to describe the judicial district in which a company conducts business is insufficient to confer federal jurisdiction of any sort, over any of the "Defendants" in general, and especially Defendants A&A and Ward.

Particularly, as it relates to Defendants A&A and Ward, the only judicial district in which a substantial part of the events giving rise to Plaintiffs claims could have occurred is Maryland. Defendants only provided eviction services in Maryland (Df. Ward Aff.), and Plaintiffs complaint is silent as to any particular allegation to the contrary as it related to Defendants A&A and Ward. Indeed, no affidavit has been submitted by any of the Plaintiffs or potential class

members to otherwise offer additional support for contrary positions held.  Consequently, the fact that Defendants exclusively provided evictions services in Maryland, and did not hire individuals to work for them outside of Maryland is virtually undisputed.  Thus, Plaintiffs attempt to invoke venue, or personal jurisdiction in this Court for that matter, respectfully has not been sufficiently plead.  To remedy this defect, Plaintiffs argued in their motion that the transportation offered by "Defendants" in general, in and out of D.C., to perform eviction services was an "integral" part of their job and was thereby sufficient to perhaps invoke venue, and confer jurisdiction upon this Court.  (Pl. Opp. 9), (Pl. Compl. ¶40)

However, Plaintiffs have failed to demonstrate how accepting free transportation for repeated, daily employment opportunities, even if integral, somehow constituted a *substantial part of the events giving rise to their claim* that they were paid sub-minimal wages for the removal of furniture, etc., from residences.  According to Plaintiffs complaint, their jobs were to provide eviction services, --not vehicle occupancy services.  In other words, Plaintiffs job was to clear designated residences of furniture, personal effects and debris.  Despite Plaintiffs futile attempts to embellish the significance of their transportation allegation (Pl. Compl. ¶40), the transporting of Plaintiffs from site to site was merely incidental.  It was neither a substantial nor essential part of their employment for purposes of establishing venue in D.C.  Nothing in Plaintiffs complaint suggested they would have been precluded from employment if they rode with someone else, took public transportation, or had their own vehicle to commute to and from eviction sites.  Nothing in Plaintiffs' complaint alleged or suggested that wage payments were negotiated or agreed upon, or that sub-minimal wage payments were discussed during the commute from site to site.  And, indeed, nothing in Plaintiffs complaint alleged or suggested that Plaintiffs were forced to submit exclusively to the transportation provided by the alleged "Defendants" in general, lest they work elsewhere.

The complaint, upon removal of the layers of bodacious, exaggerated, and overly self-serving statements, merely alleged in summation that free transportation was provided as a

courtesy or convenience that equally benefitted the Plaintiffs as well as the Defendants. See, e.g., (Pl. Compl. 40) Upon thorough review of the facts, and how Plaintiffs alleged the eviction services industry operates, it is more likely than not that Plaintiffs could have received more work, and negotiated a higher wage, if they had an independent source of transportation because they could have taken more jobs, and commanded more control over their schedules. Plaintiffs alleged in their complaint that when they accepted "Defendants" offer of transportation services to the eviction sites they were unable to handle their personal affairs until the jobs or assignments were completed. (Pl. Compl. ¶40) Despite Plaintiffs' arguments to the contrary, there is nothing uncommon or malevolent about an employer prohibiting or enabling its employees from handling their personal affairs on company time.

More importantly, Plaintiffs have never argued as a basis for recovery that they were aggrieved by the transportation process. They have however consistently argued that they were aggrieved by the payment of sub-minimum wages for providing eviction services. Therefore, a substantial part of the events giving rise to their claims comes from the receipt of sub-minimal wages, –not free transportation to and from work. As it relates to Defendants A&A and Ward, again, Maryland is the only judicial district in which this could have occurred because Maryland was the only judicial district in which Defendants provided eviction services. As stated above and numerous times throughout this motion, Plaintiffs had an opportunity to provide an affidavit or some other evidence for this court to consider if they disputed Defendants' position and they chose not to do so. Venue is a burden that Plaintiffs are obligated to overcome; and they have failed. *Freeman v. Fallin*, 254 F.Supp.2d 52, 56 (D. D.C. 2003)(*plaintiff bears the burden of establishing venue is proper*) Based upon the foregoing, Plaintiffs have not shown or demonstrated that venue is proper under 28 U.S.C. §1391(b)(2).

