Exhibit 2

# SETTLEMENT AGREEMENT

This Agreement is made and entered into this _25st_ day of August, 2007, by and among defendant All American Eviction Company ("All American"), defendant Caroline Lanford and Plaintiffs, both individually and on behalf of the Class, each as defined in Paragraph 1 below.

WHEREAS, Plaintiffs allege that All American and Ms. Lanford failed to pay minimum wage to Plaintiffs and the Class for Eviction Work (as defined in Paragraph 8 below) performed during the Class Period (as defined in Paragraph 4 below) and that All American and Ms. Lanford participated in an unlawful combination and conspiracy with the Other Defendants (as defined in Paragraph 1 below) to suppress wages below the minimum wage, which resulted in the reduction of competition in the D.C. Metro Area labor market and which caused wage levels to fall to artificially low levels, all in violation of the Relevant Laws (as defined in Paragraph 1 below);

WHEREAS, All American and Ms. Lanford deny Plaintiffs' allegations and admit no wrongdoing;

WHEREAS, Plaintiffs and their counsel have conducted an investigation into the facts and the law regarding this Action and have concluded that a settlement with All American and Ms. Lanford according to the terms set forth below is in the best interest of Plaintiffs and the Class because it will help reduce the expenses, delays, and risks inherent in protracted litigation;

WHEREAS, All American and Ms. Lanford, despite their belief that their actions have been proper and that they are not liable for the claims asserted and have good defenses thereto, have nevertheless agreed to enter into this Agreement; and

1

WHEREAS, Plaintiffs have conducted due diligence regarding All American and Ms. Lanford's financial capacity to pay damages to Plaintiffs and the Class and have determined that, considering that financial capacity, the payment to be made into the Settlement Fund, as defined in Paragraph 1 below, is fair and adequate;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed with prejudice as to the Releasees, and except as hereinafter provided, without costs against Plaintiffs, the Class, All American or Ms. Lanford, subject to the approval of the Court, each as defined in Paragraph 1 below, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, on the following terms and conditions:

## DEFINITIONS

1.    <u>Defined Terms.</u>  The following terms have the following meanings for purposes of this Agreement:

a.    "All American" means defendant All American Eviction Company.

b.    "Action" means *Ashford et al. v. East Coast Express Eviction et al.*, Case Number 06-<u>CV</u>-1561, currently pending in the U.S. District Court for the District of Columbia, and any other cases later consolidated into *Ashford*.

c.    "Agreement" means this document, entitled *Settlement Agreement*, an agreement between the Parties.

d.    "Audit" has the meaning stated in Paragraph 10.

e.    "Audit Period" has the meaning stated in Paragraph 10.

   f.  "Auditing Agreement" means the Auditing Agreement appended hereto as Appendix B.

   g.  "Auditor" has the meaning stated in Paragraph 10.

   h.  "Business Days" means a period of days as computed pursuant to Federal Rule of Civil Procedure 6(a), except that intermediate Saturdays, Sundays, and legal holidays are excluded from the computation in all instances, not only in periods shorter than 11 days.

   i.  "Class" has the definition stated in Paragraph 4.

   j.  "Class Member" means any person falling within the definition of the Class except an Opt Out (as defined in Paragraph 1(y)).  "Class Members" means each and every Class Member.

   k.  "Class Period" has the definition stated in Paragraph 4.

   l.  "Court" means the judicial officer presiding over the Action.

   m.  "Defendants" means, collectively, All American, Ms. Lanford, and the Other Defendants (as defined below in Paragraph 1(z)).  "Defendant" means any one of the Defendants.

   n.  "Employee" has the meaning stated in Paragraph 8.  "Employees" means each and any Employee.

   o.  "Escrow Account" means the escrow account established with the Escrow Agent.

   p.  "Escrow Agent" means Mercantile Potomac Bank, 1629 K Street NW, Washington, DC 20006.

   q.  "Escrow Funds" means the funds in the Escrow Account.

   r.  "Eviction Work" has the meaning stated in Paragraph 8.

s.      "Execution Date" means the first day on which Plaintiffs' Counsel and Settling Defendants' Counsel each has fully signed and executed this Agreement under the counterpart execution provisions of Paragraph 36.

t.      "Final Approval" has the meaning stated in Paragraph 6.

u.      "Final Order" is a final appealable order of the Court.

v.      "Injunctive Order" means an order for injunctive relief substantially similar to the order appended hereto as Appendix A.

w.      "NCH" means the National Coalition for the Homeless.

x.      "Notice Date" means the date on which notice is distributed to the Class, as directed by the Court.

y.      "Opt Out" means a person who would otherwise be a Class Member but has timely and validly excluded himself or herself from the Class in accordance with any exclusion procedure and deadline the Court establishes.  "Opt Outs" means each and every Opt Out.

z.      "Other Defendants" means all persons or entities that have been, are, or may be in the future Defendants in the Action, together with their respective subsidiaries, parents, affiliates, predecessors, and coconspirators, but not including All American and Ms. Lanford.  "Other Defendant" means any one of the Other Defendants.

aa.     "Plaintiff" means Kirk Douglas Greene, Anthony Forte, Hassan Shakur, Sandy Theodore Green, or Donald Brooks.  "Plaintiffs" means each and every Plaintiff collectively.

bb.     "Plaintiffs' Counsel" means Cleary Gottlieb Steen & Hamilton LLP.

