## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
Harry Jakeyia Ashford                   )
*Street Sense*                          )
1317 G Street, N.W.                     )
Washington, DC 20005,                   )
                                        )
Kirk Douglas Greene                     )      **Civil Action No: 06cv1561**
Catholic Community Services             )      **(RJL/JMF)**
1355 New York Avenue, N.E.              )
Washington, DC 20002,                   )      Hon. Richard J. Leon
                                        )
Anthony Forte                           )      **JURY TRIAL DEMANDED**
801-East, St. Elizabeth's Hospital      )
2700 Martin Luther King Avenue, S.E.    )
Washington, DC 20018,                   )
                                        )
Hassan Gerald Shakur                    )
5857 Kara Place                         )
Burke, Virginia 22015,                  )
                                        )
Sandy Theodore Green                    )
Catholic Community Services             )
1355 New York Avenue, N.E.              )
Washington, DC 20002,                   )
                                        )
Donald Brooks                           )
5144 South Dakota Avenue, N.E.          )
Washington DC 20017,                    )
                                        )
individually and on behalf              )
of all others similarly situated,       )
                                        )
                  *Plaintiffs*,         )
                                        )
          v.                            )
                                        )
East Coast Express Eviction             )
29 U Street, N.W.                       )
Washington, D.C. 20001,                 )
                                        )

A 1 Eviction Services, Inc.              )
3708 Endicott Place                      )
Landover, MD 20785,                      )
                                         )
All American Eviction Company            )
1112 48th Street, N.E.                   )
Washington, D.C. 20019,                  )
                                         )
Butch Enterprises, Inc.                  )
10332 Main Street                        )
Fairfax, VA 22030,                       )

Platinum Realtor Services, Inc.          )
5204 Belgreen Street                     )
Suitland, MD 20746,                      )
                                         )
Crawford & Crawford                      )
200 55th Street, N.E.                    )
Washington, D.C. 20019,                  )
                                         )
Caroline Lanford                         )
1112 48th St. N.E.                       )
Washington, D.C.  20019,                 )
                                         )
Tanya Smith                              )
3708 Endicott Place                      )
Landover, MD 20785,                      )
                                         )
Nelson Terry                             )
27 U Street, N.W.                        )
Washington, D.C. 20001,                  )
                                         )
Irwin Staten                             )
10332 Main Street                        )
Fairfax, VA 22030,                       )
                                         )
Choya Lord Rodriguez                     )
5204 Belgreen Street                     )
Suitland, MD 20746,                      )
                                         )
Vincent Crawford                         )
200 55th Street N.E.                     )
Washington, D.C. 20019,                  )
                                         )
                    *Defendants.*        )
_____)

**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF
FEDERAL, DISTRICT OF COLUMBIA AND MARYLAND MINIMUM WAGE LAWS,
VIOLATIONS OF FEDERAL, D.C. AND MARYLAND ANTITRUST LAWS AND
EQUITABLE RELIEF AND DEMAND FOR A JURY TRIAL**

1. Plaintiffs Harry Jakeyia "Jake" Ashford, Kirk Douglas Greene, Anthony Forte,

Hassan Gerald Shakur, Sandy Theodore Green, and Donald Brooks (collectively "Plaintiffs"),

homeless and formerly homeless employees in the District of Columbia ("D.C.") and Virginia,

bring this action on behalf of themselves and other similarly situated employees to recover

damages from East Coast Express Eviction, A 1 Eviction Services, All American Eviction

Company, Butch Enterprises, Inc., Platinum Realtor Services, Inc., Crawford & Crawford,

Caroline Lanford, Tanya Smith, Nelson Terry, Irwin Staten, Choya Lord Rodriguez and Vincent

Crawford (each a "Defendant," collectively "Defendants") for their failure to pay minimum

wages as required by federal, D.C. and Maryland law, for their antitrust conspiracy to suppress

wages below legal levels, for unjust enrichment and for restitution in *quantum meruit*.

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331

and 1337, and by the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

3. This Court has jurisdiction over Defendants because Defendants have significant

business contacts in the District of Columbia, including performing tenant evictions within the

District.

4. The interstate commerce described in this Complaint is carried on, in part, within this

District.  Venue is proper in this District pursuant to the provisions of 28 U.S.C. § 1391 and 15

U.S.C. § 22.  This court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4

## PARTIES

5.   Plaintiff Harry Jakeyia "Jake" Ashford is a homeless person who resides in the District of Columbia and can most recently be found at *Street Sense*, 1317 G Street, N.W., in the District of Columbia.  He has performed evictions in the District of Columbia for sub-minimum wages as an employee of one or more of the Defendants.

6.   Plaintiff Kirk Douglas Greene is a homeless person who resides in the District of Columbia and can most recently be found at the Catholic Community Services shelter at 1355 New York Avenue, N.E., in the District of Columbia.  He has performed evictions in the District of Columbia and Maryland for sub-minimum wages as an employee of one or more of the Defendants.

7.   Plaintiff Anthony Forte is a homeless person who resides in the District of Columbia and can most recently be found at the shelter at 801-East, St. Elizabeth's Hospital, 2700 Martin Luther King Avenue, S.E., in the District of Columbia.  He has performed evictions in the District of Columbia and Maryland for sub-minimum wages as an employee of one or more of the Defendants.

8.   Plaintiff Hassan Gerald Shakur is a homeless person who resides in Virginia and can most recently be found at the home of his sister at 5857 Kara Place, Burke, Virginia.   He has performed evictions in the District of Columbia and Maryland for sub-minimum wages as an employee of one or more of the Defendants.

