## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

Harry Jakeyia Ashford, et al.,      )
                                      )     Civil Action No. 06-cv-1561 (RJL/JMF)

individually and on behalf      )
of all others similarly situated,      )     Hon. Richard J. Leon
                                        )     Hon. John M. Facciola

                *Plaintiffs*,      )
    v.      )
     )
East Coast Express Eviction, et al.,      )
     )
                *Defendants*.      )
_____)

### PLAINTIFFS' MOTION FOR DEFAULT AND ADVERSE INFERENCES ON DAMAGES AGAINST DEFENDANTS IRWIN STATEN AND BUTCH ENTERPRISES, INC.

Plaintiffs Kirk Greene, Anthony Forte, Hassan Shakur, Sandy Green, and Donald Brooks ("Plaintiffs") move for an order imposing sanctions against Defendants Irwin Staten and Butch Enterprises, Inc. (the "Butch Defendants") under Federal Rule of Civil Procedure 37(b)(2) and the Court's inherent authority for spoliation of evidence and failure to comply with court-ordered discovery.

Plaintiffs respectfully request that the Court issue a Report & Recommendation recommending the entry of default against the Butch Defendants. Plaintiffs further request that the Court issue an Order granting Plaintiffs all reasonable adverse inferences against the Butch Defendants on the issue of damages and precluding the Butch Defendants from arguing that Plaintiffs' damages calculation fails due to lack of evidence that the Butch Defendants should

have produced.  In support of this motion, Plaintiffs submit a Memorandum of Law, with

exhibits, establishing the motion's factual and legal bases.


Dated:  January 29, 2008                    Respectfully submitted,

                                            /s/ Larry C. Work-Dembowski
                                            Larry C. Work-Dembowski (D.C. Bar # 486331)
                                            Lee F. Berger (D.C. Bar # 482435)
                                            Matthew D. Slater (D.C. Bar # 386986)
                                            Cleary Gottlieb Steen & Hamilton LLP
                                            2000 Pennsylvania Avenue, N.W.
                                            Washington, D.C.  20006-1801
                                            Telephone:  (202) 974-1500
                                            Facsimile:  (202) 974-1999
                                            *Attorneys for Plaintiffs Kirk Greene, Anthony Forte,*
                                            *Hassan Shakur, Sandy Green, and Donald Brooks*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Harry Jakeyia Ashford, et al., | ) | Civil Action No. 06-cv-1561 (RJL/JMF) |
| individually and on behalf | ) | |
| of all others similarly situated, | ) | Hon. Richard J. Leon |
| | ) | Hon. John M. Facciola |
| *Plaintiffs*, | ) | |
| v. | ) | |
| | ) | |
| East Coast Express Eviction, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT
AND ADVERSE INFERENCES ON DAMAGES AGAINST DEFENDANTS IRWIN
STATEN AND BUTCH ENTERPRISES, INC.**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

    I.      The Butch Defendants Have Created Payroll Records and Work Requests
             Daily Since 1999 but Have Systematically Destroyed Those Documents ........... 2

          A.      The Butch Defendants Regularly Create Payroll Records and Work
                  Requests. ...................................................................................................... 2

          B.      The Butch Defendants Regularly Destroyed the Payroll Records
                  and Work Requests. ...................................................................................... 3

    II.     The Butch Defendants Continue to Ignore Their Discovery Obligations
             Even After the Court's October 15 Order ............................................................. 5

    III.    The Butch Defendants are Withholding Discovery That Mr. Staten
             Testified the Butch Defendants Still Possess ....................................................... 7

    IV.    The Butch Defendants Have Engaged in a Series of Dilatory Tactics That
             Have Prolonged the Discovery Period ................................................................. 9

ARGUMENT ..................................................................................................................... 10

    I.      Plaintiffs are Entitled to The Requested Sanctions Because the Butch
             Defendants Destroyed Payroll Records and Work Requests in Violation of
             Minimum Wage Statutes and Their Document Preservation Obligations ........... 10

          A.      The Butch Defendants Violated Their Document Preservation
                  Obligations Under the Minimum Wage Statutes. ...................................... 11

               1.      Federal and State Minimum Wage Laws Required the
                      Butch Defendants to Maintain Wage Records for Their
                      Employees. ................................................................................... 11

               2.      The Control the Butch Defendants Exert Over Eviction
                      Workers' Hours, Wages, and Labor Shows That the
                      Workers are Employees and Not Independent Contractors. ........ 12

          B.      The Butch Defendants Had a Duty to Preserve All Relevant
                  Evidence, Including the Payroll Records and Work Requests, Once
                  They Anticipated Litigation. ..................................................................... 15

          C.      Together, the Minimum Wage Statutes and the Butch Defendants'
                  Litigation Preservation Duty Result in a Duty to Preserve Payroll
                  Records and Work Requests Created as Early as July 2003 .................... 18

          D.      The Butch Defendants Must be Sanctioned for Their Destruction
                  of Relevant Evidence to Restore Balance to This Litigation. ................... 19

# TABLE OF CONTENTS
(continued)

**Page**

II.   Plaintiffs are Entitled to the Requested Sanctions Because the Butch
      Defendants Have Destroyed Documents Central to This Litigation,
      Otherwise Repeatedly Failed to Comply With the Court's Discovery
      Orders, and Engaged in Dilatory Tactics ............................................................ 20

      A.   It as Appropriate to Enter a Default Judgment Against the Butch
           Defendants. ............................................................................................... 21

      B.   It is Also Appropriate to Order All Reasonable Adverse Inferences
           Regarding Damages Against the Butch Defendants. ............................... 24

CONCLUSION ...................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946)...................................................................................... 11

*Arista Records, Inc. v. Sakfield Holding Co.*,
  314 F. Supp. 2d 27 (D.D.C. 2004)............................................................... 16

*Ashford v. East Coast Express Eviction*,
  245 F.R.D. 36 (D.D.C. 2007)..................................................................... 1, 5

*Bonds v. Dist. of Columbia*,
  93 F.3d 801 (D.C. Cir. 1996)...................................................................... 20

*Brennan v. Lauderdale Yacht Basin, Inc.*,
  493 F.2d 188 (5th Cir. 1974)...................................................................... 12

*Butera v. Dist. of Columbia*,
  235 F.3d 637 (D.C. Cir. 2001).................................................................... 25

*Caldwell v. Ctr for Corr. Health Policy & Studies, Inc.*,
  228 F.R.D. 40 (D.D.C. 2005)...................................................................... 20

*California Health & Welfare Agency*,
  704 F.2d 1465, 1470 (9th Cir. 1983) ......................................................... 13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)...................................................................................... 19

*Dovell v. Arundel Supply Corp.*,
  361 F.2d 543 (D.C. Cir. 1966) ................................................................... 13

*Goldberg v. Whitaker House Coop., Inc.*,
  366 U.S. 28 (1961)...................................................................................... 12

*Heath v. Perdue Farms*,
  87 F. Supp. 2d 452 (D. Md. 2000) ............................................................. 12

*Henthorn v. Dep't of Navy*,
  29 F.3d 682 (D.C. Cir. 1994)................................................................. 12-15

*Hill v. Republic of Iraq*,
  328 F.3d 680 (D.C. Cir. 2003).................................................................... 24

*IBP, Inc. v. Alvarez*,
  546 U.S. 21 (2005)...................................................................................... 11

*Indep. Petrochemical Corp. v. Aetna Cas. Sur. Co.*,
    654 F. Supp. 1334 (D.D.C. 1986) ........................................................................ 18

*Int'l Union v. NLRB*,
    459 F.2d 1329 (D.C. Cir. 1972) .......................................................................... 25

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998) ......................................................................... 16, 18

*Miller v. Holzmann*,
    No. 95-01231, 2007 WL 172327 (D.D.C. Jan. 17, 2007) ..................................... 15

*Morrison v. Int'l Programs Consortium*,
    253 F.3d 5 (D.C. Cir. 2001) .......................................................................... 12-13

*Nation-Wide Check Corp. v. Forest Hills Distrib.*,
    692 F.2d 214 (1st Cir. 1982) .............................................................................. 19

*Nike v. Top Brand Co.*,
    216 F.R.D. 259 (S.D.N.Y. 2003) .................................................................... 25-27

*Powell v. Am. Red Cross*,
    No. 06-1173, 2007 U.S. Dist. LEXIS 42542 (D.D.C. June 13, 2007) ................... 12

*Rainbolt v. Johnson*,
    669 F.2d 767 (D.C. Cir. 1981) .......................................................................... 13

*Rice v. United States*,
    917 F. Supp. 17 (D.D.C. 1996) .......................................................................... 25