*Long Arm Statute*

Plaintiffs neglected to expressly invoke the D.C. long-arm statute in the predicate

7

statements of venue relied upon in their Complaint.  See, F.R. Civ.P 8(a)(1); (Pl. Compl. ¶¶2-4)

*Jurisdictional Discovery*

Plaintiffs certainly have not shown that they are entitled to jurisdictional discovery.  The general rule of jurisdictional discovery provides that if a defendant files a motion to dismiss for lack of personal jurisdiction, a plaintiff "is entitled to reasonable discovery . . ."  *Bancoult v. McNamara*, 214 F.R.D. 5, 20 (D.D.C. 2003) citing *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C.Cir.1996).   However, this entitlement does not come freely and it is not absolute.  See, Id.  Before plaintiff is entitled to jurisdictional discovery, plaintiff must first be able to "demonstrate [ ] that it can supplement its jurisdictional allegations through discovery." *GTE New Media Servs.v. Bell south Corp,* 199 F.3d at 1343, 1351 (D.C. cir. 2000)  If the plaintiff has (a) provided statements that are too bare to support an inference of jurisdiction, (b) responded to a defendant's affidavit with speculative or a complete absence of jurisdictional facts, or (c) fails to make counter-allegations in its own affidavit in support of jurisdiction; a denial of jurisdictional discovery will *not* be an abuse of discretion. *Caribbean Broad. Sys. V. Cable & Wireless, P.L.C.* , 148 F.3d 1080, 1089-90 (D.C. Cir. 1998) (*listing cases in which courts have required a colorable basis for jurisdiction before subjecting the defendant to discovery*); *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C.Cir.1991)(*noting that denial of discovery when the plaintiffs' allegations are conclusory is not an abuse of discretion*).

When Defendants filed their motion arguing Plaintiffs lacked personal jurisdiction, they not only attacked the four corners of Plaintiffs' complaint, but they also included an Affidavit of Defendant Ward in support of their position. See, (Df. Ward Aff)  Plaintiffs, in response, continued to rely upon their bear, conclusory, and aggregated factual allegations to show that personal jurisdiction was proper.  But see, *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80 (D. DC 2006)(*speculative information, conjecture, and aggregated factual allegations fail to establish*

*personal jurisdiction*) Specifically, in response to Defendant Ward's Affidavit, Plaintiffs merely re-emphasized their speculative jurisdictional facts couched in the classic disclaimer language that, "*upon information and belief,*" Defendants in general were engaged in a broad and far reaching multi-jurisdictional conspiracy to pay homeless workers sub-minimal wages. See, (Pl. Opp., and Pl. Compl. ¶¶39, 68). As argued perhaps throughout this Reply, Plaintiffs never made any counter-allegations in an affidavit of their own specifically showing that: (1) they performed eviction services for Defendants A&A and Ward for which they were paid sub-minimal wages, (2) they were hired out of D.C. by Defendants A&A and Ward to work in Maryland, and/or (3) they were transported by Defendants A&A and Ward in and out of D.C. to perform eviction services in Maryland. See, *Jung v. Assoc. of American Medical Colleges*, 300 F. Supp.2d. 119, 127 (D. D.C. 2004).

> This Court stated in *Jung v. Assoc. of American Medical Colleges*, the following:
>
>> "[p]laintiffs bear the burden of establishing personal jurisdiction over each individual defendant and that in order to meet their burden, plaintiffs cannot rely on conclusory allegations. See, *GTE New Media Services Inc. v. Ameritech Corp.,* 21 F.Supp.2d 27, 36 (D.D.C.1998), remanded on other grounds sub nom, *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir.2000)  Nor can plaintiffs aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant. See *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980)(rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction because "the requirements of *International Shoe* must be met as to each defendant over whom a state court exercises jurisdiction"). In evaluating whether plaintiffs have established personal jurisdiction, the Court need not treat all of plaintiffs' allegations as true but instead "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *United States v. Philip Morris Inc.,* 116 F.Supp.2d 116, 120 n. 4 (D.D.C.2000).