4

cc.    "Parties" means Plaintiffs and Settling Defendants.  "Party" means any one of the Parties.

dd.    "Released Claims" has the meaning stated in Paragraph 2.

ee.    "Releasees" means, jointly and severally, Ms. Lanford, All American, and All American's officers, directors, employees, agents, stockholders, attorneys, and representatives.  Despite the preceding sentence, the definition of "Releasees" does not include any of the Other Defendants.  "Releasee" means any one of the Releasees.

ff.    "Releasors" means the Plaintiffs and the Class Members and the heirs, successors, executors, administrators, and assignees of each of the foregoing.  "Releasor" means any one of the Releasors.

gg.    "Relevant Laws" means the following laws: District of Columbia Minimum Wage Statute D.C. Code, § 32-1001 *et seq.*; Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; Maryland Wage and Hour Law, MD Code Ann., Lab. & Empl. § 3-401 *et seq.*; Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.8 *et seq.*; the Sherman Antitrust Act, 15 U.S.C. § 1, Clayton Act, 15 U.S.C. §§ 15, 26; D.C. Antitrust Act, D.C. Code § 28-4501 *et seq.*; Maryland Antitrust Act, Md. Code Ann., Com. Law § 11-201 *et seq.*; Virginia Antitrust Act, Va. Code Ann. § 59.1-9.1 *et seq.*; and equitable theories of unjust enrichment and quantum merit as set forth alleged in the complaint or any amended complaint in the Action.

hh.    "Settlement" means the settlement contemplated by this Agreement.

ii.    "Settlement Fund" means the amount of money paid pursuant to Paragraph 13 and all interest earned thereon after becoming Escrow Funds.

jj.    "Settling Defendants" means All American and Ms. Lanford.  "Settling Defendant" means any of the Settling Defendants.

kk.   "Settling Defendants' Counsel" means Law Offices of Melvin L. Otey, PLLC.

## RELEASE OF CLAIMS

2.   Release. (a) In addition to the effect of any final judgment entered in accordance with this Agreement, upon Final Approval, and in consideration of the injunctive relief, payment of the Settlement Fund and for other valuable consideration, the Releasors will completely release, acquit, and forever discharge the Releasees from the Released Claims. "Released Claims" means any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, derivative or direct, suspected or unsuspected, accrued or unaccrued, asserted or unasserted in law or equity, including, without limitation, claims which have been asserted or could have been asserted in the Action or any litigation against any of the Releasees arising out of the matters alleged in the Action, that any of the Releasors ever had, now has, or hereafter can, will, or may have against the Releasees, based upon the payment of wages by the Settling Defendants to the Plaintiffs or the Class or any conspiracy involving the Settling Defendants to suppress wages paid to the Plaintiffs or the Class, arising under the Relevant Laws, from the beginning of time to the Execution Date. After the Execution Date, Releasors will not seek to establish liability or seek to recover against any of the Releasees based, in whole or in part, upon any of the Released Claims. The foregoing release, discharge, and covenant not to sue will not include claims by any Releasor for personal injury, workers compensation, negligence, or other causes of action that do not arise under the Relevant Laws.

(b)     Plaintiffs, individually and on behalf of the Class, expressly and irrevocably

waive any and all defenses, rights and benefits that they might have in relation to this release

under or by virtue of any laws or statutes relating to the release of unknown claims, such as or

similar to section 1542 of the Civil Code of the State of California, which reads:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor.

### CLASS NOTICE AND PROCEDURES RESPECTING THE ACTION

3.     <u>Vacation of Default and Stay of the Action</u>.  Within 10 Business Days of the

Execution Date, the Parties will submit a joint stipulation to the Court requesting that the Court

lift the default entered against the Settling Parties and stay all proceedings in the Action

regarding the Settling Defendants, except any proceedings necessary to effectuate this

Agreement, and suspend all time deadlines accordingly until such time as the Agreement is

rescinded or the Action is dismissed as to the Settling Defendants.

4.     <u>Motion for Preliminary Approval</u>.  No later than 30 Business Days after Plaintiffs

file their motion for class certification in the Action, Plaintiffs will submit to the Court a motion

for preliminary approval of the Settlement.  The motion will request that the Court certify the

Action to proceed as a class action, with a Class as defined as follows:

> All persons (homeless or otherwise) employed by one or more Defendants to
> perform eviction services and paid a sub-minimum wage (the "Class") at any time
> from September 5, 2002 to the Notice Date (the "Class Period").

5.     <u>Notice to the Class</u>.  In the event that the Court preliminarily approves the

Settlement, Plaintiffs, in accordance with Rule 23 of the Federal Rules of Civil Procedure and

the Court's order, will take reasonable and appropriate steps to provide notice of the Settlement's

preliminary approval and the date of the hearing the Court schedules to consider the fairness,

adequacy and reasonableness of the proposed Settlement as instructed by the Court. Plaintiffs may withdraw monies in a reasonable amount from the Escrow Funds for the purpose of disseminating notice to the Class, subject to the Court's approval, and Plaintiffs will inform the Settling Defendants in writing of all such withdrawals.

6.    <u>Final Approval</u>.  If the Court grants preliminary approval of the Settlement, Plaintiffs will seek entry of a Final Order and judgment by the Court approving this Settlement. "Final Approval" is the date on which the Settlement will become final, which occurs when each of the following four conditions are satisfied:

a.    The Court has entered a Final Order approving this Agreement under Federal Rule of Civil Procedure 23;

b.    The Court has entered the Injunctive Order;

c.    The Court has entered a final judgment dismissing the claims against the Settling Defendants in the Action with prejudice; and

d.    Either (i) the time for appeal or to seek permission to appeal the Court's entry of each of the orders or final judgment above has expired with no appeal having been taken or permission to appeal having been sought; or (ii) such orders and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to further appeal or review.

## INJUNCTIVE AND AFFIRMATIVE RELIEF

7.     <u>Entry of Injunctive Order</u>.  Plaintiffs and the Settling Defendants will jointly seek entry by the Court of the Injunctive Order at a time prior to Final Approval to be determined by Plaintiffs.