9.   Plaintiff Sandy Theodore Green is a homeless person who resides in the District of Columbia and can most recently be found at the Catholic Community Services shelter at 1355 New York Avenue, N.E., in the District of Columbia.  He has performed evictions in the District

of Columbia and Maryland for sub-minimum wages as an employee of one or more of the Defendants.

10. Plaintiff Donald Brooks was formerly homeless.  He now resides in the District of Columbia at 5144 South Dakota Avenue, N.E., in the District of Columbia.  He has performed evictions in the District of Columbia and Maryland for sub-minimum wages as an employee of one or more of the Defendants.

11. Defendant East Coast Express Eviction is an unincorporated eviction services company.  Its business address is 29 U Street, N.W., Washington, District of Columbia, and its principal place of business is Washington, D.C.  East Coast Express Eviction performs eviction work for customers throughout D.C. and Prince George's County, Maryland (the "D.C. Metro Area").

12. Defendant Nelson Terry is a proprietor of East Coast Express Eviction.  Mr. Nelson Terry is directly responsible for all of East Coast Eviction's acts, policies and liabilities.

13. Defendant A 1 Eviction Services, Inc., is a Maryland corporation that removes evicted tenants' possessions from commercial and residential premises.  Its business address is P.O. Box 4441, Upper Marlboro, Maryland, and its principal place of business is Upper Marlboro, MD.  Its street address is 3708 Endicott Place, Springdale, Maryland.  It performs eviction work for customers throughout the D.C. Metro Area.

14. Defendant Tanya Smith is the proprietor of A 1 Eviction Services, Inc.  Ms. Smith is directly responsible for all of A 1 Eviction Services, Inc.'s acts, policies and liabilities.

15. Defendant All American Eviction Company is an unincorporated, self-described licensed, bonded, and insured eviction company that performs residential and commercial eviction services.  Its business address is 1112 48th Street, NE, Washington, District of

Columbia, and its principal place of business is Washington, D.C.  It performs eviction work for customers throughout the D.C. Metro Area.

16. Defendant Caroline Lanford is the proprietor of All American Eviction Company. Ms. Lanford is directly responsible for all of All American Eviction Company's acts, policies and liabilities.

17. Defendant Butch Enterprises, Inc., is an eviction services company located at 10332 Main Street, Fairfax, Virginia.  Butch Enterprises, Inc.'s principal place of business is Fairfax, Virginia and it is incorporated in the state of Virginia.  It performs eviction work for customers throughout the D.C. Metro Area.

18. Defendant Irwin Staten is the majority shareholder of Butch Enterprises, Inc.  Mr. Staten completely controls Butch Enterprises, Inc., and is therefore directly responsible for all of its acts, policies and liabilities.

19. Defendant Platinum Realtor Services, Inc. is an eviction services company located at 5204 Belgreen Street, Suitland, Maryland.  Platinum Realtor Services, Inc.'s principal place of business is Suitland, Maryland and it is incorporated in the state of Maryland.  It performs eviction work for customers throughout the D.C. Metro Area.

20. Defendant Choya Lord Rodriguez is the proprietor of Platinum Realtor Services, Inc.  Choya Lord Rodriguez completely controls Platinum Realtor Services, Inc., and is therefore directly responsible for all of its acts, policies and liabilities.

21. Defendant Crawford & Crawford is an eviction services company located at 200 55th Street, N.E., in the District of Columbia.  Its principal place of business is in Washington D.C. and it performs eviction work for customers throughout the D.C. Metro Area.

22.  Defendant Vincent Crawford is the proprietor of Crawford & Crawford.  Mr.

Crawford is directly responsible for all of the company's acts, policies and liabilities.

## CLASS ACTION ALLEGATIONS

23. Plaintiffs Kirk Greene, Anthony Forte, Hassan Shakur, Sandy Green, and Donald

Brooks (the "Class Representatives") bring this action on their own behalf and as a class action

under the provisions of Rule 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of

all members of the following class:

> All persons (homeless or otherwise) employed by one or more
> Defendants to perform eviction services and paid a sub-minimum
> wage (the "Class") at any time from September 5, 2002 to the
> present (the "Class Period").

24. The Class is divisible into subclasses, based on the jurisdiction in which and the time

when Class members performed work for Defendants.  Many Class members will belong to

multiple subclasses.  Regardless of the subclass or subclasses to which a Class member may

belong, each Class member incurred an injury because of Defendants' actions described herein.

The subclasses are as follows:

> a.  The "2003-2004 D.C. Subclass"
>
> All members of the Class who performed eviction services at any
> time from September 5, 2003 to December 31, 2004, inclusive, for
> at least one day on which they spent the majority of their day's
> work working in the District of Columbia.
>
> b.  The "2005 D.C. Subclass"
>
> All members of the Class who performed eviction services at any
> time from January 1, 2005 to December 31, 2005, inclusive, for at
> least one day on which they spent the majority of their day's work
> working in the District of Columbia.

8

c.   The "2006 D.C. Subclass"

All members of the Class who performed eviction services at any time from January 1, 2006 to the present, inclusive, for at least one day on which they spent the majority of their day's work working in the District of Columbia.

d.   The "Pre-February 2006 Maryland Subclass"

All members of the Class who performed eviction services at any time from September 5, 2003 to February 15, 2006, inclusive, for at least one day on which they spent the majority of their day's work working in Prince George's County, Maryland.

e.   The "Post-February 2006 Maryland Subclass"

All members of the Class who performed eviction services at any time from February 16, 2006 to the present, inclusive, for at least one day on which they spent the majority of their day's work working in Prince George's County, Maryland.

f.   The "Pre-July 2007 Federal Subclass"

All members of the Class who performed eviction services at any time from September 5, 2003 to July 23, 2007, inclusive.

g.   The "Post-July 2007 Federal Subclass"

All members of the Class who performed eviction services at any time from July 24, 2007 to the present, inclusive.