*Roadway Exp., Inc. v. Piper*,
    447 U.S. 752 (1980) .......................................................................................... 20

*Schultz v. Capital Intern. Sec. Inc.*,
    466 F.3d 298 (4th Cir. 2006) ............................................................................. 13

*SEC v. Hollywood Trenz, Inc.*,
    202 F.R.D. 3 (D.D.C. 2001) ............................................................................... 20

*Shea v. Donohoe Constr. Co.*,
    795 F.2d 1071 (D.C. Cir. 1986) ......................................................................... 22

*Shepherd v. Am. Broad. Cos.*,
    62 F.3d 1469 (D.C. 1995) ............................................................................ 15, 21

*Silvestri v. Gen. Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) ............................................................................. 19

*Ward v. Atl. Coast Line R. Co.*,
    362 U.S. 396 (1960)................................................................... 12-13

*Webb v. Dist. of Columbia*,
    189 F.R.D. 180 (D.D.C. 1999)................................................................... 22

*Zhou v. Wang's Rest.*,
    No. C 05-0279 PVT, 2007 WL 134441 (N.D. Cal. 2007)................................... 11

*Zises v. Dep't of Soc. Serv.*,
    112 F.R.D. 223 (E.D.N.Y. 1986) ........................................................... 1


**State Cases**

*Jones & Assocs. v. Dist. of Columbia*,
    642 A.2d 130 (D.C. 1994) ................................................................... 12

*Schechter v. Merch. Home Delivery*,
    892 A.2d 415 (D.C. 2006) ................................................................... 12

*Whitehead v. Safeway Steel Prods., Inc.*,
    497 A.2d 803 (Md. 1985) ................................................................... 12


**Statutes, Rules, and Regulations**

29 U.S.C. § 203................................................................... 12

Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84 ........................... 11

29 C.F.R. § 516.2................................................................... 11

29 C.F.R. § 516.6-5................................................................... 11

29 U.S.C. § 211................................................................... 11

D.C. Code § 32-1008................................................................... 11

Md. Code, Lab. & Empl. § 3-424................................................................... 11

Fed. R. Civ. P. 36................................................................... 5, 13

Fed. R. Civ. P. 37................................................................... 1, 19-20

**Miscellaneous**

9 James Wm. Moore et al., Moore's Federal Practice, § 53.02[2][d] (3d ed. 2007) .........    1

TABLE OF EXHIBITS

A.    Plaintiffs' Amended Notice of Deposition of Otto Hines (May 21, 2007).
B.    Email from Lee F. Berger to David E. Fox (June 11, 2007).
C.    Plaintiffs' First Set of Requests for Admission by Defendant Butch Enterprises (May 9, 2007).
D.    Facsimile from Mr. Fox to Mr. Berger attaching completed payroll documents and work order requests (April 30, 2007).
E.    Transcript of Status Conference before Leon, J. (Dec. 4, 2007).
F.    Transcript of Status Conference before Facciola, M.J. (Oct. 30, 2007).
G.    Letter from David E. Fox to Lee F. Berger (May 18, 2007).
H.    Plaintiffs' First Set of Requests for Admission by Defendant Irwin Staten (May 9, 2007).
I.    Defendants Supplemental Reply to Plaintiffs' Request for Production of Documents (Dec. 11. 2007).
J.    Declaration of Lee F. Berger (Jan. 28, 2008).
K.    Plaintiffs' First Request for the Production of Documents from Defendant Butch Enterprises, Inc. (March 13, 2007).
L.    Letter from Lee F. Berger to David E. Fox (Dec. 31, 2007).
M.    Transcript of Deposition of Derek Gaskins (June 26, 2007).
N.    Defendant Butch Enterprises, Inc.'s Answers to Plaintiff's First Set of Interrogatories (Jan. 5, 2007).
O.    Transcript of Deposition of Irwin Staten (Dec. 28, 2007).
P.    Plaintiffs' Notice of Deposition of Otto Hines (May 1, 2007).
Q.    Letter from Lee F. Berger and Larry C. Dembowski to Bruce Gross, Registered Agent for Butch Enterprises, Inc. (July 19, 2006)
R.    Affidavit of Service of Summons and Complaint, Served on Butch Enterprises, Inc. (Sept. 12, 2006).
S.    Plaintiffs First Request for the Production of Documents from Irwin Staten (March 13, 2007).
T.    Facsimile from David E. Fox to Lee F. Berger (May 16, 2007).
U.    Letter from David E. Fox to Lee F. Berger (May 17, 2007).

<u>**INTRODUCTION**</u>

This Court stated in October that the "Butch Defendants have wholly abandoned their discovery responsibilities under the Federal Rules of Civil Procedure." *Ashford v. East Coast Express Eviction*, 245 F.R.D. 36, 38 (D.D.C. 2007). Despite three orders compelling discovery and issuing sanctions, the Butch Defendants – defendants Butch Enterprises, Inc., and Irwin Staten – continue to withhold numerous documents, interrogatory responses, and a deponent from plaintiffs and engage in dilatory tactics to further delay the progress of this case. Even worse, the Butch Defendants have now revealed that they have systematically destroyed the most pertinent documents to this case: payroll records and work requests that, among other information, identify each eviction worker, state how much the Butch Defendants paid each eviction worker each day, the location of each eviction, and a partial description of the hours worked on each eviction. The Butch Defendants have created payroll records every day they performed evictions and work requests for each eviction they performed from 1999 to the present. But the Butch Defendants subsequently discarded or destroyed all of these payroll records and work requests, including during the seventeen-month pendency of this litigation, despite having duties to preserve those documents because they were wage records under the minimum wage laws and because they were relevant to this pending litigation.

In light of this spoliation of evidence central to this litigation and other discovery failures, under Fed. R. Civ. P. 37(b)(2) and the Court's inherent authority, plaintiffs[1] hereby request that the Court impose the following sanctions against the Butch Defendants:

1.     A Report and Recommendation recommending entry of default against the Butch Defendants;[2] and

---

[1]     Plaintiffs submitting this motion are Kirk Greene, Anthony Forte, Hassan Shakur, Sandy Green, and Donald Brooks.

2.     An order granting all reasonable adverse inferences against the Butch Defendants on the issue of damages and precluding the Butch Defendants from arguing that Plaintiffs' damages calculation fails due to lack of evidence that the Butch Defendants should have produced.

## **FACTUAL BACKGROUND**

I.     <u>The Butch Defendants Have Created Payroll Records and Work Requests Daily Since 1999 but Have Systematically Destroyed Those Documents.</u>

A.     <u>The Butch Defendants Regularly Create Payroll Records and Work Requests.</u>

Butch Enterprises has created daily payroll records and had eviction workers sign them since it came into existence in 1999.  Samples of payroll documents are attached at Exhibit A.  At the conclusion of each work day, the eviction supervisor fills out payroll forms with each eviction worker's name, social security number, address, signature, and wages received.  Ex. M, Tr. of Dep. of Derrick Gaskins, Eviction Supervisor for Butch Enterprises, 57:6-61:4 (June 26, 2007) ("Gaskins Dep."); Ex. O, Tr. of Dep. of Irwin Staten, 111:13-112:5 (Dec. 28, 2007) ("Staten Dep.").  Mr. Staten agreed that the Butch Defendants have created payroll documents for each and every eviction that Butch Enterprises has performed since March 1999.  Ex. O, Staten Dep. 45:17-21 ("Q. Okay.  And how long have you been creating those forms, those payroll forms?  A. Every time we go out on a job, we use it.  Q. Since March 1999?  A. Yes.").

Butch Enterprises also creates a work request for every eviction it performs.  Samples of work requests are attached at Exhibit B.  The work requests include a variety of information, including the date, address, customer's name, size of site, and starting and ending

---

2      A United States Magistrate Judge has broad authority to impose sanctions under Rule 37 in connection with a referral of discovery matters.  *See* 9 James Wm. Moore et al., *Moore's Federal Practice*, § 53.02[2][d] (3d ed. 2007).  If the sanctions dispose of a claim or defense, however, the order is treated as a Report and Recommendation and is subject to review by the District Judge.  *Id.*; *see also Zises v. Dep't of Soc. Serv.*, 112 F.R.D. 223, 225-26 (E.D.N.Y. 1986).

time, for each eviction.  Ex. M, Gaskins Dep. 91:7-93:15, 94:2-4, 98:8-11.  For every eviction

that is performed, Mr. Staten or Kimbra Staten fills out the top portion of the form, and the

eviction supervisor fills out the bottom part of the form.  Ex. O, Staten Dep. 97:2-19.  Butch

Enterprises has created these work requests or similar forms for every eviction it has performed

since 1999.  *Id.* at 97:20-98:3, 99:6-10.[3]

>    B.     The Butch Defendants Regularly Destroyed the Payroll Records and Work
>           Requests.