Plaintiffs' aggregated, conclusory, unsupported and non-specific transportation arguments advanced to boot strap personal jurisdiction failed to establish that they were transported by Defendants A&A and Ward to perform any eviction services anywhere. Id.  Plaintiffs have further failed to demonstrate, for purposes of invoking the D.C. long arm statute, that Defendants

A&A and Ward were "doing business" in D.C.; or that Defendants A&A and Ward's contacts with D.C. were "continuous and systematic" for purposes of invoking the general jurisdiction of this Court.  Plaintiffs have additionally failed to demonstrate that either Defendants are corporations and thereby subject to the jurisdictional edicts of the Sherman, Clayton and Fair Labor Standards Acts.  Last, and perhaps most important, because of all the above, Plaintiffs have failed to demonstrate that they are entitled to jurisdictional discovery.  Any request therefor should be respectfully denied.

*Conspiracy Theory of Jurisdiction*

Plaintiffs next claim that personal jurisdiction exists over Defendants pursuant to the conspiracy theory of jurisdiction stemming from Section 13-423(a)(1) of the D.C. Long Arm statute.  Defendants disagree. Conspiracy jurisdiction under this subsection presumes that "[p]ersons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly'; [and] coconspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'" *Second Amendment Foundation v. United States Conference of Mayors,* 274 F.3d 521, 523 (D.C. Cir. 2001).  So long as any one co-conspirator commits at least one overt act in furtherance of the conspiracy in the forum jurisdiction, there is personal jurisdiction over all members of the conspiracy.  *See Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 78 (D. D.C. 1992)  In this context, plaintiffs must allege (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries. See, *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 425 (D.C. Cir.1991).

"Mere speculation" that a conspiracy exists or that "the non-resident defendants are co-conspirators [is] insufficient to meet plaintiff's [ ] burden." *Dooley v. United Technologies Corp.,* 786 F.Supp. at 78.  A plaintiff resting on the conspiracy theory of jurisdiction "must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the

conspiracy." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C. Cir. 1997)(internal quotation omitted).  See, also, *United States v. Philip Morris Inc.,* 116 F. Supp.2d 116, 122 (D. D.C. 2000)  This requirement is strictly enforced, and the D.C. circuit has applied the conspiracy jurisdiction theory "warily" in light of concerns that plaintiffs will use the doctrine to circumvent the constitutional boundaries of the long-arm statute. *Dooley v. United Technologies Corp.,* 786 F.Supp. at 77.

In this case, Plaintiffs conspiracy theories are replete with speculation and attempts to circumvent the constitutional boundaries of the long arm statute.  *Dooley* at 77.  Plaintiffs' theories of conspiracy jurisdiction is essentially based upon paragraphs 39 and 68 of their complaint. See, (Pl. Compl. ¶¶39, 68) The theories are reiterated or rehashed in paragraphs 97, 108, 114, 102, and 120.  Paragraphs 39 and 68 basically provide in pertinent part the following [paragraphs 36-38 have been added in pertinent part to provide background information]:

> 36      Defendants recruit employees for eviction services by parking vans and trucks near homeless shelters, etc. . . (Pl. Compl. ¶36)
> 37.     Facilities where Defendants also solicit workers include So Others Might Eat ("SOME"), a community organization that seeks to help the poor and homeless in the District of Columbia, located at 71 O Street, NW, Washington, D.C. . . (Pl. Compl. ¶37)
> 38.     When hiring employees, Defendants typically conceal and do not disclose their business identity to the employees. . . (Pl. Compl. ¶38)
> 39.     Defendants communicate with one another at these locations as they wait for workers.  Information exchanged through these communications include information about future business and information about workers.  *On information and belief*, Defendants have exchanged information about the wages they pay for eviction services.  (Pl. Compl. ¶39)(emphasis added)
>
>                *     *     *
> 68.     That each Defendant individually paid wages at a standard rate of $5.00 per eviction could have occurred only in the context of an illegal agreement among Defendants to fix wages below the legal minimum wage. . . Absent such agreement, the risk of liability and market pressures would have caused Defendants to raise wages to at least the legally required minimum wage and enticed Defendants to disclose the violations of those Defendants seeking a competitive advantage by paying