8.     <u>Affirmative Relief Agreement</u>.   The Settling Defendants agree that from the Execution Date until five years after Final Approval:

        a.     <u>Prohibition Against Antitrust Violations</u>.  The Settling Defendants will not form any agreement with any person that violates any antitrust statute, including an agreement to pay Employees a sub-minimum wage for Eviction Work or otherwise fix, suppress, stabilize or maintain at illegal, artificially low or non-competitive levels the wages paid to Employees for Eviction Work.  To the extent any agreement referred to in the forgoing sentence currently exists (which Settling Defendants deny), the Settling Defendants will immediately cease compliance with that agreement.  The Settling Defendants will not discuss, exchange or share information regarding the wages they pay Employees for Eviction Work with any Other Defendant, except to state that the Settling Defendants are complying with the applicable laws.

        b.     <u>Payment of Minimum Wage</u>.   The Settling Defendants will pay each Employee at least the minimum wage applicable in the jurisdiction in which the Employee performs Eviction Work.  If the jurisdiction has a minimum hours paid requirement, then the Settlement Defendants will pay the Employee for at least the required minimum hours of pay.  In the event

9

that the Employee performs Eviction Work in more than one jurisdiction during the course of a day, the Settling Defendants will pay at least the minimum wage and at least the minimum hours requirement applicable (if applicable) for the jurisdiction in which (1) the Employee performs the most evictions that day (including evictions that the Employee does not ultimately perform but for which the Employee appears), or (2) in the event that the Employee does not perform a greater number of evictions that day (including evictions that the Employee does not ultimately perform but for which the Employee appears) in any single jurisdiction than in any other jurisdiction, the highest minimum wage applies. The Settling Defendant will pay at least the minimum wage and minimum hours requirement (if applicable) effective on the day the Employee performs the Eviction Work.

c.    <u>Employee Defined</u>.    "Employee" means any person who performs Eviction Work, regardless of whether that person is retained on a regular basis or is hired only for a day or a particular eviction or evictions. The use of "Employee" in this agreement does not constitute an admission that such Employee is an "employee" as defined by the Internal Revenue Service or its code.

d.    <u>Eviction Work Defined</u>.    "Eviction Work" means any portion of an eviction that the Employee performs, including time spent: (i) actively carrying items out of an apartment, condominium, house, office or other space; (ii) waiting for an eviction to begin; (iii) waiting after an eviction

10

ends to travel to the next eviction worksite or to return to the pick-up point; (iv) waiting during a break in work while an eviction is being performed; (v) traveling in or waiting in or by a vehicle owned or operated by a Settling Defendant or a Settling Defendant's employee or contractor or otherwise at the behest of a Settling Defendant; (vi) waiting for payment of services by a Settling Defendant; and (vii) performing any other duty assigned by a Settling Defendant.  However, Eviction Work shall not include waiting time in anticipation of being hired to work on a given day before an Employee enters for the first time that day a vehicle owned or operated by a Settling Defendant or a Settling Defendant's employee or contractor.

e.     Payment for Eviction Work When Eviction Is Cancelled.  The Settling Defendants will pay Employees for Eviction Work performed even if the Settling Defendant is not paid for the Eviction Work or if the scheduled eviction is cancelled.  In accordance with paragraph 8(d), if an eviction is cancelled and an Employee waits by a vehicle owned or operated by a Settling Defendant or a Settling Defendant's employee or contractor in anticipation of being hired to work on a given day but the Employee does not enter that vehicle, then the Settling Defendant need not pay the Employee for the time spent waiting in anticipation of being hired that day.

f.     Records Requirements.  The Settling Defendants will maintain records for all Employees as required by the minimum wage laws applicable at the

11

time the Eviction Work is performed.   Without any limitation to the requirements in the forgoing sentence, each Settling Defendant will keep accurate records regarding each Employee, showing: (i) the Employee's name, most recent address (if any), and date of birth; (ii) work performed by the Employee; (iii) rate of pay paid to the Employee; (iv) hours worked each day and each pay period by the Employee; and (v) total amount paid by the Settling Defendant to the Employee during the pay period, itemized to show any deductions or additions to the wages.  The Settling Defendant keeping the record may rely upon and has no obligation to independently verify the accuracy of the information the Employee provides.   The Settling Defendant will give a copy of this record to each Employee at the time the Settling Defendant pays that Employee. The Settling Defendants will maintain the records for a period of three years after they are created or five years after Final Approval, whichever is later.   The Settling Defendants will permit reasonable inspection of these records by the Auditor.  Additionally, the Settling Defendants will permit an Employee (individually and through the Employee's counsel or representative) to inspect any record pertaining to that Employee upon reasonable request. Nothing in the subparagraph 8(f) limits the Settling Defendants' ability to require Employees as a condition of employment to provide other information not specifically required by this subparagraph as permitted under the law.

12

g.    Prohibition of Retaliation.  The Settling Defendants will not take any action intended to retaliate against any person or exclude him or her from future Eviction Work because of his or her actual or supposed involvement in this Action, or any other legal or government proceeding or function related to the Relevant Laws.  This prohibition includes communications with Other Defendants about the identities of persons who provided information to Plaintiffs' Counsel or were otherwise involved in this Action.

h.    Applicability of the Labor Laws.  The Settling Defendants will treat each Employee as an "employee" as that term is used under any and all statutes pertaining to the use of child labor and the payment of minimum wage and overtime in the jurisdictions in which the Settling Defendants perform Eviction Work.

9.    Self-Reporting of Violations.  Within 10 Business Days of any Settling Defendant discovering that it has violated the terms of Paragraph 8 or the Injunctive Order, the Settling Defendant so violating will notify NCH of the violation, describe the nature of the violation and what measures have been or are being taken to remedy the violation.  In the event the Settling Defendant does not remedy the violation within twenty Business Days of discovering the violation, NCH shall be entitled to seek enforcement of this Agreement or the Injunctive Order pursuant to Paragraph 20, below.  Additionally, from the Execution Date to Final Approval, the Settling Defendants will give notice to NCH, with a copy to Plaintiffs' Counsel, of their compliance with the terms of Paragraph 8, every three months.