The 2003-2004 D.C. Subclass, the 2005 D.C. Subclass and the 2006 D.C. Subclass are referred to collectively as the "D.C. Subclasses."  The Pre-February 2006 Maryland Subclass and the Post-February 2006 Maryland Subclass are referred to collectively as the "Maryland Subclasses."  The Pre-July 2007 Federal Subclass and the Post-July, 2007 Federal Subclass are referred to collectively as the "Federal Subclasses."  The Federal Subclasses, the D.C. Subclasses and the Maryland Subclasses are referred to collectively as the "Minimum Wage Subclasses."

25. Plaintiffs do not know the exact size of the Class and cannot determine it without appropriate discovery, but the membership is so numerous that joinder of all members is impracticable.  Defendants have likely hired hundreds, if not thousands, of homeless persons and others as employees to perform eviction services at sub-minimum wages during the Class Period.

26. The Class Representatives' claims are typical of the claims of other Class members because the Class Representatives have performed the same types of eviction services for the same group of Defendants and at the same sub-minimum wages as other members of the Class.

27. Except as to the amount of damages each member of the Class has individually sustained, all other questions of law and fact are common to the Class, including, but not limited to:

    a.   What wage Defendants pay Class members to perform evictions services;

    b.   Whether Defendants have identical wage policies;

    c.   Whether there is an agreement among Defendants on wages paid to Class members;

    d.   Whether Defendants have violated and continue to violate the District of Columbia Minimum Wage Statute;

    e.   Whether Defendants have violated and continue to violate the Fair Labor Standards Act;

    f.   Whether Defendants have violated and continue to violate the Maryland Wage and Hour Law;

    g.   Whether Defendants conspired in violation of Section 1 of the Sherman Act;

    h.   Whether Defendants unjustly enriched themselves at Class members' expense;

    i.   Whether Plaintiffs and members of the Class are entitled to damages;

    j.   Whether Plaintiffs and members of the Class are entitled to attorney's fees;

k.  Whether Plaintiffs and members of the Class are entitled to equitable and injunctive relief.

28. The Class Representatives are members of the Class, and the Class Representatives will fairly and adequately protect the interests of the Class.  The Class Representatives are typical of persons who have performed evictions for Defendants in the D.C. Metro Area, and their interests are coincident with and not antagonistic to those of the other members of the Class.  In addition, the Class Representatives have retained competent counsel experienced in class action litigation.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual prosecution of claims by members of the Class risks inconsistent or varying adjudications.  Class treatment will permit the adjudication of relatively small claims by many Class members who could not afford to litigate such claims against Defendants individually, especially considering the fact that most Class members are homeless or formerly homeless.  There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient group-wide adjudication of this controversy.

## FACTS

The D.C. Metro Area Evictions Industry

30. During the Class Period, over 10,000 evictions were ordered by the courts in the District of Columbia.

31.  In Prince George's County, Maryland, an average of approximately 3,400 evictions are ordered each year.

32. Altogether, over 20,000 evictions were ordered throughout the D.C. Metro Area during the Class Period.

33. The District of Columbia and Prince George's County require landlords to provide labor to remove tenants' possessions pursuant to a court-ordered eviction.

34. The United States Marshals Service, which oversees the performance of evictions in D.C., requires a minimum number of eviction workers, ranging from ten eviction workers for the eviction of a one bedroom apartment to twenty-five eviction workers for the eviction of a house. Similar policies exist in other jurisdictions in the D.C. Metro Area.

35. Landlords, as well as realtors acting on behalf of landlords, hire Defendants to remove evicted tenants' possessions. According to the price sheet available on Defendant All American Eviction's website, its eviction services range in cost from $165 for a one bedroom apartment to $450 for a townhouse.

36. Together, Defendants perform a majority of the privately contracted evictions in the D.C. Metro Area.

37. Defendants do not maintain standing teams of employees to perform evictions. Instead, they hire homeless persons and other day laborers, including Plaintiffs, to perform evictions on a per job basis.

Defendants Hire Primarily Homeless Workers To Perform Evictions

38. Defendants' recruit employees for eviction services by parking vans or trucks near homeless shelters or other organizations that provide services to the homeless and solicit persons to work. Often, these efforts are timed to coincide with the end of the service providers' breakfast service.

39. Facilities where Defendants solicit workers include So Others Might Eat ("SOME"), a community organization that seeks to help the poor and homeless in the District of Columbia,

located at 71 O Street, NW, Washington, D.C., and Community for Creative Non-Violence ("CCNV"), a homeless shelter located at 425 2nd Street, NW, Washington, D.C.  Defendants also gather workers at known pick-up points throughout D.C., including the Zacchaeus Community Kitchen at 10th and G Streets, NW, Washington, D.C., and a location at the corner of 5th Street and New York Avenue, NW, Washington D.C., referred to by the homeless as "Eviction Park."  On a typical morning, between three and ten vans or trucks owned or controlled by the Defendants, each capable of holding approximately fifteen employees, are parked near SOME for the purpose of collecting employees to perform evictions.

40. When hiring employees, Defendants typically conceal and do not disclose their business identity to the employees.  In some instances, in order to circumvent homeless shelter rules forbidding eviction companies from soliciting workers on their premises, Defendants affirmatively misrepresent their identities and the nature of their business.