Despite the Butch Defendants' practice of creating daily payroll records and work

requests, the Butch Defendants possess and have produced in discovery virtually none of these

documents.  The Butch Defendants have produced only four days of payroll records and two

days of work requests.  Ex. D, Facsimile from Mr. Fox to Mr. Berger attaching payroll

documents and work order requests (April 30, 2007).[4]  The Butch Defendants have reported to

the Court that they do not have any further responsive documents to produce.  Mem. In Opp'n to

Mot. to Compel, at 1 (July 14, 2007) (Dkt. 100) (stating that Butch Enterprises "has produced all

responsive documents in its possession and which are known to Defendant."); *see also* Ex. I,

Def.'s Suppl. Reply to Pl.s' Req. for Produc. of Docs. (Dec. 11, 2007) (asserting that Mr. Staten

"has no other requested documents.").  In providing this handful of payroll records and work

---

[3]     In addition to Mr. Staten's testimony about these records, the Butch Defendants in their
answers to the complaint each admitted that they "maintain[] such business records as are
required by state or federal law."  Mot. to Dismiss, Resp., and Answer of Def. Irwin Staten, ¶ 12,
(May 1, 2007) (Dkt. 91); Mot. to Dismiss, Resp., and Answer of Def. Butch Enterprises, Inc.,
¶ 12 (Dec. 8, 2006) attached to Mot. To Vacate Entry of Default Against Butch Enterprises, Inc.
(Dec. 8, 2006) (Dkt. 49).  Furthermore, by failing to respond to the Requests for Admission (see
below), Butch Enterprises admitted that it "maintains payroll records as required by the
Minimum Wage Laws," "maintains records regarding Eviction Workers," and "maintains
records regarding wage payments as required by federal, state, and District of Columbia tax
law."  *See* Ex. C, First Req. for Admissions from Def. Butch Enterprises Inc. ("Butch Enterprises
RFAs"), Butch Enterprises Request for Admission Nos. 205-07.
[4]     The Butch Defendants have even destroyed the originals of the handful of documents that
they produced to plaintiffs, thereby destroying information on the backside of the documents that
was not copied in the version sent by fax to plaintiffs.  *See* Ex. O, Staten Dep. 112:19-113:17.

requests, the Butch Defendants' counsel stated:  "Enclosed are the 2 forms which Butch has albeit *not all are retained*."  *Id*. (emphasis added).  In fact, the Butch Defendants' counsel has often represented to the Court and to plaintiffs that the Butch Defendants have not retained payroll records or work requests.  *See*, *e.g.*, Ex. E, Tr. of Status Conference 5:19-23 (Dec. 4, 2007) (Mr. Fox explains that the Butch Defendants "really [don't] have much in the way of records" and "they certainly don't keep records"); Ex. F, Tr. Status Conference 8:15-18 (Oct. 30, 2007) (Mr. Fox asserts that "we're not dealing with the type of company that really keeps records.  If anything, I've discovered that in this business there are very few records."); Ex. G, Letter from Mr. Fox to Mr. Berger (May 18, 2007) ("It is not clear to me that the business keeps any traditional records.").

But there is no mystery as to what happened to the payroll records and work requests:  the Butch Defendants destroyed them.  Mr. Staten's testimony is clear on this point.  First, Mr. Staten testified that he has regularly discarded the payroll records:

> Q. Okay. You just described to us a certain document which I think you referred to as a payroll document that you have the members of the crew sign that has their name, address and social security number on; is that correct?
> A. That's correct.
> Q. Okay, so those payroll documents you've created for each crew that you've hired since September 5th, 2006; is that correct?
> A. Yes.
> Q. And you have not retained any document except for the documents that you have produced in this litigation; is that correct?
> A. That's correct.

Ex. O, Staten Dep. 45:3-16; *see also* Ex. M, Gaskins Dep. 86:4-22, 93:16-94:1, 97:15-20 (testifying that Mr. Staten sometimes collects the payroll records and sometimes discards them).  Mr. Staten also testified that the Butch Defendants only retain work requests for approximately one month:

> Q. And where are those [work request] forms kept?
> A. I have those that I've kept -- that I keep.
> Q. And how far back do you keep them?
> A. Probably about a month.
> Q. So any forms regarding evictions that occurred between September 5th, 2006 and about a month ago have not been retained; is that correct?
> A. That's correct.
> ***
> Q. Have any of those documents [work request created since 1999] been retained today?
> A. No.

Ex. O, Staten Dep. 94:20-95:5; 99:11-13.  The Butch Defendants' regular destruction of documents has not ceased despite their obligation to preserve documents under the minimum wage laws and their obligation to preserve documents relevant to this litigation, as described below.

II.    The Butch Defendants Continue to Ignore Their Discovery Obligations Even After the Court's October 15 Order.

The Court is familiar with the Butch Defendants' failure to comply with discovery through October 15, 2007, when the Court issued an opinion summarizing and sanctioning the Butch Defendants for that history.  *Ashford,* 245 F.R.D. at 38.  Plaintiffs need not repeat and instead incorporate by reference that history here, except to note that at the same time that plaintiffs had served Butch Enterprises with requests for admission, they had also served Mr. Staten with requests for admission on May 9, 2007.  Ex. H, Plaintiffs' First Set of Requests for Admission by Defendant Irwin Staten (May 9, 2007).  Like Butch Enterprises, Mr. Staten never responded to the requests for admissions, and therefore they are deemed admitted.  Fed. R. Civ. P. 36(a)(3).

On October 15, 2007, this Court granted plaintiffs' Motions to Compel and ordered the Butch Defendants to submit responses to all outstanding discovery requests no later than October 29, 2007.  *See* Order dated October 15, 2007 (Dkt. No. 123) (the "October 15

Order").  The Butch Defendants did not provide plaintiffs with any outstanding discovery under the October 15 Order.

On December 4, 2007, the Butch Defendants' failure to comply with the October 15 Order was discussed before Judge Leon at a status conference.  At that conference, Judge Leon ordered the Butch Defendants to comply with the October 15 Order and to respond to plaintiffs' document requests and interrogatories no later than Tuesday, December 11, 2007.  *See* Ex. E, Tr. of Stat. Conf. 5:17-6:25, 8:18-21 (Dec. 4, 2007).  Counsel for the Butch Defendants expressly agreed to abide by Judge Leon's order.  *Id.* at 6:22-25; 8:18-25.  On December 13, 2007, plaintiffs' counsel received from the Butch Defendants a package containing thirty-seven pages of documents and a statement signed by the Butch Defendants' counsel, which read, in its entirety:  "Defendant Staten has re-searched the office of Butch Enterprises and submits herewith:  1. Check Register  2. DMV registration.  Defendant has no other requested documents."  Ex. I, Def.'s Suppl. Reply to Pl.'s Req. for Produc. of Docs.  The package from Butch Defendants' counsel did not contain any response on behalf of defendant Butch Enterprises or responses to any interrogatories.  Plaintiffs' counsel has received no interrogatory responses or further documents responsive to the discovery requests from the Butch Defendants.  *See* Ex. J, Decl. of Lee F. Berger ("Berger Decl.") ¶ 2.  In light of the incomplete and insufficient responses, plaintiffs submitted a motion to strike the Butch Defendants' affirmation that they have fully responded to plaintiffs' discovery requests as not true.  *See* Mot. to Strike Defs. Butch Enterprises, Inc., and Irwin Staten's Statement Relating to Discovery (Dec. 20, 2007) (Dkt. 154) ("Mot. to Strike").  The Butch Defendants never responded to that motion, which remains pending.

On December 14, 2007, the Court granted plaintiffs' Motion for Sanctions and ordered the Butch Defendants, within ten days: (1) to comply with the Court's October 15 Order regarding outstanding discovery requests and to certify such compliance, and (2) to pay to plaintiffs' counsel $28,516.58 in attorneys fees. The Butch Defendants have still not provided plaintiffs with responses to all outstanding discovery requests.[5]  Ex. J, Berger Decl. ¶ 3.