11

below legal wages.  (Pl. Compl. ¶68)

The allegations contained above are proof positive that Plaintiffs entire conspiracy jurisdiction theory is based upon *speculation* about communications between eviction service providers regarding payment of wages.  No date or time period has been specified as to when these alleged communications took place.  No specific Defendant has been identified as being a party to, weighing in on, agreeing or disagreeing with wage payments made to homeless employees.  Nor has there been any specific allegations identifying the content of these alleged "communications" that Plaintiffs have attempted to portray later in paragraphs 97, 108, 114, 102, and 120 of their complaint as so sinister and disclosing of "Defendants" evil intent.  Instead, Plaintiffs speculate that the alleged "communications" had to be about suppressing wages below the legal minimum because *"absent such agreement*," Plaintiffs would have received lawful wages, and Defendants would have been "enticed" to report wage payment violators to authorities.

     Based upon the above, all 13 Defendants have been haled into court by Plaintiffs based upon an ill-conceived theory of misprision of a civil variety, --if one exists.  However, Defendants were under no duty to report wage payment violators.  Plaintiffs theory simply does not reasonably flow from its basis and therefore no justifiable reason exists to credit Plaintiffs' speculative conspiracy theory of jurisdiction or their "conspiracy" theory in general.  See, *United States Conference of Mayors,* 274 F.3d at 524; *First Chicago Int'l v. United Exch. Co.,* 836 F.2d at 1377-78 (*"bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction"*)  Plaintiffs have further failed to specifically allege whether or how Defendants A&A and Ward participated in the so-called communications regarding wage payments and/or joined in the alleged "conspiracy."  Instead, Plaintiffs lump Defendants A&A and Ward together with 11 other Defendants so that they, and perhaps even the Court, would overlook the fact that Plaintiffs have neglected to plead with particularity the ominous "conspiracy".  *Jungquist,* 115 F.3d 1020, 1031 (D.C. Cir. 1997)

     Based upon the above, it can not be any clearer that Plaintiffs are attempting to subvert

constitutional principals of sovereignty that underlie personal jurisdiction. Judge Silberman said it best when he admonished the following in his concurring opinion in *Edmond v. U.S. Postal Service:*

> "[w]e cannot allow plaintiffs to subvert the important constitutional principles of sovereignty and due process that underlie personal jurisdiction limitations with mere unspecified and unsubstantiated claims that multifarious defendants were part of a broad conspiracy and that one of them committed some [act] in the plaintiffs' desired forum." *Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 428 (D.C. Cir. 1991) (Silberman, J, concurring) (internal quotation omitted)

Plaintiffs simply are not entitled to a conspiracy theory of jurisdiction.

*Conspiracy Theory of Jurisdiction is Generally Not Allowed Under Clayton Act*

To the extent that Plaintiffs assert that personal jurisdiction exists over Defendants under a conspiracy jurisdiction theory arising out of Section 12 of the Clayton Act, their burden is too heavy to bear. This Court explicitly rejected the "conspiracy" theory in the Clayton Act context in *Mylan Laboratories, Inc. v. Akzo, N.V.,* 1990 WL 58466 *6 (*jurisdiction "must be properly established as to each defendant, and cannot be based upon allegations that the defendant's co-conspirators were found there, or transacted business there, or that all the conspirators are agents for each other*") See, also, *Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority,* 475 F.Supp. 711, 717 (D. D.C. 1979)

*Defendants Maintain that Plaintiffs Complaint as a Whole Fails to State a Claim*

Plaintiffs maintain that they have been injured because "Defendants" in general violated state and federal minimum wage and anti trust laws, and as a result, they are entitled to legal, or in the alternative, equitable relief. Defendants disagree. Defendants maintain that Plaintiffs complaint as a whole fails to state a claim upon which relief can be granted.