10.  <u>Auditing</u>.  Settling Defendants agree that the Auditor will audit the Settling Defendants' compliance with the terms of Paragraph 8 and the Injunctive Order, in accordance with the following:

   a.  <u>Definition of Auditor</u>.  "Auditor" means the individual, company or organization appointed as the Auditor pursuant to the Auditing Agreement.  Should the Auditing Agreement fail to result in an Auditor being selected, the Parties will jointly move the Court to appoint an Auditor, chosen in the Court's discretion.

   b.  <u>Conducting the Audit</u>.  The Auditor will conduct Audits on a periodic basis for the purpose of determining the Settling Defendants' compliance with the terms of Paragraph 8 and the Injunctive Order, and Settling Defendants will provide reasonable cooperation to the Auditor regarding those Audits.  "Audit" means: (i) reviewing records related to employee compensation; (ii) review of any notices sent by the Settling Defendant under Paragraph 9; (iii) review of any written, printed, electronic or recorded correspondence between the Settling Defendant and any Other Defendant; (iv) conducting announced and unannounced inspections of Eviction Work; (v) interviews with the Settling Defendants and/or their staff, chosen in the Auditor's discretion at a time set in the Auditor's discretion; and (vi) any other activities chosen in the Auditor's discretion for the purpose of determining the Settling Defendants' compliance with the terms of Paragraph 8 and the Injunctive Order.

14

c.    <u>Audit Periods</u>.  The Auditor will perform one audit during each Audit Period for five years after Final Approval.  An "Audit Period" is (1) a period of three months during the first twelve months after Final Approval, and (2) a period of one year during the second, third, fourth, and fifth years after Final Approval.  The Auditor may, at its discretion, perform additional Audits during any Audit Period in which the Auditor determines that the Settling Defendants' are not in compliance with the terms of Paragraph 8 and the Injunctive Order.

d.    <u>Reporting the Finding of the Audit</u>.  At the end of each Audit Period, the Auditor will send a notice to NCH, with a copy to Plaintiffs' Counsel and Settling Defendants, reporting as to each Settling Defendant: (i) the Audits performed; (ii) the Settling Defendant's compliance with the Auditor's requests for assistance; (iii) any violations of the terms of Paragraph 8 or the Injunctive Order identified in the Audit, or alternatively the Settling Defendant's complete compliance with the terms of Paragraph 8 and the Injunctive Order; and (iv) any other information pertinent in the Auditor's discretion.

e.    <u>Payment of the Auditor</u>.  The Auditor will be paid in accordance with the terms of the Auditing Agreement.  If the Court appoints an Auditor or if the Auditing Agreement fails to settle how the Auditor will be paid, then Settling Defendants are jointly and severally liable for payment of all of the Auditor's fees and expenses.

11.    <u>Settling Defendants' Responsibility For Affirmative Relief</u>.    All American is responsible and liable for compliance with the Injunctive Order and Paragraphs 8-10 regarding all of its own activities, the activities of its employees and officers, and the activities of any entities it controls or in which it has an ownership interest.  Ms. Lanford is responsible and liable for compliance with the Injunctive Order and Paragraphs 8-10 regarding all of her individual activities and is responsible and liable for ensuring that any entity which she controls, for which she is an officer, manager or employee, or in which she has an ownership interest complies with the terms of the Injunctive Order and Paragraphs 8-10.

## COOPERATION AGREEMENT

12.    <u>Cooperation the Settling Defendants Will Provide</u>.  The Settling Defendants agree to make every reasonable effort to cooperate with Plaintiffs in connection with each of the following matters:

a.    <u>Document Preservation.</u>  Settling Defendants agree to retain, at their own expense, all documents (including all communications) in all formats (including paper, electronic and other formats) regarding employment policies and practices, Employees or others who have worked for Settling Defendants, payments to Employees, evictions performed, moneys received for evictions performed, customers, and competitors, all from 2002 to the present.

b.    <u>Document Requests.</u>  Upon the request of Plaintiffs' Counsel, Settling Defendants agree to use their best efforts to provide, at Settling Defendants' own expense, relevant responsive, non-privileged documents

16

in connection with the Action, except that the Settling Defendants will not be liable for the reasonable cost of duplicating responsive documents produced to Plaintiffs' Counsel.

c.   <u>Interrogatory Responses</u>.  Upon the request of Plaintiffs' Counsel, Settling Defendants agree to use their best efforts to provide, at Settling Defendants' own expense, relevant responsive, non-privileged responses to interrogatories in connection with the Action.

d.   <u>Testimony</u>.  Upon the request of Plaintiffs' Counsel, Settling Defendants agree to use their best efforts to make current and former employees, officers, and agents, including but not limited to Ms. Smith, available to give testimony at deposition or trial in the Action.

e.   <u>Rule 30(b)(6) Deposition</u>.  Upon the request of Plaintiffs' Counsel, Settling Defendants agree to make available, under Federal Rule of Civil Procedure 30(b)(6) a witness or witnesses to give testimony in the Action.

f.   <u>Document Authentication</u>.  Upon the request of Plaintiffs' Counsel, Settling Defendant agree to provide declarations from a custodian or other qualified employee, to the extent they can do so in good faith using best efforts, that:

  a.   the documents listed in the declarations to be provided were produced in the Action by Settling Defendants and were produced from Settling Defendants' files which were maintained in the ordinary course of business.

17

b.  the documents listed in the declarations to be provided were marked by Settling Defendants with any identification number and prefix used by Settling Defendants.

c.  the documents listed in the declarations to be provided constitute originals or duplicates of regularly conducted activity:

1.  made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters;

2.  were kept in the ordinary course of the regularly conducted activity; and

3.  were made by the regularly conducted activity as a regular practice.

d.  the documents listed in the declarations to be provided were prepared on or about the date shown on the documents.