41. Defendants communicate with one another at these locations as they wait for workers. Information exchanged through these communications includes information about future business and information about workers.  On information and belief, Defendants have exchanged information about the wages they pay for eviction services.

42. Defendants' vans and trucks collect their predominantly homeless employees and transport them to eviction sites in the D.C. Metro Area.  Defendants require that the employees travel in Defendants' vehicles, and such travel is an integral part of the employees' work activities.  Riding in Defendants' vehicles is necessary to ensure that the employees arrive at work locations that are not announced in advance and for Defendants to know whether they have adequate labor for the day's evictions.  In the event there are too many employees for a particular eviction, those not actually performing the eviction are required to wait inside the vehicles.

Requiring the employees to travel in Defendants' vehicles directly benefits Defendants, and from the time they are picked up until the time they are dropped off, the employees are not able to leave the vehicle or make personal stops and are obliged to wait should the driver have personal tasks to perform.

43. Defendants use these crews of predominantly homeless employees to perform one or more evictions each day.  An eviction requires removing all of the tenant's belongings from the residence and placing them on the curb.

44. On average, it takes approximately one hour to complete an eviction, not including travel time to or from the site.  Employees are frequently required to wait on-site before an eviction begins, and after an eviction is completed employees are frequently required to wait to learn whether they will be assigned to another eviction that day.

45. A typical work day for an eviction employee includes time spent in transit between eviction sites, waiting for the next eviction assignment, and awaiting payment from a Defendant.

46. Each day, some or all of the evictions scheduled may not take place.  Evictions are cancelled for a variety of reasons, such as payment by a tenant of the delinquent rent at the last minute, discovery upon arrival to an eviction cite that there is no furniture to remove, or the unavailability of the U.S. Marshals Service or other relevant authority to oversee the eviction, among other reasons.  If an eviction is canceled, even when an employee waits for hours at a Defendant's request (and typically in a Defendant's van or truck) to perform that eviction, the Defendant does not pay the employee.

The Wage Defendants Pay To Class Members Is Below The Minimum Wage

47. From January 1, 2006 to the end of the Class Period, the minimum wage in D.C. was and is $7.00 per hour.  Additionally, under D.C. regulations effective throughout the Class Period, an employer must pay an employee for a minimum of four hours of work each day. Accordingly, the minimum wage in D.C. from January 1, 2006 to the end of the Class Period was and is also $28.00 per day.

48. From January 1, 2005 to December 31, 2005, the minimum wage in D.C. was $6.60 per hour.  Additionally, under D.C. regulations effective throughout the Class Period, an employer must pay an employee for a minimum of four hours of work each day.  Accordingly, the minimum wage in D.C. from January 1, 2005 to December 31, 2005 was also $26.40 per day.

49. From the beginning of the Class Period to December 31, 2004, the minimum wage in D.C. was $6.15 per hour.  Additionally, under D.C. regulations effective throughout the Class Period, an employer must pay an employee for a minimum of four hours of work each day. Accordingly, the minimum wage in D.C. from the beginning of the Class Period to December 31, 2004 was also $24.60 per day.

50. From July 24, 2007 to the end of the Class Period, the minimum wage mandated by Federal law was and is $5.85 per hour.

51. From the beginning of the Class Period to July 23, 2007, the minimum wage mandated by Federal law was $5.15 per hour.

52. From February 16, 2006 to the end of the Class Period, the minimum wage in Maryland was and is $6.15 per hour.

53. From the beginning of the Class Period to February 15, 2006, the minimum wage in Maryland was $5.15 per hour.

54. The minimum wage in each jurisdiction is applicable to employees hired to perform eviction services.

55. The Defendants engage the Plaintiffs and other Class members to perform evictions for them.  Accordingly, Plaintiffs and the Class members are employees of the Defendants.

56. The Defendants typically pay employees (exclusive of Defendants' permanent staffs) $5.00 for each eviction they perform.  This payment does not vary with time spent on the eviction and does not account for travel time.  This wage has been standard throughout the Class Period.  If an eviction is cancelled, the employees receive no compensation, even when they have traveled to the eviction site or spent time waiting at the site at the Defendant's request.  In isolated instances, Defendants may pay a higher wage for eviction of larger dwellings, but such higher payments are infrequent and do not account for time spent waiting on-site for an eviction or traveling with a Defendant to or from the eviction site.  Such occasionally higher payments do not elevate workers' wages above the minimum wage.

57. On information and belief, the Defendants each maintain payroll records required by the applicable minimum wage law.  These records reflect, among other information, every employees' name, rate of pay, hours worked and total wages paid in a pay period.

58. On information and belief, the Defendants each maintain records regarding wage payments to employees required by federal, state and D.C. tax law.  These records reflect, among other information, every employee's name and total wages paid.


Named Plaintiffs Have Each Received Wages Below the Minimum Wage For Evictions Work

59. Plaintiff Jake Ashford has performed evictions for Defendants All American Eviction and East Coast Express Eviction in the past two years.

60. Mr. Ashford performed his last eviction in April 2006.  Mr. Ashford was picked up outside of SOME at approximately 8:30 a.m. and driven to the eviction site in Southeast Washington, D.C.  He worked for forty-five minutes to complete the eviction.  Including transit time between sites and awaiting payment, Mr. Ashford spent a total of two hours and thirty minutes in the eviction company's service.

61. The Defendant paid Mr. Ashford $5.00 for the entire day's labor, or $2 per hour. This wage is less than the D.C. minimum wage of $28 per day and $7 per hour.  It is also less than the federal minimum wage of $5.15 per hour, which was in effect at the time.  For previous evictions completed in the past two years, Mr. Ashford was paid $5.00 for each eviction.