III.    The Butch Defendants are Withholding Discovery That Mr. Staten Testified the Butch Defendants Still Possess.

In addition to destroying the most pertinent documents in the case, the Butch Defendants continue to withhold interrogatory responses, deposition testimony, and other documents relevant to this case, despite the Court's three orders that they comply and the Butch Defendants' two representations to the Court that they have so complied. For example:

- At his deposition, Mr. Staten identified numerous documents in the Butch Defendants' possession or control responsive to plaintiffs' document requests that the Butch Defendants never produced, including Butch Enterprises' business ledger, tax records, invoices to clients, and banking records. *Compare* Ex. O, Staten Dep. 94:1-2; 127:11-16, 124:13-125:16, 147:4-8, *with* Ex. K, Pls.' First Request for the Prod. of Docs. from Def. Butch Enterprises, Inc. ¶¶ 5, 16. After his deposition, plaintiffs again expressly requested these documents from the Butch Defendants, but the Butch Defendants produced no documents. Ex. L, Letter from Lee Berger to David Fox (Dec. 31, 2007); Ex. J, Berger Decl. ¶ 2.

- Mr. Staten testified to having given his attorney his responses to plaintiffs' interrogatories for his attorney to serve on plaintiffs. Ex. O, Staten Dep. 136:13-137:6. Despite this and plaintiffs' further request for the interrogatory responses after the deposition, plaintiffs have never received responses to these interrogatories. Ex. L, Letter from Lee Berger to David Fox (Dec. 31, 2007); Ex. J, Berger Decl. ¶ 2.

- For over seven months, Butch Enterprises has refused to produce Vice-President and Treasurer Kimbra Staten for a deposition. On December 4, 2007, the Court ordered Ms. Staten to appear at deposition on December 28, 2007, a date chosen by the Butch Defendants specifically because, over plaintiffs' objections, they wanted Mr. Staten's and Ms. Staten's

---

[5]    On December 28, 2007, Irwin Staten appeared for his deposition. Further, on January 3, 2008, Butch Enterprises provided vans for plaintiffs' inspection.

depositions to be on the same day. *See* Ex. E, Tr. of Stat. Conf. 10:21-25 (Dec. 4, 2007) (MR. FOX: "Your Honor, I am very good on Friday the 28th if Mr. Berger is. We really only need one day because Ms. Staten has nothing to do with this business so she should be a five minute deposition. THE COURT: All right. We will hold you to that."). Ms. Staten failed to appear at deposition on December 28, 2007. Ex. J, Berger Decl. ¶ 4. At Mr. Staten's deposition, plaintiffs' learned that, contrary to the Butch Defendants' representation that Ms. Staten had no knowledge regarding the business, Ms. Staten regularly worked in Butch Enterprises' office and handled much of the paperwork, including the work requests. *Compare,* Ex. E, Tr. of Stat. Conf. 10:21-25 (Dec. 4, 2007), *with* Ex. O, Staten Dep. 27:9-20 ("Q. Okay. Do you have any office workers that work at the Butch Enterprises office? A. My wife. . . . Q. Okay. And could you describe briefly your wife's responsibilities as an office worker for Butch Enterprises? A. She takes messages and writes down work orders."). By letter on December 31, 2007, plaintiffs again requested to take Ms. Staten's deposition. Ex. L, Letter from Lee Berger to David Fox (Dec. 31, 2007). But the Butch Defendants have not yet produced Ms. Staten for deposition. Ex. J, Berger Decl. ¶ 4.

- The Butch Defendants have not complied with the Court's December 11, 2007 Order to certify that they have complied with all of their discovery obligations. A similar statement that the Butch Defendants filed with Judge Leon on December 11, 2007, is a wholesale misrepresentation. *See* Mot. to Strike at 2-3 (Dkt. 154).

These examples are merely highlights of the Butch Defendants' regular and repeated discovery violations.[6] Plaintiffs believe that further orders will not successfully compel the Butch Defendants to comply with their discovery obligations; three such orders have failed in the past. Accordingly, the Court should take more substantial action to sanction the Butch Defendants for their serial discovery violations and document destruction.

IV.    The Butch Defendants Have Engaged in a Series of Dilatory Tactics That Have Prolonged the Discovery Period.

Discovery was originally scheduled to close in this case on July 18, 2007. Minute Order of April 5, 2007. However, through bad faith extensions and broken agreements, the

---

[6]    Additionally, the Butch Defendants have failed to pay the attorneys fees the Court had ordered paid by January 2, 2008. Ex. J, Berger Decl. ¶ 3.

Butch Defendants have succeeded in more than doubling the discovery period.  Here is just a sample of such dilatory tactics:

- In the October 15 Order, the Court compelled the Butch Defendants to produce all outstanding discovery responses by October 29, 2007.  On October 17, 2007, the Butch Defendants moved for an enlargement of time to produce the discovery and the Court ordered a 30-day extension. Mot. to Continue Status Conference and for a 30 Day Enlargement of Time to Respond to Pending Motions and Otherwise Plead (Oct. 17, 2007) (Dkt. 127); Minute Order (Oct. 18, 2007).  Despite the thirty-day enlargement, the Butch Defendants did not produce any additional discovery during that extended discovery period.  Ex. J, Berger Decl. ¶ 2.

- After the Butch Defendants effectively defaulted on plaintiffs' three motions to compel and the Court entered the October 15 Order, the Butch Defendants requested that the Court give them a period during which to file a motion for reconsideration of the October 15 Order.  *See* Tr. of Status Conference 8:6-9:7 (Oct. 29, 2007).  The Court then granted a seventeen-day briefing period for the Butch Defendants' motion.  *Id.* 9:20-10:3.  Despite requesting the briefing period, the Butch Defendants never filed a motion for reconsideration.

- Plaintiffs originally scheduled the deposition of the Butch Defendants' evictions supervisor Otto Hines for May 18, 2007.  Ex. P, Pls.' Notice of Dep. of Otto Hines (May 1, 2007). The Butch Defendants' counsel cancelled this deposition on May 16.  Ex. T, Facsimile from Mr. Fox to Mr. Berger (May 16, 2007).  The parties then agreed to reschedule Mr. Hines' deposition for June 12, 2007.  Ex. U, Letter from Mr. Fox to Mr. Berger (May 17, 2007); Ex. A, Pls.' Am. Notice of Dep. of Otto Hines (May 21, 2007).  The Butch Defendants cancelled this deposition on June 11.  Ex. B, Email from Mr. Berger to Mr. Fox (June 11, 2007).  Despite plaintiffs' further attempts to schedule his deposition, the Butch Defendants refused to produce Mr. Hines for deposition.  In September 2007, Mr. Hines died.  Notice of Witness's Death (Oct. 29, 2007) (Dkt. 133).  Thus, the Butch Defendants' delay tactics resulted in the loss of testimony from this witness.

These examples do not include, among other things, missed or late appearances at status conferences or the missed discovery deadlines to which the Butch Defendants agreed with plaintiffs.  The few actions the Butch Defendants have performed in this case have resulted only in chronic delays in the now protracted discovery schedule.

**ARGUMENT**

I.    Plaintiffs are Entitled to The Requested Sanctions Because the Butch Defendants
      Destroyed Payroll Records and Work Requests in Violation of Minimum Wage Statutes
      and Their Document Preservation Obligations.

The Butch Defendants systematically created payroll records for the evictions

workers – plaintiffs and the class they seek to represent – that documented each worker's name,

social security number, and how much the Butch Defendants paid each worker each day.  The

Butch Defendants also created work requests, which documented the location, date, and time of

each eviction.  The Butch Defendants created these documents for every eviction throughout the

relevant time period, including those evictions that occurred after plaintiffs notified the Butch

Defendants about this lawsuit.  Together, the payroll records and the work requests are central to

plaintiffs' claims, as they identify each worker, the amount that worker was paid, the locations at

which work was performed, and an indication regarding the hours worked.

Minimum wage statutes require the Butch Defendants to maintain these records

for a period of three years.  The Butch Defendants were further obligated to maintain these

records as potentially relevant to this litigation since the time they became aware of the litigation,

a time no later than their receipt of plaintiffs' Complaint on September 12, 2006.  Despite these

obligations, the Butch Defendants discarded all of their payroll records and work requests on a

monthly basis.  The Butch Defendants continued this document destruction practice despite

becoming aware of this lawsuit, retaining counsel, receiving plaintiffs' document requests

seeking the payroll records and work requests, and even after this Court specifically ordered the

Butch Defendants to produce those documents to plaintiffs.  The purposeful discarding of

documents directly relevant to this case, despite a dual obligation to retain such documents from

at least September 12, 2003, to the present, unfairly disadvantages plaintiffs and should be

sanctioned by the Court.