Plaintiffs argued *ad nauseam* for three pages in their opposition that Defendants suggested that Plaintiffs were independent contractors, when they were not. (Pl. Opp. 14-16)

13

Defendants have not made the independent contractor argument as yet, and would indeed need more information to develop it should it become necessary. Possibly Plaintiffs failed to recall that the issue was broached when Plaintiffs alleged in their complaint that they were injured in their "business [and property]" as a result of Defendants alleged violation of state and federal antitrust laws. (Pl. Compl. ¶102) That allegation opened the door to the suggestion that Plaintiffs may have been independent contractors. However, Defendants have not attempted to add any color to this argument in its previously filed motion, primarily because it is at this point premature, and Plaintiffs abandoned their "injury to business" argument in the same paragraph, and in corresponding paragraphs in the same manner, throughout their complaint. See, e.g., (Pl. Compl. ¶¶105, 110, 116, 122) Defendants hereby adopt and re-submit their arguments on this issue as advanced in their previous motions.

*Plaintiffs Are Not Entitled To Any Relief under Clayton Act For Alleged Sherman Act Violations*

Plaintiffs are not entitled to any relief under the Clayton Act for Defendants alleged violations of the Sherman Act because again, they did not suffer any business or property injuries as a result of said violations. Plaintiffs somehow misconstrued Defendants otherwise easy to follow argument as it pertained to the Sherman and Clayton Acts. Under the provision of the Sherman Act Plaintiffs relied, in order to enjoy the Act's protection, one has to be injured in his/her "business or property." Such injuries do not exist in this case. For the reasons stated in Defendants' second motion to dismiss, there must be an antitrust injury to recover antitrust relief. *Asa Accugrade, Inc. v. American Numismatic Ass'n.*, 370 F.Supp.2d 213 (D. D.C. 2005) citing, *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) Plaintiffs were betrayed by their reliance upon *U.S. v. Utah Soc. For Healthcare Human Res. Admin.*, to show that collusion to suppress wages is in direct contravention of the antitrust laws. 1994 WL 750648 (D. Utah), see, also, (Pl. Opp. 17) The *Utah Society* case is unreported and has no persuasive value. In fact, in *Utah Society*, the parties consented to a final judgment without a trial or adjudication

on the merits of any issue of fact or law. Id. More importantly, the parties and the court expressly agreed that the consent to final judgment did not constitute any evidence against or admission by defendant as to any issue raised in the case. Id. In other words, the case totally lacked authority to convey the point Plaintiffs were trying to make.

Plaintiffs next argued that they have standing to make a claim under the Sherman Act for anti-trust violations because *individuals* have standing under the Act. They cite to *Ancar v. Sara Plasma, Inc.*, as the example for the proposition that a homeless person had antitrust standing to bring suit based upon injury to his "business or property." 964 F.2d 465 (5th Cir. 1992) In *Ancar*, the plaintiff, a homeless person, alleged a conspiracy among plasma purchasers to fix prices at which they purchased plasma, and that he suffered injury as a result thereof because the plaintiff relied upon the sale of such plasma for his livelihood. Id. The instant Plaintiffs accurately reported in their opposition that the *Ancar* Court ruled that the plaintiff had sufficient standing to bring the antitrust challenge. Id. However, Plaintiffs were remiss in their failure to report that the *Ancar* plaintiff was in the business of selling his own plasma and was thereby affected by the price fixing. In other words, the plaintiff was not employed by the plasma purchasers to donate his blood. He offered his blood as a product for sale in order to make money to survive homelessness. In this case, it does not appear that Plaintiffs are businesses, or that they extended their services as independent contractors in order to invoke the protections of the statute, . . . or did they? In order for *Ancar* to offer any meaningful support to Plaintiffs' cause, they would necessarily have to be a business, a business owner, or as in *Ancar*, a quasi-business owner. Certainly, Plaintiffs would be entitled to relief if they suffered injury to their property as a result of an antitrust violation. See, 15 U.S.C. §15. But such is not the case here.