## THE SETTLEMENT FUND

13.  <u>Payment to the Settlement Fund</u>.  Settling Defendants agree to pay either (a) ten thousand dollars ($10,0000) in monthly installments of five-hundred dollars ($500) each into the Settlement Fund, starting 30 days after the Execution date, or (b) eight thousand five hundred dollars ($8,500) in a lump sum payment within 60 days of the Execution Date.  The choice between clause 13(a) and 13(b), above, will be made solely in Settling Defendants' discretion, except that until and unless clause 13(b) is fulfilled, clause 13(a) shall apply.  If the Settling Defendants pay any money into the Settlement Fund before 60 days after the Execution Date has elapsed under clause 13(a), above, that money will be credited to the lump sum payment made

under clause 13(b), above, should the Settling Defendants elect that method of payment. The Settling Defendants will be jointly and severally liable for payment of the Settlement Fund, and any failure by the Settling Defendants to make payment shall render the releases set forth in Paragraph 2 void. The Settling Defendants will deposit the Settlement Fund payment in the Escrow Account under the custody of the Escrow Agent pursuant to instructions to be given by Plaintiffs' Counsel. Settling Defendants agree to cooperate with the Escrow Agent by providing all information necessary for the Escrow Agent to perform its duties, including but not limited to completing a Form W-9 or Form W-8 as applicable, and by signing a reasonable escrow agreement, if required by the Escrow Agent.

14.    <u>Settlement Fund Satisfies All Claims</u>. Except as otherwise provided in this Agreement, Releasors will look solely to the Settlement Fund for settlement and satisfaction against Releasees of all Released Claims. Except as provided for by an order from the Court, no Releasor will have any interest in the Settlement Fund or any portion thereof.

15.    <u>Disbursements from the Escrow Funds</u>. Disbursements for reasonable expenses associated with providing notice of the Settlement to the Class as described in Paragraph 5, charges of the Escrow Agent, and tax payments and expenses of administering the Settlement Fund, all as approved by the Court, may be made from the Escrow Funds and will not be refundable to the Settling Defendants in the event that the Agreement is rescinded, or the Settlement is not approved or otherwise fails to achieve Final Approval. To the extent there are Escrow Funds provided by Other Defendants, any disbursements will be deducted from the various Escrow Funds on a pro rata basis.

16.    <u>Return of the Settlement Fund to the Settling Defendants</u>. In the event that the Settlement is not consummated or the Agreement is rescinded, terminated, or voided for any

reason, whether by reason of Court disapproval or otherwise, and if the Settling Defendants have paid the Settlement Fund, upon the Escrow Agent's receipt of either (i) written notice from both Settling Defendants' Counsel and Plaintiffs' Counsel or (ii) an order from the Court so directing, the Escrow Agent will arrange the return of the Settlement Fund forthwith to Settling Defendants in an amount equal to Settling Defendants' payment, together with all interest paid or accrued upon it, minus disbursements permitted under this Agreement.

17.    <u>Distribution of the Settlement Fund</u>.  After Final Approval, the Settlement Fund will be distributed at a time and in accordance with a plan approved by the Court, and subject to any award of attorneys' fees and costs by the Court.

## RESCISSION OR VOIDING OF THE AGREEMENT

18.    <u>Effect of Material Modification of the Settlement</u>.  If the Court enters an order approving but materially modifying the Settlement or any part hereof, or if such approval is materially modified on appeal, then the Parties will each, in their sole discretion not limited by any other paragraph in this Agreement, have the option to rescind the Agreement in its entirety. Despite the preceding sentence, (1) the Court's alteration of the class definition does not give rise to a right to rescind the Agreement, and (2) the Court's alteration of paragraph 21 under the terms of paragraph 21 does not give rise to a right to rescind the Agreement.  Written notice of the exercise of any such right under this Paragraph will be made within 10 Business Days of the event giving rise to the rescission.  The written notice must specifically describe the refusal or material modification that gives rise to the rescission.  In any event, the Parties agree to renegotiate the settlement in good faith should a rescission occur.

19.    <u>Contesting Class Certification If Voided</u>.  In the event this Agreement becomes rescinded or terminated in its entirety or otherwise becomes null and void, nothing in this

Agreement will limit Settling Defendants' right to contest, defend or argue against the certification of any class whatsoever in the Action.

**MISCELLANEOUS**

20.    <u>Enforcement by NCH</u>.

a.    <u>NCH's Standing to Enforce</u>.  Should NCH learn of a Settling Defendant's violation of any term of this Agreement or the Injunctive Order, NCH has standing to enforce the Agreement or the Injunctive Order before the Court or any other state or federal court on behalf of any Plaintiff, Class Member or Employee, individually or as a class.  Settling Defendants acknowledge that NCH is an intended third party beneficiary of this Agreement.  Should NCH seek enforcement of this Agreement or the Injunctive Order, Settling Defendants agree not to challenge NCH's right or standing to seek enforcement of the terms of this Agreement or the Injunctive Order before the Court or any other state or federal court on behalf of any Plaintiff, Class Member or Employee, individually or as a class.

b.    <u>Procedure for Enforcement</u>.  Before seeking enforcement of the terms of this Agreement or the Injunctive Order, NCH must first give the violating Settling Defendant written notice of the nature of the violation.   From the time that notice is received, the violating Settling Defendant has twenty Business Days to remedy the violation.   Should the violating Settling Defendant not remedy the violation within 20 Business Days to NCH's reasonable satisfaction, then NCH may seek enforcement of the terms of

21

this Agreement or the Injunctive Order.  However, notwithstanding this
subparagraph, if the delay to enforcement called for in this subparagraph
would result in irreparable harm to any Plaintiff, Class Member, employee
of a Settling Defendant, or NCH, then NCH may seek enforcement
immediately.

c.    <u>Remedies NCH May Seek</u>.  NCH may seek specific enforcement of any
term of this Agreement, contempt of court for violation of the Injunctive
Order, damages arising from the violation (including double damages
allowed under minimum wage statutes and treble damages allowed under
antitrust statutes), and any other relief as appropriate.  This paragraph in
no way limits the right of Plaintiffs or Class Members to enforce the terms
of Paragraph 8 or the Injunctive Order on behalf of themselves.