62. Plaintiff Kirk Greene has performed approximately 50 evictions in the past two years.

63. As an example, Mr. Greene performed three evictions on August 1, 2006.  The Defendant who hired him did not identify itself, but the Defendant's employee who drove the van that picked up Mr. Greene and other homeless employees is known by the pseudonym "Fats."  The Defendant picked up Mr. Greene and the other homeless workers outside of SOME at approximately 8:30 or 9:00 a.m. and drove them to an eviction site near Central Avenue (Route 214) and Watkins Park Drive (Route 193) in Prince George's County, Maryland.  This eviction was of a residence with at least four bedrooms.  Mr. Greene worked for approximately two hours on this eviction.  After completing this eviction, the Defendant dropped off three or four persons at SOME, and Mr. Greene (as well as the remaining employees) proceeded to a second eviction site at 8th Street and Taylor, Northwest in D.C.  This eviction took about one hour to complete.  Mr. Green and the others were then taken to perform a third eviction at 16th Street and Meridian Place, Northwest, in D.C.  This eviction took less than one hour to complete.

64. Including transit time between sites and awaiting payment, Mr. Greene spent a total of six hours employed by the unidentified Defendant on August 1, 2006. The Defendant paid Mr. Greene $15.00 for the entire day's labor, or $2.50 per hour. This wage is less than the D.C. minimum wage of $28 per day and $7 per hour. It is also less than the federal minimum wage of $5.15 per hour, which was in effect at the time. It is also less than the Maryland minimum wage of $6.15 per hour. For previous evictions completed in the past two years, Mr. Greene was also paid $5.00 per eviction. Mr. Greene continues to perform evictions for $5.00 per eviction.

65. Plaintiff Anthony Forte has performed approximately 100 evictions in the past two years.

66. As an example, Mr. Forte performed evictions on August 4, 2006. Defendant East Coast Express Eviction picked up Mr. Forte at approximately 10:30 a.m. The eviction took place within the District of Columbia. Mr. Forte performed one eviction that day, which took him about forty-five minutes to complete.

67. Including transit time between sites and awaiting payment, Mr. Forte spent a total of three hours in Defendant East Coast Express Evictions's service. Defendant East Coast Express Evictions paid Mr. Forte $5.00 for the entire day's labor or $1.67 per hour. This wage is less than the D.C. minimum wage of $28 per day and $7 per hour. It is also less than the federal minimum wage of $5.15 per hour, which was in effect at the time. For previous evictions completed in the past two years, Mr. Forte was paid $5.00 for each eviction. Mr. Forte continues to perform evictions for $5.00 per eviction.

68. Plaintiff Hassan Shakur has performed approximately 1,000 evictions in the past four years.

69. As an example, Mr. Shakur performed seven evictions on November 3, 2006.  Mr. Shakur and other homeless employees were picked up by a driver known as "Gloria" near the corner of P and North Capitol Streets, N.W., a regular pick-up point near SOME, at approximately 8:00 a.m.  All seven evictions took place at locations within the District of Columbia.  The first took place at a site on Riggs Road in Northwest Washington, the second was at a site near Benning Road and 18th Street in Northeast Washington, and the remaining five evictions in the same apartment complex on Maryland Avenue.  The evictions took about five hours to complete.

70.  Including transit time between sites, sitting in the truck and awaiting payment, Mr. Shakur spent a total of seven hours and fifteen minutes in the service of the eviction company.  On November 3, 2006, he was paid $35 for the entire day's labor, or $5.00 per hour.  This wage is less than the D.C. minimum wage of $7.00 per hour.  It is also less than the federal minimum wage of $5.15 per hour, which was in effect at the time.  For previous evictions completed in the past four years, Mr. Shakur was paid $5.00 for each eviction.  Mr. Shakur continues to perform evictions for $5.00 per eviction.

71. Plaintiff Sandy Green has performed approximately 100 evictions in the past two years.

72. As an example, Mr. Green performed three evictions on a date on or about October 3, 2006.  Defendant East Coast Express Evictions picked up Mr. Green and other homeless employees at the corner of North Capitol Street and Florida Avenue at approximately 8:30 a.m.  The evictions took place in southwest Washington D.C.

73. Including transit time between sites and awaiting payment, Mr. Green spent a total of four hours in Defendant East Coast Express Evictions's service.  East Coast Express Evictions

paid Mr. Green $15.00 for the entire day's labor or $3.75 per hour.  This wage is less than the
D.C. minimum wage of $28 per day and $7 per hour.  It is also less than the federal minimum
wage of $5.15 per hour, which was in effect at the time.  For previous evictions completed in the
past two years, Mr. Green was paid $5.00 for each eviction.  Mr. Green continues to perform
evictions today for $5.00 per eviction.

74. Plaintiff Donald Brooks performed over 20 evictions in the two years between
September 5, 2002 and September 5, 2004.

75. On each day that he performed evictions, Mr. Brooks and other homeless employees
were picked up at one of several locations near shelters and other community facilities that assist
the homeless and are known to the eviction companies as places where the homeless congregate.
These include pick-up points near SOME and at the Franklin and CCNV homeless shelters.  Mr.
Brooks was typically picked up between 7:30 and 8:30 a.m. and worked on evictions until he
was dropped off by the eviction company between 1:00 and 3:00 p.m.