A.    The Butch Defendants Violated Their Document Preservation Obligations Under the Minimum Wage Statutes.

1.    Federal and State Minimum Wage Laws Required the Butch Defendants to Maintain Wage Records for Their Employees.

The Supreme Court has stated that the duty to keep wage records falls on the employer, because it "is in position to know and to produce the most probative facts concerning the nature and amount of work performed." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49, 61 Stat. 84, *as recognized in IBP, Inc. v. Alvarez*, 546 U.S. 21, 25-29 (2005); *see also Zhou v. Wang's Rest.*, No. C 05-0279 PVT, 2007 WL 134441, *4 (N.D. Cal. Jan. 16, 2007). Federal, D.C., and Maryland laws require employers to keep records of the name, address, and occupation of and rate of pay for each employee, as well as the hours worked by and the amount paid to each employee for a minimum of three years.  29 U.S.C. § 211(c); 29 C.F.R. § 516.6-5; 29 C.F.R. § 516.2; D.C. Code § 32-1008; Md. Code, Lab. & Empl. § 3-424.

The Butch Defendants regularly created the payroll records and work requests. Together, these documents contained most of the information that the minimum wage laws require employers to maintain for employees.  Therefore, the Butch Defendants had an obligation to maintain the payroll records and work requests for a minimum of three years for their eviction employees.

2.     The Control the Butch Defendants Exert Over Eviction Workers' Hours,
       Wages, and Labor Shows That the Workers are Employees and Not
       Independent Contractors.

The eviction workers the Butch Defendants hire are employees, and not

independent contractors.[7]  The Fair Labor Standards Act ("FLSA") defines "employee" as "any

individual employed by an employer" and defines "employer" as "any person acting directly or

indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d) &

(e)(1).  District of Columbia and Maryland minimum wage laws define "employer" and

"employee" similarly.  *Heath v. Perdue Farms*, 87 F. Supp. 2d 452, 456 (D. Md. 2000); *Powell*

*v. Am. Red Cross*, No. 06-1173, 2007 U.S. Dist. LEXIS 42542, at *33 (D.D.C. June 13, 2007)

(citing *Jones & Assocs. v. Dist. of Columbia*, 642 A.2d 130, 134 (D.C. 1994)).

       The determination of whether an employer-employee relationship exists is a

question of law.  *See Morrison v. Int'l Programs Consortium*, 253 F.3d 5, 10 (D.C. Cir. 2001).

In determining whether the eviction workers were "employees," the Court must consider the

"economic reality" of the employer-employee relationship, *see Goldberg v. Whitaker House*

*Coop., Inc.*, 366 U.S. 28, 33 (1961); *Ward v. Atl. Coast Line R. Co.*, 362 U.S. 396, 400 (1960),

rather than looking to any magic words, *Schechter v. Merch. Home Delivery*, 892 A.2d 415 (D.C.

2006).  The D.C. Circuit has articulated a four-factor test under which courts are to assess this

"economic reality."  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994).[8]  The Court

---

[7]     Independent contractors are not considered employees and, therefore, are not covered by
federal and state minimum wage laws.  *Brennan v. Lauderdale Yacht Basin, Inc.*, 493 F.2d 188
(5th Cir. 1974).

[8]     Maryland and District of Columbia courts have also articulated multi-factor tests to use in
applying the Supreme Court's "economic reality" test.  These tests look at similar factors.  For
example, Maryland considers "(1) the power to select and hire the employee, (2) the payment of
wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5)
whether the work is part of the regular business of the employer."  *Whitehead v. Safeway Steel*
*Prods., Inc.*, 497 A.2d 803 (Md. 1985); *see Dovell v. Arundel Supply Corp.*, 361 F.2d 543, 544

must consider whether the putative employer (1) supervised and controlled the putative

employee work schedules or conditions of employment, (2) had the power to hire and fire the

putative employees, (3) determined the rate and method of payment, and (4) maintained

employment records. *Henthorn*, 29 F.3d at 684 (citing *California Health & Welfare Agency,* 704

F.2d 1465, 1470 (9th Cir. 1983)); *Morrison*, 253 F.3d at 11.

      As an initial matter, Butch Enterprises has already admitted that its eviction

workers are employees, as opposed to independent contractors, by virtue of its failure to respond

to plaintiffs' requests for admission. The Court has deemed those requests admitted because the

deadline for Butch Enterprises to respond to those requests has long since past. October 15

Order. Once admitted, a matter is "conclusively established." Fed. R. Civ. P. 36(b); *Rainbolt v.*

*Johnson*, 669 F.2d 767, 768 (D.C. Cir. 1981). Thus, the requests for admissions that sought to

establish that eviction workers are employees of Butch Enterprises are now conclusively

established. For example, Butch Enterprises admits that "[w]hen Butch [Enterprises] hired

Eviction Workers during the Class Period, those persons were Butch [Enterprises'] employees."

Ex. C, Butch Enterprises RFAs, No. 61. Butch Enterprises also admits each of the four

*Henthorn* factors stated above. *Compare Henthorn*, 29 F.3d at 684, *with* Ex. C, Butch

---

(D.C. Cir. 1966) ("[T]here is no conflict of law between Maryland and the District on [the question
of whether a worker is an employee or an independent contractor]"). The Fourth Circuit considers
"(1) the degree of control that the putative employer has over the manner in which the work is
performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3)
the worker's investment in equipment or material, or his employment of other workers; (4) the
degree of skill required for the work; (5) the permanence of the working relationship; and (6) the
degree to which the services rendered are an integral part of the putative employer's business."
*Schultz v. Capital Intern. Sec. Inc.*, 466 F.3d 298, 304-05 (4th Cir. 2006); *see also Ward v. Atl.*
*Coast Line R. Co.*, 362 U.S. 396, 400 (1960) ("The primary factor to be considered is whether or
not the railroad had the power to direct, control, and supervise the plaintiff . . . . Other relevant
factors to be considered are: who selected and engaged the plaintiff to perform the work; who
furnished the tools with which the work was performed; who paid the plaintiff his wages for the
performance of the work; the amount of scale of such wages; and who had the power to fire or
dismiss the plaintiff from the work.").

Enterprises RFAs, Nos. 51-60.  Accordingly, the eviction workers are firmly established as Butch Enterprises' employees.

Even without the admissions, the "economic reality" of the relationship between the Butch Defendants and the eviction workers shows that the eviction workers are employees, not independent contractors.  First, the Butch Defendants fully supervised and controlled the eviction workers during each eviction, while waiting at the eviction site, and in transit to and from the eviction site.  *See* Ex. M, Gaskins Dep., 67:17-21, 69:9-12 (Derek Gaskins, Butch Enterprises' van driver and eviction supervisor, supervised of workers; Ex. D. Work Request (listing Mr. Gaskins as "Supervisor" at the eviction).

Second, the Butch Defendants exercised their power to hire and fire the evictions workers.  *See* Ex. O., Staten Dep. 70:11-13 ("Q. Is it correct that Butch Enterprises sets its own policy as to who it will hire?  A. Yes."); Ex. N, Def. Butch Enterprises, Inc.'s Answers to Plaintiffs' First Set of Interrogs. ("Butch Enterprises Interrog. Resps.") at 6 (May 1, 2007) (stating Butch Enterprises' hiring criteria).[9]

Third, the Butch Defendants set the rate of pay ($5 per eviction) and the method of payment (cash) without negotiation with the eviction workers.  Ex. O, Staten Dep. 78:16-18 ("Q. Does Butch Enterprises ever negotiate with workers as to how much they will be paid?  A. No."); *id.* 63:8-10 ("Q. Are eviction workers paid in cash?  A. Yes."); *id.* 58:16-18 ("Q. Is it five dollars per eviction regardless of the size of the premises?  A. Yes."); Ex. N, Butch Enterprises Interrog. Resps. at 3 (Butch Enterprises pays eviction workers "essentially $5.00 per piece").

---

[9]     Even though Butch Enterprises' partial responses to plaintiffs' interrogatories were improperly served and are not verified, Mr. Staten verified these partial responses under oath during his deposition.  Ex. O, Staten Dep. 17:6-19.

Finally, the Butch Defendants maintain employee records.  The Butch Defendants created, and have each eviction worker sign, payroll records for each day worked.  *See* Ex. O, Staten Dep. 45:3-16; Ex. M, Gaskins Dep. 57:6-61:4.  Similarly, for each eviction, the Butch Defendants create a work request.  *See* Ex. M, Gaskins Dep. 91:7-93:15, 94:2-4, 98:8-1; Ex. O, Staten Dep. 97:2-19.  Combined, these documents constitute employee records because they contain most of the information required under the minimum wage statutes.

Butch Enterprises' eviction workers qualify as employees of Butch Enterprises under the four-factor *Henthorn* test and by virtue of the Butch Defendants' own testimony and admissions.  Because these eviction workers are Butch Enterprises' employees, the Butch Defendants were obligated to retain payroll records and work requests for these employees for a minimum of three years.