The remaining cases cited by Plaintiffs dealt with specialized professionals, and businesses ostensibly involved in price fixing schemes. None of them had to deal with the unique set of circumstances Plaintiffs are faced with in this case. In this case, the law expressly states that a cause of action for violations of the minimum wage statutes does *not* create an

15

enforceable property rights. *Adams v. Bowsher*, 946 F. Supp. 37, 41 (D. D.C. 1996); *Austin v. Bisbee, AZ*, 855 F.2d1429, 1436 (9th Cir. 1988)(*cause of action under FLSA is inchoate and affords no definite or enforceable property right until reduced to final judgment.*)  And again, unless Plaintiffs are businesses, own any businesses, or suffered antitrust injuries to their businesses or property, the Sherman and Clayton Acts provide very little support as a cause of action or remedy for their damages.  Because receipt of a minimum wage is not an enforceable property right, unless or until Plaintiffs claims for violations of said laws actually ripen into judgments, and the judgments are injured by the so-called "conspiracy" to pay-sub-minimal wages, Plaintiffs have no right to pursue a claim under either the state or federal antitrust statutes.  Alternatively, if Plaintiffs were more beholden to their fleeting allegation that they were injured in their businesses, see, (Pl. Compl. ¶¶105, 110, 116, 122), then they would have no right to claim any violations under the state and federal minimum wage laws. *Jean Anderson Hierarchy of Agents v. AllState Life, Ins.*, 2 F. Supp.2d 688, 692 (E.D. Pa. 1998)(*Court's jurisdiction under FLSA may be invoked only in employer employee relationships, as opposed to employer independent contractor relationships*)   Based upon the foregoing, Defendants maintain that Plaintiffs have failed to state a claim under the Sherman and Clayton Acts for which relief can be granted, and their cases should be duly dismissed.  Without success under said Acts Plaintiffs invocation of the Court's pendant jurisdiction over the state matters under Title 28 U.S.C. §1367 should be dismissed as well.

*Plaintiffs Claims for Equitable Relief Should be Dismissed*

Just as all the others, Plaintiffs claims for equitable relief should not suffer a fate any different from a dismissal either.  Defendants submit on the arguments advanced in their latest motion to dismiss.  Basically, Plaintiffs have no right to equitable relief in this matter because there exists an adequate remedy at law to restore any injured party under the statute relied upon by Plaintiffs, if they apply.  *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144 n. 6 (2d

Cir.1999)(*"[E]quity typically denied relief in a proceeding seeking restitution ... on the theory of unjust enrichment because the remedy at law, an action for damages, typically was adequate."*); *Pereira v. United Jersey Bank, N.A.,* 201 B.R. 644, 677 (S.D.N.Y.1996) ("*Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law."*)(internal citation omitted)  Plaintiffs are wrong in their assumption, that if they are unsuccessful on their legal/statutory claims, they have their equitable claims for fall back on. Plaintiffs seem to misunderstand the nature of the equitable cause of action and claim for relief they have advanced in their complaint.  Without success on their legal/statutory claims, they have no other legitimate causes of action, --the case is over.  Plaintiffs theories of unjust enrichment and quantum meruit simply do not exist *with or without* the statutory violations; -- they are more or less legal fictions at this point.  If Plaintiffs claims are successful at law, they have no claim, standing, or right of recovery for any equitable violations.  Alternatively, if Plaintiffs claims are unsuccessful at law, they still have no right to equitable recovery because said recovery is wholly dependent upon a violation of the legal statutes [minimal wage, antitrust].  Despite Plaintiffs argument to the contrary, without the statutes, ordinary principles of contract law control.  Plaintiffs have not advanced any allegation or argument regarding duress, fraud, or undue influence.  Under contract law, the adage of "fair exchange is no robbery" comes to light.  If Plaintiffs agreed to work for a certain price that would otherwise be a violation of the state and federal minimum wage laws, and were paid for said work, in accordance with the terms agreed upon, Plaintiffs have no right to recover for unjust enrichment or quantum meruit.  Not to mention, even if the court was to indulged Plaintiffs claims, the contract would arguably be deemed illegal and unenforceable anyway.   *A-Ibreham v. Edde*, 897 F. Supp.2d 620, 622-23 (D. D.C. 1995)(*A contract to perform an illegal act in the District of Columbia is void and unenforceable*)  Therefore, Plaintiffs claims for equitable relief are barred from these proceedings.