21.    <u>Ongoing Application of All Labor Statutes</u>.  Settling Defendants agree that an
Employee is an employee for purposes of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.,
the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-403 et seq., the Virginia
Minimum Wage Act, Va. Code Ann. §§ 40.1-28.8 et seq., and the District of Columbia Wage
and Hour Law, D.C. Code § 32-1001 et seq. Nothing in this Agreement shall limit the
applicability of any labor-related statute to any Employee or Class Member.

22.    <u>Other Defendants Not Settled</u>.  This Agreement does not settle or compromise
any claim by Plaintiffs or any Class Member asserted in the Action against any Other Defendant
or alleged co-conspirator other than the Settling Defendants.  Plaintiffs and the Class specifically
reserve all rights against the Other Defendants or alleged co-conspirators other than the Settling
Defendants.

23.    <u>Conflicts With Annexed Agreements</u>.  To the extent any conflict exists between the terms of this Agreement and any agreement annexed to this Agreement, the terms of this Agreement will be considered controlling.

24.    <u>Choice of Forum and Law</u>.    The Parties hereby irrevocably submit to the jurisdiction of the United States District Court for the District of Columbia for any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement.  This Agreement will be governed by and interpreted according to the substantive laws of the District of Columbia without regard to its choice of law or conflict of laws principles. Any claim(s) for violation of wage laws will be governed by the laws of the jurisdiction in which the alleged violation occurs (e.g., the location of the eviction).

25.    <u>Entire Agreement; Amendment</u>.  This Agreement constitutes the entire agreement among the Parties pertaining to the Settlement of the Action against the Settling Defendants only, and supersedes all prior and contemporaneous undertakings of the Parties in connection herewith.  This Agreement may not be modified or amended except in writing executed by the Parties.

26.    <u>Binding Effect</u>.  This Agreement will be binding upon, and inure to the benefit of, the Parties' successors and assigns.

27.    <u>Authority to Execute.</u>  The undersigned Settling Defendants' Counsel covenants and represents that such representative is fully authorized to enter into and execute this Agreement on the Settling Defendants' behalf.  The undersigned Plaintiffs' Counsel represent that they are fully authorized to enter into and execute this Agreement on behalf of Plaintiffs, and, subject to the Court's approval under Federal Rule of Civil Procedure 23, the Class.

28. <u>Best Efforts to Effectuate this Settlement</u>.  The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Agreement and any other steps and efforts which may become necessary or appropriate, by the Court's order or otherwise, to effectuate the Settlement.

29. <u>Execution in Counterparts</u>.  The Parties may execute this Agreement in counterparts.  A facsimile signature will be deemed an original signature for purposes of executing the Agreement, although a Party sending such a signature via facsimile will send the original signature to the other Parties within 2 Business Days, First Class.

30. <u>Agreement Effective On The Execution Date</u>.  The Agreement will become effective on the Execution Date.  Unless otherwise stated, all obligations in this Agreement flow from the Execution Date.

31. <u>No Admission or Evidence of Wrongdoing</u>.  This Agreement, whether or not it becomes final, and any and all negotiations, documents, exhibits, statements, information exchanges, and discussions associated with it, will not in any event be construed or be deemed to be an admission or concession on the part of any Settling Defendant of any liability or wrongdoing whatsoever or as any evidence of any wrongdoing or violation by a Settling Defendant of any law.  This Agreement, any of its provisions or related documents, or evidence of any negotiations or proceedings in pursuance of the Settlement, will not be discoverable, offered or received, directly or indirectly, in the Action or any other action or proceeding as an admission or concession of any liability or wrongdoing whatsoever on the part of any Settling Defendant or as any evidence of any violation by any Settling Defendant of any law.  The provisions of this Paragraph shall not prevent the use of this Agreement or any of its provisions or related documents, or evidence of any negotiations or proceedings in pursuance of the

24

Settlement, in any proceeding to enforce this Agreement or any of its provisions or related documents.

32.    <u>No Party Is the Drafter</u>.  No Party will be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

33.    <u>Notice</u>.  Notice to Plaintiffs or the Class pursuant to this Agreement, the Injunctive Order, or the Audit Agreement shall be sent by (a) facsimile or electronic mail, and (b) letter by overnight delivery to:

> Matthew D. Slater
> Lee F. Berger
> Larry C. Dembowski
> Cleary Gottlieb Steen & Hamilton LLP
> 2000 Pennsylvania Avenue, NW
> Washington, DC 20006
> Telephone:  (202) 974-1500
> Facsimile:  (202) 974-1999
> Electronic mail:  MSlater@cgsh.com, LBerger@cgsh.com,
>         LDembowski@cgsh.com

Notice to Settling Defendants or any of them pursuant to this Agreement, the Injunctive Order, or the Audit Agreement shall be sent by (a) facsimile or electronic mail, and (b) letter by overnight delivery to:

> Melvin L. Otey
> The Law Offices of Melvin L. Otey, PLLC
> 3609 Georgia Avenue NW
> Suite 200
> Washington, DC 20010-1634
> Telephone: (202) 882-0022
> Electronic mail: melvinotey@oteylawoffices.com

Notice to NCH pursuant to this Agreement, the Injunctive Order, or the Audit Agreement shall be sent by (a) facsimile or electronic mail, and (b) letter by overnight delivery to:

Michael Stoops
Acting Executive Director
2201 P Street, N.W.
Washington, D.C. 20037
Phone: 202.462.4822
Fax: 202.462.4823
Electronic mail: mstoops@nationalhomeless.org

34.    <u>Severability</u>. If any provision of this Agreement is not enforceable, the remaining

portions of the Agreement will be enforced to the extent that they can be severed from the

portion that is not enforceable.