76. Including transit time between sites, sitting in the truck and awaiting payment, Mr.
Brooks spent a total of at least five hours on each occasion in the service of the eviction
company, and worked on an average of two evictions per day.  He was paid $5.00 per eviction
for an apartment, no matter the size of the apartment, and received $10.00 per house.  These
wages are less than the D.C. minimum wage, which at the time of the evictions performed by
Mr. Brooks, was $6.15 per hour or $24.60 per day.  It is also less than both the federal and the
Maryland minimum wage, which at the time of the evictions performed by Mr. Brooks, were
both $5.15 per hour.

<u>The Defendants Injured The Class By Paying Wages Below The Minimum Wage</u>

77. Each Plaintiff and Class member has been injured to the extent that each Defendant failed to pay the minimum wage for work performed at that Defendant's request.  This injury was caused by each Defendant's failure to pay Plaintiffs and Class members the minimum wage required by law.

78. Defendants each paid wages that were less than that mandated by the minimum wage laws.  Defendants each continue to pay wages that are less than that mandated by the minimum wage laws.

79. That each Defendant individually paid wages at a standard rate of $5.00 per eviction could have occurred only in the context of an illegal agreement among Defendants to fix wages below the legal minimum wage.  Defendants' parallel behavior of setting wages for their eviction workers below legal minimum wage was against each Defendant's independent economic interest, because (among other reasons) such an illegal act risks severe repercussions, including criminal liability and civil liability for double damages.  Absent such an agreement, the risk of liability and market pressures would have caused Defendants to raise wages to at least the legally required minimum wage and enticed Defendants to disclose the violations of those Defendants seeking a competitive advantage by paying below legal wages.

80. But for the Defendants' agreement to suppress wages, wages to perform evictions for employees like Plaintiffs and Class members would have risen at least to the level of the legal minimum wage.  Accordingly, Defendants' agreement injured Plaintiffs and Class members in the form of foregone wages.

**COUNT I**

**VIOLATION OF DISTRICT OF COLUMBIA MINIMUM WAGE STATUTE**
**D.C. Code § 32-1001 *et seq.***

81. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

82. Defendants paid and continue to pay wages to Plaintiffs and Class members that were and are below minimum wage in violation of the D.C. Minimum Wage Statute, D.C. Code § 32-1001 *et seq.* and D.C. Mun. Regs. tit. 7, § 907.

83. Each Plaintiff and each member of the D.C. Subclasses spent over half of his or her working time in the District of Columbia.

84. Defendants employed Plaintiffs and members of the D.C. Subclasses when Defendants solicited Plaintiffs and members of the D.C. Subclasses to perform eviction services and Plaintiffs and members of the D.C. Subclasses accepted their offers.

85. Plaintiffs and members of the D.C. Subclasses performed work for Defendants for which they are entitled to compensation at a rate not less than the lawful minimum wage of $7.00 per hour and $28.00 per day or the D.C. minimum wage applicable at the time the work was performed.  Defendants' violations of the D.C. Minimum Wage Statute and its implementing regulations directly resulted in Plaintiffs' damages.  Plaintiffs and members of the D.C. Subclasses are entitled to their unpaid wages, liquidated damages, attorney's fees and costs. D.C. Code § 32-1012.

86. Defendants' violations of the D.C. Minimum Wage Statute are ongoing and will likely continue into the future.

**COUNT II**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *et seq.***

87. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

88. Defendants paid wages to Plaintiffs and members of the Minimum Wage Subclasses that were below the minimum wage mandated by the Fair Labor Standards Act, 29 U.S.C. § 206 (the "FLSA").

89. Each Plaintiff and each Minimum Wage Subclasses member has been employed by a Defendant engaged in commerce.  Defendants recruit homeless employees and other employees within the District of Columbia and often transport them to Maryland or Virginia to perform evictions.

90. On information and belief, each Defendant's annual gross volume of sales or business done is not less than $500,000.

91. Plaintiffs and members of the Minimum Wage Year Subclasses have performed work for Defendants for which they are entitled to compensation at a rate not less than the lawful federal minimum wage of $5.85 per hour or the Federal minimum wage applicable at the time the work was performed.

92. Defendants' failure to pay Plaintiffs and members of the Minimum Wage Subclasses at least minimum wage of $5.15 per hour prior to July 24, 2007 and $5.85 thereafter violates the FLSA.  Defendants' violation of the FLSA directly caused Plaintiffs' and Class members' injuries. Plaintiffs and members of the Minimum Wage Subclasses are entitled to their unpaid wages, liquidated damages, attorney's fees and costs.  29 U.S.C. § 216.

93. Defendants' violations of the FLSA are ongoing and will likely continue into the future.

### COUNT III
### VIOLATION OF MARYLAND WAGE AND HOUR LAW
### MD Code Ann., Lab. & Empl. § 3-401 *et seq.*

94. Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

95. Defendants paid wages to Plaintiffs and members of the Maryland Subclasses that were below the minimum wage mandated by the Maryland Wage and Hour Law, MD Code Ann., Lab. & Empl. § 3-413.

96. Defendants employed Plaintiffs and members of the Maryland Subclasses when Defendants actively solicited Plaintiffs and members of the Maryland Subclasses to perform eviction services and allowed Plaintiffs and members of the Maryland Subclasses to conduct the requested labor.

97. Plaintiffs and members of the Maryland Subclasses have performed work for Defendants for which they are entitled to compensation at a rate not less than the lawful Maryland minimum wage of $6.15 per hour or the Maryland minimum wage applicable at the time the work was performed.

98. Defendants' failure to pay Plaintiffs and members of the Maryland Subclasses at least minimum wage violates the Maryland Wage and Hour Law.  Defendants' violation of the Maryland Wage and Hour Law directly caused Plaintiffs' and the members' of the Maryland Subclasses injuries.  Plaintiffs and members of the Maryland Subclasses are entitled to their unpaid wages, attorney's fees and costs.  MD Code Ann., Lab. & Empl. § 3-427.