B.     The Butch Defendants Had a Duty to Preserve All Relevant Evidence, Including the Payroll Records and Work Requests, Once They Anticipated Litigation.

In addition to their statutory obligations to maintain wage records, the Butch Defendants were legally obligated to preserve all relevant evidence, including any payroll records and work requests, once the Butch Defendants should reasonably have anticipated litigation.  "It is the law of this Circuit that a party has an obligation to preserve evidence it knew or reasonably should have known was relevant to the litigation and the destruction of which would prejudice the other party to that litigation."  *Miller v. Holzmann*, No. 95-01231, 2007 WL 172327, at *3 (D.D.C. Jan. 17, 2007) (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1481 (D.C. 1995)).  "While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject

of a pending discovery request." *Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 34 n.3 (D.D.C. 2004).

The relevance of the payroll records and the work requests to this matter and the prejudice to plaintiffs caused by their destruction cannot be contested. Plaintiffs' complaint alleges minimum wage violations based on defendants' failure to pay the eviction workers minimum wage. The payroll records describe the amount that the eviction workers were paid each day, information that is relevant to determining whether they were paid the minimum wage. The work requests indicate where the evictions occurred and how long the evictions took to complete, information that is relevant to determining which jurisdiction's minimum wage law applies and to determining the hours worked and the total wage due. Therefore, as defendants named in the complaint, the Butch Defendants should have known that payroll records and work requests are directly relevant to this litigation and that their destruction would severely prejudice plaintiffs.

This duty to preserve typically arises when a suit is filed, but it may also arise prior to a suit's filing if the party "should have known" that the evidence could be relevant to future litigation. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). Here, the Butch Defendants first received notice of the likelihood of litigation in a letter dated July 19, 2006. *See* Ex. Q, Letter from Lee Berger and Larry Dembowski to Bruce Gross, Registered Agent for Butch Enterprises, Inc. (July 19, 2006). The letter described wage violations alleged against the Butch Defendants, advised them that plaintiffs would seek to "obtain all available legal remedies on behalf of the victims of these practices," and advised them to seek an attorney "in light of the potential legal violations described in [the] letter." *Id*. Given this notice, the Butch Defendants should have anticipated that litigation regarding alleged minimum wage violations would follow,

and they were then legally obligated to preserve all material evidence, including the payroll records and work requests.

If this letter was not sufficient to put the Butch Defendants on notice of potential litigation and to trigger the duty to preserve material evidence, this duty undeniably arose once Butch Enterprises was served with a summons and copy of plaintiffs' complaint on September 12, 2006. *See* Ex. R, Aff. of Service of Summons and Compl., Butch Enterprises, Inc., (Sept. 14, 2006). The Butch Defendants should have reasonably understood from the allegations in the complaint that the payroll records and work requests that the Butch Defendants regularly created in the course of business constituted material evidence in a case alleging violations of minimum wage laws and that those documents' destruction would hinder plaintiffs' ability to prosecute their case. The relevance and importance of this evidence should only have been confirmed when plaintiffs served the Butch Defendants with document requests seeking those payroll records and work requests on March 13, 2007. Ex. K, Pls.' First Req. for the Produc. of Docs. from Butch Enterprises, Inc., Nos. 1, 2, 6, 11, 15 (March 13, 2007); Ex. S, Pls.' First Req. for the Produc. of Docs. from Irwin Staten, Nos. 1, 2, 6, 11, 15 (March 13, 2007).[10] The relevance of this evidence was reconfirmed on October 15, 2007, when this Court ordered the Butch Defendants to comply with plaintiffs' document requests.

While these later dates demonstrate that the Butch Defendants were repeatedly put on notice of their obligation to retain the payroll records and work requests, they should have

---

[10]    In each document request, plaintiffs sought, among other things, "[a]ll documents kept pursuant to the record keeping requirements of any . . . minimum wage law," (Ex. K, First Req. for the Produc. of Docs. from Butch Enterprises, Inc., Req. No. 1,) "[a]ll documents related to the payment of Wages to Eviction Workers," (*id*. Req. No. 2,) "[a]ll documents related to the number and locations of Evictions that [the Butch Defendants] performed," (*id*. Req. No. 6,) "[a]ll documents related to [the Butch Defendants'] labor costs for performing Evictions," (*id*. Req. No. 11,) "[a]ll documents related to the time required for the completion of an Eviction," (*id*.) and any other "payroll documents" (*id*. Req. No. 15).

known that the these documents were evidence that could be relevant to future litigation, the destruction of which would prejudice plaintiffs, as early as their receipt of plaintiffs' letter in July 2006, and undeniably should have known so after receiving the Complaint on September 12, 2006. The Butch Defendants should have retained all documents potentially relevant to the litigation, including the most obviously and centrally relevant payroll records and work requests.

C.     Together, the Minimum Wage Statutes and the Butch Defendants' Litigation Preservation Duty Result in a Duty to Preserve Payroll Records and Work Requests Created as Early as July 2003.

Under the minimum wage laws, the Butch Defendants, as the eviction workers' employer, are required to retain the payroll records and work requests for a period of three years. *See supra* at 11. The Butch Defendants' duty to preserve documents potentially relevant to the litigation arose no later than September 12, 2006, with their receipt of plaintiffs' Complaint. *See supra* at 15-18. At that moment, the Butch Defendants should have had at least three years of payroll records and work requests (*i.e.*, since September 12, 2003, and possibly as early as July 2003 in light of the pre-complaint letter from plaintiffs' counsel) maintained under the minimum wage law and should not have destroyed those records or other wage records created since then. Despite the dual obligations to maintain these records, the Butch Defendants have discarded or destroyed all payroll records and work requests, including those created since the service of the complaint on September 12, 2006.

D.     The Butch Defendants Must be Sanctioned for Their Destruction of Relevant Evidence to Restore Balance to This Litigation.

"There is no question that when relevant documents are willfully destroyed by a party then that party is culpable and should be held responsible for the prejudice it has caused." *Indep. Petrochemical Corp. v. Aetna Cas. Sur. Co.*, 654 F. Supp. 1334, 1364 (D.D.C. 1986); *see also Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("It is a well-established and

long-standing principle of law that a party's intentional destruction of evidence relevant to proof

of an issue at trial can support an inference that the evidence would have been unfavorable to the

party responsible for its destruction." (citing *Nation-Wide Check Corp. v. Forest Hills Distrib.*,

692 F.2d 214, 217-18 (1st Cir. 1982)).  Thus, the Court should use its "inherent power to control

the judicial process and litigation" to "redress conduct 'which abuses the judicial process.'"

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (quoting *Chambers v. NASCO,*

*Inc.*, 501 U.S. 32, 45-46 (1991)).

   For four-and-a-half years, the Butch Defendants have destroyed thousands of

documents that the law requires them to keep.  Since March 1999, the Butch Defendants have

created payroll records each working day and work requests regarding each eviction.  The Butch

Defendants had a duty to preserve these payroll records and the work requests from at least

September 12, 2003, to the present under the minimum wage statutes and by virtue of the duty to

preserve documents relevant to an ongoing litigation.  Yet, the Butch Defendants have

systematically discarded these documents.  This blatant disregard for the preservation of

documents, especially continuing after plaintiffs served the Butch Defendants with the complaint

and document requests seeking the documents, and after the Court ordered the Butch Defendants

to produce these documents, has unfairly prejudiced plaintiffs by denying them important

evidence for their case.  This spoliation of the evidence central to this case should not remain

unpunished.

II. <u>Plaintiffs are Entitled to the Requested Sanctions Because the Butch Defendants Have
Destroyed Documents Central to This Litigation, Otherwise Repeatedly Failed to Comply
With the Court's Discovery Orders, and Engaged in Dilatory Tactics.</u>

   Rule 37(b)(2) provides that when a party fails to comply with a discovery order,

that party may be subject to a number of different sanctions for its noncompliance.  Under Rule

37, the Court "may issue further just orders," including, but not limited to, ordering that certain

facts be taken as established, precluding the disobedient party from opposing designated claims or defenses, or "rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A). The type and scope of the sanction is within the discretion of the Court, so long as the sanction is proportional to the underlying offense. *See Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996). In addition to the remedies specified in the Federal Rules of Civil Procedure, the Court has the "well-acknowledged inherent power . . . to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (quotation omitted). Here, plaintiffs' request for entry of a default judgment against the Butch Defendants and for all reasonable adverse inferences against the Butch Defendants on the issue of damages and precluding the Butch Defendants from arguing that plaintiffs' damages calculation fail due to lack of evidence that the Butch Defendants should have produced are reasonable sanctions proportional to the Butch Defendants' wholesale destruction of the central evidence to this case, the continued withholding of still more documents, information, and deposition testimony, and other dilatory tactics.