*Plaintiffs Can Not Maintain a Class Action Under Rule 23 and FLSA*

Plaintiffs can not maintain a class action lawsuit under Rule 23 and FLSA. In addition to Defendants submitting on their arguments advanced in their second motion to dismiss, Defendants further argue that Plaintiffs attempt to cite unreported cases in support of its perceived ability to amalgamate an opt-out class action suit with an opt-in class action is unpersuasive. Moreover, Defendants have not yet challenged the congruency of a unified cause of action in federal court pairing a federal opt-in class action with a state opt-out class action suit. Defendants have not challenged the congruency because Plaintiffs have not based their theory of recovery or relied upon any state enabling statute to foster their class action in federal court. However, if it does in the future, Defendants perceive the same problem with the state enabling statutes as it does with the pairing of two federal ones [Rule 23 and FLSA]. Defendants submit that they will remain inharmoniously incongruent.

**CONCLUSION**

Based upon the foregoing, Defendants submit that Plaintiffs have FAILED to show or demonstrate: (1) that Defendants second/supplemental motion to dismiss/motion for judgment on the pleading, or however designated/treated by the court, was improper and/or untimely, (2) that venue is proper in Washington, D.C., (3) that it properly invoked the long arm statute of the court to confer personal jurisdiction over Defendants, (4) that it was entitled to jurisdictional discovery (5) that they properly alleged a jurisdictional conspiracy theory, (6) that they can overall state a claim for which relief can be granted, (7) that they are entitled to relief under the FLSA, Sherman, and Clayton Acts, (8) that a legitimate reason exists as to why their equitable claims for relief should not be dismissed, and (9) that a legitimate reason exists as to why their suggested class action matter should not be dismissed.

For all the reasons stated above, it is beyond doubt that Plaintiffs can prove any set of facts that would allow a basis for recovery; and as a result their case *en toto* should be duly

dismissed with prejudice.

    Respectfully Submitted,

_____/s/_____
J. Wyndal Gordon
Bar No.#:  MD023572
**THE LAW OFFICE OF J. WYNDAL GORDON, P.A.**
10 North Calvert Street, Suite 930
Baltimore, Maryland 21202
410.332.4121 o
410.347.3144 f
Attorney for Bob Ward,
and A&A Cardinal Evictions


_____/s/_____
Stephanie Kinder
Bar No.#: 446209
**THE LAW OFFICE OF STEPHANIE KINDER, P.A.**
10 North Calvert Street, Suite 930
Baltimore, Maryland 21202
410.244.6263 o
410.347.3144 f
Attorney for Bob Ward,
and A&A Cardinal Evictions



## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY**, this _20_ day of _November_, 2006, that the foregoing Motion to Dismiss was served upon Plaintiffs and Defendants' known Counsel:

Mathew Slater
**CLEARY GOTTLIEB STEEN & HAMILTON**
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006

Gina Smith
**MEYERS, RODBELL & ROSENBAUM, P.A.**
6801 Kenilworth Avenue, Suite 400
Greenbelt, Maryland 20737

I. Staten
**BUTCH ENTERPRISES, INC.**
10332 Main Street, Suite 352
Fairfax, Virginia 22030


_____/s/_____
J. Wyndal Gordon

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ASHFORD, et al. | * | |
| Plaintiff | * | |
| v. | * | |
| EAST COAST EXPRESS EVICTIONS, et al. | * | CASE#:06-CV-1561 RJL |
| Defendants | * | |

******************************************************************************

## ORDER

**UPON CONSIDERATION**, of Defendants A&A and Robert "Bob" Ward's Second/Supplemental Motion to Dismiss/Motion for Judgment on the Pleadings, and the Response of Plaintiffs, and Reply of Defendants;

**IT IS HEREBY ORDERED**, this ___ day of ____, 2006, that the foregoing Motion be GRANTED.

_____
Judge Richard J. Leon