IN WITNESS WHEREOF, the Parties hereto, through their fully-authorized
representatives, have agreed to this Agreement as of the date first herein written.

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: _____

Date: _____
      Matthew D. Slater
      Lee F. Berger
      Larry C. Dembowski
      2000 Pennsylvania Avenue, N.W.
      Suite 9000
      Washington, D.C. 20006
      Tel: (202) 974-1646
      Fax: (202) 974-1999

**ATTORNEY FOR PLAINTIFFS**

THE LAW OFFICES OF MELVIN L. OTEY,
PLLC

By: _____

Date: _____
      Melvin L. Otey
      3609 Georgia Avenue NW
      Suite 200
      Washington, DC 20010-1634
      Tel.: (202) 882-0022

**ATTORNEY FOR DEFENDANTS ALL
AMERICAN EVICTION COMPANY AND
CAROLINE LANFORD**

26

**APPENDIX A**
**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Harry Jakeyia Ashford, et al., | ) | |
| | ) | Civil Action No. 06-cv-1561 (RJL) |
| *Plaintiffs,* | ) | |
| v. | ) | Hon. Richard J. Leon |
| | ) | |
| East Coast Express Eviction, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**[PROPOSED] ORDER GRANTING INJUNCTIVE RELIEF**

WHEREAS, plaintiffs in the above captioned matter, Kirk Douglas Greene, Anthony Forte, Hassan Shakur, Sandy Theodore Green, and Donald Brooks individually and on behalf of all others similarly situated ("Plaintiffs"), filed on September 5, 2006, a class action complaint for violations of federal, District of Columbia, Maryland and Virginia minimum wage laws, violations of Federal, District of Columbia, Maryland and Virginia antitrust laws, and for equitable relief and demand for a jury trial;

WHEREAS, Plaintiffs and All American Eviction Company ("All American") and Caroline Lanford, two defendants in the captioned matter, entered into a Settlement Agreement, dated _____, 2007, and an Auditing Agreement, dated _____, 2007;

WHEREAS, as part of the Settlement Agreement, the parties agreed to the Court's issuance of an injunctive order and the Court finds the issuance of such an order justified and appropriate,

IT IS HEREBY STIPULATED, AGREED, AND ORDERED THAT:

A.    For purposes of this order, the terms used herein are defined as follows:

27

1.  "Audit" means (i) reviewing records related to employee compensation; (ii) review of any notices sent by the Settling Defendant; (iii) review of any written, printed, electronic or recorded correspondence between the Settling Defendant and any Other Defendant; (iv) conducting announced and unannounced inspections of Eviction Work; (v) interviews with the Settling Defendants and/or their staff, chosen and scheduled in the Auditor's discretion; and (vi) any other activities chosen in the Auditor's discretion for the purpose of determining the Settling Defendants' compliance with the terms and this injunctive order.

2.  An "Audit Period" is (1) a period of three months during the first twelve months after Final Approval, and (2) a period of one year during the second, third, fourth, and fifth years after Final Approval.

3.  "Auditing Agreement" means a separate agreement entered into by the Parties substantially in the form set forth at Appendix B to the Settlement Agreement.

4.  "Auditor" means the individual, company or organization appointed as the Auditor pursuant to the Auditing Agreement.  Should the Auditing Agreement fail to result in an Auditor being selected, the Parties will jointly move the Court to appoint an Auditor, chosen in the Court's discretion.

5.  "Business Day" means a period of days as computed pursuant to Federal Rule of Civil Procedure 6(a), except that intermediate Saturdays, Sundays,

and legal holidays are excluded from the computation in all instances, not only in periods less than 11 days.

6. "Employee" means any person who performs Eviction Work, regardless of whether that person is retained on a regular basis or is hired only for a day or a particular eviction or evictions.

7. "Eviction Work" means any portion of an eviction that the Employee performs, including time spent: (i) actively carrying items out of an apartment, condominium, house, office or other space; (ii) waiting for an eviction to begin; (iii) waiting after an eviction ends to travel to the next eviction worksite or to return to the pick-up point; (iv) waiting during a break in work while an eviction is being performed; (v) traveling in or waiting in or by a vehicle owned or operated by a Settling Defendant or a Settling Defendant's employee or contractor or otherwise at the behest of a Settling Defendant; (vi) waiting for payment of services by a Settling Defendant; and (vii) performing any other duty assigned by a Settling Defendant.  However, Eviction Work shall not include waiting time in anticipation of being hired to work on a given day before an Employee enters for the first time that day a vehicle owned or operated by a Settling Defendant or a Settling Defendant's employee or contractor.

8. "Final Approval" means the date on which each of the following four conditions are first satisfied:

   a.    The Court has entered a final order approving this Agreement under Federal Rule of Civil Procedure 23;

29

b.    The Court has entered the Injunctive Order;

c.    The Court has entered a final judgment dismissing the claims against all Settling Defendants in the Action with prejudice; and

d.    Either (i) the time for appeal or to seek permission to appeal the Court's entry of each of the orders or final judgment above has expired with no appeal having been taken or permission to appeal having been sought; or (ii) such orders and final judgment have been affirmed in their entirety by the court of last resort to which any appeal has been taken or petition for review has been presented, and such affirmance has become no longer subject to further appeal or review.

9.  "NCH" means the National Coalition for the Homeless.

10. "Other Defendants" means all persons or entities that have been, are, or may be in the future Defendants in this action, together with their respective subsidiaries, parents, affiliates, and predecessors, and coconspirators, but not including All American and Ms. Lanford. "Other Defendant" means any one of the Other Defendants.

11. "Plaintiffs' Counsel" means Cleary Gottlieb Steen & Hamilton LLP.