99. Defendants' violations of the Maryland Wage and Hour Law are ongoing and will likely continue into the future.

## <u>COUNT IV</u>
**FOR INJUNCTIVE RELIEF UNDER SECTION 16 OF THE CLAYTON ACT FOR VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**

100.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

101.     Defendants have engaged in a continuing combination, agreement, understanding, or conspiracy among themselves, the purpose and effect of which was to pay homeless employees and other employees a sub-minimum wage for labor performed.  Defendants' unlawful combination, agreement, understanding, or conspiracy to fix, suppress, stabilize or maintain at illegal, artificially low and non-competitive levels the wages of homeless employees and other employees who provide eviction services within the D.C. Metro Area is a restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

102.     To achieve and facilitate this combination, agreement, course of conduct, understanding, or conspiracy, Defendants communicated and exchanged information relating to future evictions and current and future employees.  On information and belief, Defendants exchanged information about the wages they pay for eviction services.

103.     Defendants' parallel behavior of paying the same unlawful sub-minimum wage is inconsistent with independent competitive conduct.

104.     These violations are continuing and will continue unless enjoined by this Court.

105.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs and the Class seek the issuance of an injunction prohibiting Defendants' continued illegal course of conduct, prohibiting adherence to the unlawful agreements alleged herein, and prohibiting Defendants from paying wages below the applicable minimum wage.

## **COUNT V**
**FOR DAMAGES UNDER SECTION 4 OF THE CLAYTON ACT FOR VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1**

106.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

107.    Defendants have engaged in a continuing combination, agreement, course of conduct, understanding, or conspiracy among themselves, the purpose and effect of which was to pay homeless employees and other employees a sub-minimum wage for labor performed. Defendants' unlawful combination, agreement, course of conduct, understanding, or conspiracy to fix, suppress, stabilize or maintain at illegal, artificially low and non-competitive levels the wages of homeless employees and other employees who provide eviction services within the D.C. Metro Area is a restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

108.    To achieve and facilitate this combination, agreement, course of conduct, understanding, or conspiracy, Defendants communicated and exchanged information relating to future evictions and current and future employees.  On information and belief, Defendants' exchanges of information facilitated their ability to suppress the wages they pay for eviction services.  Defendants' violation is willful and flagrant.

109.    Defendants' parallel behavior of paying the same unlawful sub-minimum wage is inconsistent with independent competitive conduct.

110.    By reason of the antitrust violations alleged herein, Plaintiffs and Class members were injured in their business and property within the meaning of Section 4 of the Clayton Act, 15 U.S.C. § 15.  Their injury consists of receiving wages below the legal minimum wage. Plaintiffs and Class members are entitled to their treble damages, prejudgment interest, attorney's fees and costs.  *Id.*  This is the type of injury the antitrust laws were designed to prevent and flows from Defendants' unlawful conduct.

## COUNT VI
## VIOLATION OF THE D.C. ANTITRUST ACT
### D.C. Code § 28-4501 *et seq.*

111.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

112.    Defendants have engaged in a continuing combination, agreement, course of conduct, understanding, or conspiracy among themselves, the purpose and effect of which was to pay homeless employees and other employees a sub-minimum wage for labor performed. Defendants' unlawful combination, agreement, course of conduct, understanding, or conspiracy to fix, suppress, stabilize or maintain at illegal, artificially low and non-competitive levels the wages of homeless employees and other employees who provide eviction services within the D.C. Metro Area is a restraint of trade in violation of Section 1 of the D.C. Antitrust Act, D.C. Code § 28-4502.

113.    To achieve and facilitate this combination, agreement, course of conduct, understanding, or conspiracy, Defendants communicated and exchanged information relating to future evictions and current and future employees.  On information and belief, Defendants exchanged information about the wages they pay for eviction services.  Defendants' violation is willful and flagrant.

114.    Defendants' parallel behavior of paying the same unlawful sub-minimum wage is inconsistent with independent competitive conduct.

115.    By reason of the antitrust violations alleged herein, Plaintiffs and Class members were injured in their business and property within the meaning of D.C. Code § 28-4508.  Their injury consists of receiving wages below the legal minimum wage.  Plaintiffs and Class members are entitled to treble damages, prejudgment interest, attorney's fees and costs.  *Id.*

116.     Defendants' violations of the D.C. Antitrust Act are ongoing and will likely continue into the future.  Plaintiffs and Class members are entitled to injunctive relief preventing such violations.  D.C. Code § 28-4508.

## COUNT VII
## VIOLATION OF THE MARYLAND ANTITRUST ACT
### Md. Code Ann., Com. Law § 11-201 *et seq.*

117.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated herein.

118.     Defendants have engaged in a continuing combination, agreement, course of conduct, understanding, or conspiracy among themselves, the purpose and effect of which was to pay homeless employees and other employees a sub-minimum wage for labor performed. Defendants' unlawful combination, agreement, course of conduct, understanding, or conspiracy to fix, suppress, stabilize or maintain at illegal, artificially low and non-competitive levels the wages of homeless employees and other employees who provide eviction services within the D.C. Metro Area is a restraint of trade in violation of the Maryland Antitrust Act, Md. Code Ann., Com. Law § 11-204.

119.     To achieve and facilitate this combination, agreement, course of conduct, understanding, or conspiracy, Defendants communicated and exchanged information relating to future evictions and current and future employees.  On information and belief, Defendants exchanged information about the wages they pay for eviction services.  Defendants' violation is willful and flagrant.