A.    It as Appropriate to Enter a Default Judgment Against the Butch Defendants.

Entry of a default judgment is appropriate when a party has "engaged in a pattern of repeated, willful violations." *SEC v. Hollywood Trenz, Inc.*, 202 F.R.D. 3, 7 (D.D.C. 2001). To determine whether to impose a default judgment as a sanction for misconduct, the Court should consider: "1) whether the opposing party's ability to present its case has been so severely prejudiced that it would be unfair to require him to proceed, 2) whether the burden placed on the court is intolerable, and 3) whether there is a sufficient need to deter similar conduct in the future." *Caldwell v. Ctr. for Corr. Health & Policy Studies, Inc.*, 228 F.R.D. 40, 46 (D.D.C. 2005) (citation omitted).

First, the Butch Defendants' destruction of the central documents of this case, its continued withholding of other documents, interrogatory responses, and deposition testimony, and other dilatory tactics have prejudiced plaintiffs' ability to present their case such that it would be unfair to require plaintiffs to proceed. This first factor is satisfied either "where the guilty party has engaged in such wholesale destruction of primary evidence regarding a number of issues that the district court cannot fashion an effective issue-related sanction" or "where the destroyed document is dispositive of the case, so that an issue-related sanction effectively disposes of the merits anyway." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1479 (D.C. Cir. 1995). Here, plaintiffs are at a loss to determine how to level the playing field with a lesser sanction in light of the Butch Defendants' destruction of documents and failure to comply with the Court's discovery orders. The destroyed payroll records and work requests cannot be recreated by judicial fiat. Given the Butch Defendants' disregard for the Court's previous discovery orders and the accompanying sanctions, it does not appear that further orders will succeed in compelling documents, interrogatory responses, or deposition testimony from the Butch Defendants. Therefore, there does not appear to be an effective issue-related sanction that could redress the Butch Defendants' spoliation and other discovery violations. Indeed, a default judgment of liability is a moderate step given the fact that the requests for admissions are already deemed admitted and in light of the evidentiary sanction already entered against the Butch Defendants. *See* Dec. 14 Order (Dkt. 149).

Second, regarding prejudice to the judicial system, the Court of Appeals has explained: "Where the delay or misconduct would require the court to expend considerable judicial resources in the future in addition to those it has already wasted, thereby inconveniencing many other innocent litigants in the presentation of *their* cases, our precedents

have held that dismissal may be an appropriate exercise of discretion." *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1075-76 (D.C. Cir. 1986) (emphasis original).  For example, in *Webb v. Dist. of Columbia*, 189 F.R.D. 180, 181-84 (D.D.C. 1999), the court ordered default against a defendant which repeatedly caused the expansion of the discovery period, causing delay to the progress of the remainder of the case, and ultimately admitted to the destruction of central documents in the case.  In finding that the judicial system would be prejudiced by a continuation of the action, the court found that any other sanction would require further substantial enlargement of the discovery period, which "doubtless would have required the continued supervision and arbitration of the Court." 189 F.R.D. at 189.  Further, it found the court's further efforts to secure discovery would be in vain, as "the defendant had demonstrated that it was either unwilling or unable to provide complete and timely discovery to the plaintiff, and the Court had no reason whatsoever to think that its orders would force an adequate response from the [defendant] where prior orders had been ineffective." *Id.*  The parallels to this case are obvious:  the Butch Defendants' destruction of documents, dilatory tactics, and continued refusal to produce the discovery required by the Court have already enlarged the discovery period from four months to ten months and counting.  Any new sanction or order to compel less than default may require the reopening of discovery, and as the Butch Defendants have not readily responded to the Court's previous orders, it appears unlikely that additional orders will have any effect.  Any sanction less than default will allow the Butch Defendants to cause further delay, wasting judicial resources, and postponing the inevitable finding of liability against the Butch Defendants in light of their admissions.

        Third, default would serve as a useful deterrent for the Butch Defendants' actions.  Default may deter the Butch Defendants from ignoring court orders or preservation duties in the

future. The Butch Defendants' compliance with the Court's orders will become especially important if the Court enters an injunction against the Butch Defendants requiring them to pay minimum wages and end their collusion with their competitors, as plaintiffs' complaint requests. Further, a sanction of default also may deter others in the evictions industry, who are also subject to discovery orders and may become subject to a similar injunction.

The Butch Defendants have ignored three of the Court's direct orders to produce documents and interrogatory responses, have failed to provide noticed witnesses for depositions, protracted the discovery period, and have purposefully undertaken the wholesale destruction of primary evidence. The Butch Defendants have therefore engaged in a pattern of repeated, willful violations of this Court's orders, preservation obligations, and discovery duties. In doing so, they have hamstrung plaintiffs' ability to demonstrate liability and damages under the normal rules and burdens of litigation. Permitting the Butch Defendants to continue on in this case would result in further prejudice to the judicial system, as the Court's time is eaten up by additional motions plaintiffs must file to attempt to enforce the Court's discovery orders. Indeed, a default may be the only way to deter the Butch Defendants or other members of the evictions industry from ignoring the Court's orders or destroying evidence in the future. Given the magnitude of the Butch Defendants' violations, no lesser sanction than a default judgment would be appropriate.[11]

---

[11]    A sanction of a default against Butch Enterprises will technically be a reinstatement of the default previously entered against it. At the outset of this litigation, Butch Enterprises defaulted. Default as to Butch Enterprises, Inc. (Nov. 7, 2006) (Dkt. 31). When Butch Enterprises sought to have that default lifted and thus to engage in the litigation, plaintiffs did not oppose its motion. Pls.' Resp. to Mot. to Vacate Entry of Default Against Def. Butch Enterprises, Inc., (Dec. 11, 2006) (Dkt. 51). Mr. Staten was not named in plaintiffs' original complaint because his identity was not known to plaintiffs at that time. Compl., ¶ 20 (Dkt. 1). Mr. Staten was named in and served with the First Amended Complaint, and when he failed to respond timely to plaintiffs' First Amended Complaint, plaintiffs sought a default against him.

B.    It is Also Appropriate to Order All Reasonable Adverse Inferences Regarding Damages Against the Butch Defendants.

The Butch Defendants' destruction of documents and other discovery failures hinder more than just plaintiffs' case on liability.  After the Butch Defendants' liability has been established, plaintiffs must establish by a "reasonable estimate" the extent of the damages the class has suffered as a result of the Butch Defendants' unlawful actions.  *See Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003).  The Butch Defendants' destruction of documents and refusal to comply with the Court's orders obstructs plaintiffs' ability to calculate and collect damages.  The Butch Defendants have either destroyed or withheld from production the primary information needed to calculate damages.  The Butch Defendants' wholesale destruction of payroll records and work orders precludes plaintiffs from utilizing the very evidence the law dictates be retained to compute wages due and that is therefore the most beneficial for computing damages.  Other evidence withheld, such as bank records, tax records, and Ms. Staten's deposition testimony, may also have assisted plaintiffs with discovery.  By destroying and withholding this evidence, the Butch Defendants force plaintiffs to rely on secondary sources to prove their damages.

In the absence of the Butch Defendants' records, plaintiffs will employ other reasonable methods of estimating damages.  Plaintiffs would be seriously prejudiced, however, were the Butch Defendants permitted to object to those calculations by arguing that plaintiffs' evidence is insufficient or if the jury could find plaintiffs' evidence insufficient because plaintiffs do not have the daily payroll records, work requests, and other requested documents that would

Aff. for Default Against Def. I. Staten (Jan. 19, 2007) (Dkt. 62).  When Mr. Staten opposed the default, plaintiffs withdrew their request with the express understanding that the Butch Defendants were now "engaging in this litigation."  Pls.' Resp. to Def. I. Staten's Opp. to Entry of Default Against Def. I. Staten at 1 (Feb. 15, 2007) (Dkt. 69).  Despite the positions taken by the Butch Defendants early in the litigation, it has become clear that they do not actually intend to engage in this litigation.

lead to greater accuracy.  *See Butera v. Dist. of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001)

(one purpose of  sanctions is to "ensure that a party will not be able to profit from its own failure

to comply with the rules").  Given the Butch Defendants' malfeasance, they should not be

permitted to argue, and the jury should not be permitted to find, that plaintiffs' damages case

fails in some fashion because of the lack of primary support for their damages calculation.