12. "Settling Defendants" means All American and Ms. Lanford and their predecessors, successors, heirs, executors, administrators and assigns.

B.    For five years from the date of this order:

1. The Settling Defendants will not form any agreement with any person that violates any antitrust statute, including an agreement to pay Employees a

sub-minimum wage for Eviction Work or otherwise fix, suppress, stabilize or maintain at illegal, artificially low or non-competitive levels the wages paid to Employees for Eviction Work.  To the extent any agreement referred to in the forgoing sentence currently exists (which Settling Defendants deny), the Settling Defendants will immediately cease compliance with that agreement.  The Settling Defendants will not discuss, exchange or share information regarding the wages they pay Employees for Eviction Work with any Other Defendant, except to state that the Settling Defendants are complying with the applicable laws.

2.   The Settling Defendants will pay each Employee at least the minimum wage applicable in the jurisdiction in which the Employee performs Eviction Work.

3.   If the jurisdiction has a minimum hours paid requirement, then the Settlement Defendants will pay the Employee the required minimum hours of pay.

4.   In the event that the Employee performs Eviction Work in more than one jurisdiction during the course of a day, the Settling Defendants will pay at least the minimum wage and at least the minimum hours requirement applicable (if applicable) for the jurisdiction in which (1) the Employee performs the most evictions that day (including evictions that the Employee does not ultimately perform but for which the Employee appears), or (2) in the event that the Employee does not perform a greater number of evictions that day (including evictions that the Employee does

31

not ultimately perform but for which the Employee appears) in any single jurisdiction than in any other jurisdiction, the highest minimum wage applies. The Settling Defendant will pay at least the minimum wage and minimum hours requirement (if applicable) effective on the day the Employee performs the Eviction Work.

5. The Settling Defendants will pay Employees for Eviction Work performed even if the Settling Defendant is not paid for the Eviction Work or if the scheduled eviction is cancelled. In accordance with paragraph A(7), if an eviction is cancelled and an Employee waits by a vehicle owned or operated by a Settling Defendant or a Settling Defendant's employee or contractor in anticipation of being hired to work on a given day but the Employee does not enter that vehicle, then the Settling Defendant need not pay the Employee for the time spent waiting in anticipation of being hired that day.

6. The Settling Defendants will maintain records for all Employees as required by the minimum wage laws applicable at the time the Eviction Work is performed. Without any limitation to the requirements in the forgoing sentence, each Settling Defendant will keep accurate records regarding each Employee, showing: (i) the Employee's name, most recent address (if any), and date of birth; (ii) work performed by the Employee; (iii) rate of pay paid to the Employee; (iv) hours worked each day and each pay period by the Employee; and (v) total amount paid by the Settling Defendant to the Employee during the pay period, itemized to

show any deductions or additions to the wages. The Settling Defendant keeping the record may rely upon and has no obligation to independently verify the accuracy of the information the Employee provides. The Settling Defendant will give a copy of this record to each Employee at the time the Settling Defendant pays that Employee. The Settling Defendants will maintain the records for a period of three years after they are created or five years after Final Approval, whichever is later. The Settling Defendants will permit reasonable inspection of these records by the Auditor. Additionally, the Settling Defendants will permit an Employee (individually and through the Employee's counsel or representative) to inspect any record pertaining to that Employee upon reasonable request. Nothing in the subparagraph B(6) limits the Settling Defendants' ability to require Employees as a condition of employment to provide other information not specifically required by this subparagraph as permitted under the law.

7. The Settling Defendants will treat each Employee as an "employee" as that term is used under any and all statutes pertaining to the use of child labor and the payment of minimum wage and overtime in the jurisdictions in which the Settling Defendants perform Eviction Work.

8. The Settling Defendants will not take any action intended to retaliate against any person or exclude him or her from future Eviction Work because of his or her actual or supposed involvement in the above-captioned action, or any other legal or government proceeding or function

related to any statute referenced in paragraph B(7). This prohibition includes communications with Other Defendants about the identities of persons who provided information to Plaintiffs' Counsel or were otherwise involved in the above-captioned action.

C. Within 10 Business Days of any Settling Defendant's discovering that it has violated this injunctive order, the Settling Defendant so violating will notify NCH of the violation, with a copy to Plaintiffs' Counsel, describing the nature of the violation and what measures have been or are being taken to remedy the violation.

D. The individual, company or organization appointed as the Auditor pursuant to the Auditing Agreement or appointed by the Court will audit the Settling Defendants' compliance with this injunctive order, in accordance with the following:

  1. The Auditor will conduct Audits on a periodic basis for the purpose of determining the Settling Defendants' compliance with this injunctive order, and Settling Defendants will provide reasonable cooperation to the Auditor regarding those Audits.

  2. The Auditor will perform one audit during each Audit Period for five years after Final Approval. The Auditor may, at its discretion, perform additional Audits during any Audit Period in which the Auditor determines that the Settling Defendants' are not in compliance with the terms of this Injunctive Order.

  3. At the end of each Audit Period, the Auditor will send a notice to NCH, with a copy to Plaintiffs' Counsel and Settling Defendants' Counsel, reporting as to each Settling Defendant: (i) the Audits performed; (ii) the

Settling Defendants' compliance with the Auditor's requests for assistance; (iii) any violations of the terms of this injunctive order identified in the Audit, or alternatively the Settling Defendant's complete compliance with the terms this injunctive order; and (iv) any other information pertinent, in the Auditor's discretion.

4. The Auditor will be paid in accordance with the terms of the Auditing Agreement. If the Court appoints an Auditor or if the Auditing Agreement fails to settle how the Auditor will be paid, then Settling Defendants are jointly and severally liable for payment of all of the Auditor's fees and expenses, up to and including $2,000 per Audit.

SO ORDERED, at _____ on _____.

_____
Honorable Richard J. Leon,
U.S. District Court for the District of Columbia