120.     Defendants' parallel behavior of paying the same unlawful sub-minimum wage is inconsistent with independent competitive conduct.

121.     By reason of the antitrust violations alleged herein, Plaintiffs and Class members were injured in their business and property within the meaning of Md. Code Ann., Com. Law § 11-209(b).  Their injury consists of receiving wages below the legal minimum wage.  Plaintiffs and Class members are entitled to treble damages, attorney's fees and costs.  *Id.*

122.     Defendants' violations of the Maryland Antitrust Act are ongoing and will likely continue into the future.  Plaintiffs and Class members are entitled to injunctive relief preventing such violations.  Md. Code Ann., Com. Law § 11-209(b).

**COUNT VIII**
**UNJUST ENRICHMENT**

123.     Plaintiffs repeat and reallege the preceding paragraphs as though set forth herein.

124.     Defendants have benefited from their unlawful acts by forcing Plaintiffs and members of the Minimum Wage Subclasses to receive wages below the legal minimum wage. As a result of the sub-minimum wages received by Plaintiffs and the Minimum Wage Subclasses, it would be inequitable for Defendants to be permitted to retain the benefit of increased revenues and profits, which was conferred by Plaintiffs and retained by Defendants.

125.     Plaintiffs and members of the Minimum Wage Subclasses are entitled to the establishment of a constructive trust consisting of the benefit to Defendants as a result of their inequitable conduct from which Plaintiffs and the other members of the Minimum Wage Subclasses may make claims on a pro-rata basis for restitution.  Plaintiffs and members of the Minimum Wage Subclasses are also entitled to equitable injunctive relief to prevent the continuing, future harm of further unjust enrichment by Defendants.

**COUNT IX**
**QUANTUM MERUIT**

126.     Plaintiffs repeat and reallege the preceding paragraphs as though set forth herein.

127.    Defendants received valuable eviction services from Plaintiffs and members of the Minimum Wage Subclasses.  Defendants knowingly and willingly accepted such services from Plaintiffs and members of the Minimum Wage Subclasses, and Defendants received a benefit from the provision of such services.  Defendants knew or were reasonably notified that Plaintiffs and members of the Minimum Wage Subclasses expected to be paid for such services in accordance with the law.  Defendants failed to pay Plaintiffs and members of the Minimum Wage Subclasses for such services in accordance with the law.

128.    Plaintiffs and members of the Minimum Wage Subclasses are entitled to payment for the services they have rendered in reliance on the understanding that they would be paid in accordance with the law.  Plaintiffs and members of the Minimum Wage Subclasses are also entitled to equitable injunctive relief to prevent Defendants from continuing to pay wages in exchange for eviction services that are below the minimum wage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, request:

A.  That the Court: declare that this action may be maintained as a class action under Federal Rule of Civil Procedure 23; declare that the alleged sub-minimum wages paid to Plaintiffs and Class members violate the D.C. Minimum Wage Statute, the FLSA, and the Maryland Wage and Hour Law; declare that the alleged combination and conspiracy among Defendants be adjudged and decreed to be an unreasonable restraint of trade in violation of the Sherman Act, the D.C. Antitrust Act, and the Maryland Antitrust Act; declare that Defendants' payment of sub-minimum wages to Plaintiffs and the Class constitutes unjust enrichment; and declare the compensation

portion of Defendants' contract with Plaintiffs and the Class for sub-minimum wage employment to be void;

B.  That judgment be entered against Defendants and in favor of Plaintiffs and each member of the Class for economic damages and additional liquidated damages for violating the D.C. Minimum Wage Statute, the FLSA, and the Maryland Wage and Hour Law, and for accrued interest, and for costs of this suit, including attorney's fees;

C.  That the Court enter an order enjoining the Defendants from conducting unreasonable restraints of trade in the future under the Clayton Act, the D.C. Antitrust Act, and the Maryland Antitrust Act;

D.  That judgment be entered pursuant to the Clayton Act, the D.C. Antitrust Act, and the Maryland Antitrust Act, jointly and severally, and in favor of Plaintiffs and each member of the Class for threefold damages determined to have been sustained by them, together with accrued interest and the costs of suit, including reasonable attorneys' fees;

E.  That judgment be entered establishing a constructive trust funded by Defendants' ill-gotten gains, from which Plaintiffs and Class members may seek restitution on a *pro-rata* basis, with accrued interest;

F.  That the Court enter an order enjoining Defendants from unjustly enriching themselves in the future by paying Plaintiffs and Class members a wage below the applicable minimum wage;

G.  That judgment be entered against Defendants for restitution in *quantum meruit* for full payment of unpaid wages for each Plaintiff and member of the Class;

H.   That the Court enter an order enjoining Defendants from engaging in agreements
containing void, illegal compensation terms with Plaintiffs and members of the Class;
and

I.   That the Court order such other relief as it deems just and proper under the
circumstances.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b) and otherwise, Plaintiffs respectfully demand a trial by
jury for all issues so triable.

Respectfully submitted,

/s/ Lee F. Berger
Lee F. Berger (D.C. Bar # 482435)
Matthew D. Slater (D.C. Bar # 386986)
Larry C. Dembowski (D.C. Bar # 486331)
Matthew J. Berman (D.C. Bar # 489242)
Aaron M. Page (D.C. Bar # 974936)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
Facsimile:   (202) 974-1999
*Attorneys for Plaintiffs Kirk Greene, Anthony Forte,
Hassan Shakur, Sandy Green and Donald Brooks*

Date: October 3, 2007

32