Accordingly, this Court should enter a sanction precluding such argument and giving plaintiffs

all reasonable adverse inferences against the Butch Defendants regarding damages.  An order

entering all reasonable inferences against the Butch Defendants on damages would allow

plaintiffs to argue that because the documents the Butch Defendants destroyed or withheld would

have provided greater accuracy and that the jury should infer that those documents were

supportive of plaintiffs' calculations.

  As part of the Court's inherent power to sanction litigation abuses, the federal

doctrine known as the adverse inference rule provides that "when a party has relevant evidence

within his control which he fails to produce, that failure gives rise to an inference that the

evidence is unfavorable to him."  *Int'l Union v. NLRB*, 459 F.2d 1329, 1336 (D.C. Cir. 1972).

The adverse inference rule is often used in connection with evidence that has been destroyed,

whether intentionally or negligently, *see, e.g.*, *Rice v. United States,* 917 F. Supp. 17, 19-20

(D.D.C. 1996), as well as when evidence is withheld from production, *see Int'l Union*, 459 F.2d

at 1338-39 (applying adverse inference rule to defendant employer who refused to produce

hiring records in defiance of a subpoena).

  For example, in *Nike v. Top Brand Co.*, 216 F.R.D. 259, 274 (S.D.N.Y. 2003), the

court granted the sanctions plaintiffs request here (and more) after certain defendants withheld or

destroyed documents central to the case, failed to provide deposition testimony, and dragged out

discovery through dilatory tactics for over a year. The *Nike* plaintiffs alleged that defendant Jay Enis and his company (known together as the "Enis Defendants") produced counterfeit Nike apparel. 216 F.R.D. at 260. The *Nike* court had ordered the Enis Defendants to produce depositions and documents regarding, among other things, the basic transactional information about the allegedly counterfeit products, which was central to Nike's case. *Id.* at 261-62. While Mr. Enis did submit to deposition, the Enis Defendants did not produce any of the transactional documents despite the court's order, first claiming that they did not have such documents and later admitting that such documents existed but had been destroyed. *Id.* at 268-69. Further, the Enis Defendants failed to produce one of their managers for deposition, despite scheduling the deposition a number of times, and ultimately could not locate the manager for deposition. *Id.* at 265-67. Finally, the Enis Defendants' counsel numerous times told Nike and the court that they had no involvement in the alleged counterfeiting, and therefore had complied with its discovery obligations and should not be forced to proceed through further discovery. *Id.* at 267. The *Nike* court determined that the Enis Defendants' "stonewalling" had "knowingly and brazenly violated the Court's discovery order," and that "[b]ecause the Enis Defendants have totally failed to provide relevant data, plaintiffs' ability to present their case has been impaired." *Id.* at 269, 274. On this basis, in addition to entering sanctions precluding the introduction of evidence on damages and an award of attorneys fees, the court entered a sanction ordering that "plaintiffs be given all reasonable adverse inferences against the Enis Defendants on the issue of damages." *Id.* at 274.

The Butch Defendants' discovery violations outpace even the Enis Defendants in *Nike*. Like the Enis Defendants, the Butch Defendants have destroyed documents central to the case. The Butch Defendants have repeatedly represented to the Court and plaintiffs that they do

not have any further responsive documents despite later testimony that they do possess responsive documents. Like the Enis Defendants, the Butch Defendants failed to produce one of their managers for deposition for such a long time that his testimony was lost due to his death. The Butch Defendants have also failed to produce a company officer, Mrs. Staten, who is responsible for Butch Enterprises' work orders. Also like the Enis Defendants, the Butch Defendants have conducted dilatory tactics dragging out discovery in this case and holding up the remainder of the litigation, such as getting extensions for responses to pleadings and then failing to file a response within those extended deadlines. Therefore, the plaintiffs' requested adverse inference, which is identical to the adverse inference granted by the *Nike* court, is appropriate here.

The Butch Defendants should not profit from their spoliation, non-compliance, and delay. Plaintiffs therefore respectfully request that the Court issue a Report and Recommendation recommending entry of default against the Butch Defendants on liability. Plaintiffs further request that the Court enter an order giving plaintiffs all reasonable inferences against the Butch Defendants regarding damages and precluding the Butch Defendants from arguing that plaintiffs' damages calculation fail due to lack of evidence that the Butch Defendants should have produced.


## <u>CONCLUSION</u>

For the reasons stated above, the Court should recommend a default judgment against the Butch Defendants and enter an order granting plaintiffs all reasonable inferences against the Butch Defendants regarding damages and precluding the Butch Defendants from arguing that plaintiffs' damages calculation fail due to lack of evidence that the Butch Defendants should have produced.

-27-

Dated:  January 29, 2008

Respectfully submitted,

/s/ Larry C. Work-Dembowski
Larry C. Work-Dembowski (D.C. Bar # 486331)
Lee F. Berger (D.C. Bar # 482435)
Matthew D. Slater (D.C. Bar # 386986)
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006-1801
Telephone:  (202) 974-1500
Facsimile:   (202) 974-1999
*Attorneys for Plaintiffs Kirk Greene, Anthony Forte,*
*Hassan Shakur, Sandy Green, and Donald Brooks*

## <u>CERTIFICATION UNDER FED. R. CIV. P. 37 and L.CvR 7(m)</u>

I, Larry C. Work-Dembowski, attorney for plaintiffs, hereby certify that plaintiffs' counsel has in good faith met and conferred with David Fox, counsel for Butch Enterprises, Inc. and Irwin Staten ("Butch Defendants"), regarding the discovery disputes detailed above.  On December 31, 2007, we sent to David Fox, attorney for the Butch Defendants, a letter requesting that we meet and confer regarding this motion for sanctions, the overdue discovery responses, the Butch Defendants' spoliation of evidence, and the attorney's fees that this Court ordered the Butch Defendants to pay.  In that letter, we informed Mr. Fox that we would file a motion for sanctions if he did not meet and confer with us regarding these disputes by January 7, 2008.  While Mr. Fox met and conferred with us regarding this letter telephonically on December 31, 2007, he expressly refused to commit to producing any documents or taking a position on this motion, though he said that if after talking to his client he did have a position on any of these topics he would contact us.  Mr. Fox never contacted us with any position regarding this motion. We are left to assume that the Butch Defendants oppose this motion.  Additionally, because this motion seeks a default against the Butch Defendants, it is dispositive and therefore the meet and confer obligation under L.CvR 7(m) does not apply.

Dated:  January 29, 2008

/s/ Larry C. Work-Dembowski
Larry C. Work-Dembowski (D.C. Bar # 486331)

-29-

CERTIFICATE OF SERVICE

I, Emily C. Capehart, assistant managing clerk at Cleary Gottlieb Steen & Hamilton LLP,

hereby certify that:

On January 29, 2008, a copy of the foregoing Plaintiffs' Motion for Sanctions and

Expenses Against Defendants Irwin Staten and Butch Enterprises, Incorporated and

accompanying documents were served by electronic transmission through the Court's CM/ECF

System on the following parties:

> David E. Fox
> 1325 Eighteenth Street, N.W.
> Suite 103
> Washington, D.C. 20036
> dfox159937@aol.com
> Attorney for Butch Enterprises, Inc. and I. Staten
>
> Gina M. Smith
> Meyers, Rodbell & Rosenbaum, P.A.
> 6801 Kenilworth Avenue, #400
> Riverdale Park, MD 20730
> gsmith@mrrlaw.net
> Attorney for A 1 Eviction Services and Tanya Smith

and were served by U.S. mail, first-class postage prepaid, on the following parties:

> East Coast Express Eviction
> 29 U Street, N.W.
> Washington, D.C. 20001
>
> Nelson Terry
> 29 U Street, N.W.
> Washington, D.C. 20001
>
> Platinum Realtor Services, Inc.
> 6705 McKeldin Drive
> Suitland, MD 20746
>
> Platinum Realtor Services, Inc.
> P.O. Box 631
> Suitland, MD 20752

Choya Lord Rodriguez
6705 McKeldin Drive
Suitland, MD 20746

Crawford & Crawford
200 55th Street, N.E.
Apt. # 24
Washington, D.C. 20019

Vincent Crawford
200 55th Street, N.E.
Apt. # 24
Washington, D.C. 20019

Harry J. Ashford
c/o *Street Sense*
1317 G Street, N.W.
Washington, D.C. 20005

Caroline Lanford
1112 48th Street, N.E.
Washington, D.C. 20019

All American Eviction Company
1112 48th Street, N.E.
Washington, D.C. 20019


Dated:  January 29, 2008                    /s/ Emily C. Capehart
                                            Emily C. Capehart